**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT LUCAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OIL FUND, LP, UNITED STATES COMMODITY FUNDS LLC, JOHN P. LOVE and STUART P. CRUMBAUGH,<br><br>Defendants. | No. 1:20-cv-04740-PGG<br><br>Judge Paul G. Gardephe<br><br><u>CLASS ACTION</u><br><br><br><br><u>ORAL ARGUMENT REQUESTED</u> |
| MOSHE EPHRATI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OIL FUND, LP, UNITED STATES COMMODITY FUNDS LLC, JOHN P. LOVE, and STUART P. CRUMBAUGH,<br><br>Defendants. | No. 1:20-cv-06010-PGG |
| DANNY PALACIOS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OIL FUND, LP, UNITED STATES COMMODITY FUNDS LLC, JOHN P. LOVE, and STUART P. CRUMBAUGH,<br><br>Defendants. | No. 1:20-cv-06442-PGG |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ANDREW TAESOO CHANG AND HERITAGE INVESTMENT CORP. FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOVANTS**

**TABLE OF CONTENTS**

**Page**

I.   HERITAGE IS THE PRESUMPTIVE LEAD PLAINTIFF ...................................................4

    A.   The Expanded Class Period Should be Rejected .............................................................4

    B.   Heritage Has the Largest Financial Interest Under the Operative Class
        Period ...................................................................................................................................9

II.  NUTIT'S INVALID CERTIFICATION IS DISQUALIFYING ......................................10

III. ALL REMAINING MOTIONS SHOULD BE DENIED ...................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baydale v. Am. Express Co.*,
No. 09 Civ. 3016 (WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)................................12

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020)........................................11, 12

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................................4, 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ........................................................................................3, 10, 12

*In re Centerline Holding Co. Sec. Litig.*,
No. 08 Civ. 505 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008)...................................2, 4

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) .............................................................................................13

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ...............................10

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015) ...........................................................11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................10

*Gordon v. MiMedx Grp., Inc.*,
No. 18 Civ. 01831 (ER), 2019 WL 1254551 (S.D.N.Y. Mar. 19, 2019)................................10

*Mayer v. Apogee Enters., Inc.*,
No. 18-cv-3097, 2019 WL 927315 (D. Minn. Feb. 26, 2019)...................................................4

*McKenna v. Dick's Sporting Goods, Inc*,
No. 17-CV-3680 (VSB), 2018 WL 1083971 (S.D.N.Y. Feb. 27, 2018) ...................................9

*Nasin v. Hongli Clean Energy Techs. Corp.*,
No. 2:17-cv-3244 (WJM), 2017 WL 5598214 (D.N.J. Nov. 21, 2017) ..................................12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) .....................................................................................2, 4, 5

*In re Ply Gem Holdings Inc. Sec. Litig.*,
No. 14-CV-3577 (JPO), 2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014)................................13

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999).............................................................................3, 10

*Union Asset Mgmt. Holding v. SanDisk Corp.*,
No. 15-cv-01455-VC, 2016 WL 406283 (N.D. Cal. Jan. 22, 2016).........................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)..................................................................................2

*Villare v. ABIOMED, Inc.*,
No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020)....................................5

**Rules & Statutes**

Fed R. Civ. P. 23 ..................................................................................................2, 4, 10, 12

15 U.S.C. § 78u-4 *et seq*. .................................................................................... *passim*

Proposed Lead Plaintiff Heritage[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of Labaton Sucharow and as Lead Counsel for the Class (ECF No. 33); and in opposition to all competing movants.[2]

## PRELIMINARY STATEMENT

Heritage, a sophisticated investor qualified to represent the interests of the Class in this litigation, possesses the largest financial interest in the only cognizable class period before the Court, and is therefore the presumptive "most adequate plaintiff."

Of the three pending cases,[3] the *Lucas* and *Ephrati* Actions advance the class period of March 19, 2020 to April 28, 2020 (the "Original Class Period"). Both the *Lucas* and *Ephrati* Actions allege that Defendants' statements during the Original Class Period failed to disclose that a "host of interrelated crises" had rendered USO's investment strategy unachievable. *See Lucas* Action, ECF No. 1 ¶¶ 55-65; *Ephrati* Action, ECF No. 1 ¶¶ 33-43. The *Palacios* Action, filed less than a week before the August 18, 2020 Lead Plaintiff deadline, pleads a longer class

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from Heritage's previous submissions before this Court. *See* ECF Nos. 33, 34.

[2] In addition to Heritage, the following movants filed motions for appointment as Lead Plaintiff on August 18, 2020: (i) Nutit, A.S. ("Nutit") (ECF No. 33); Arjun Bhartia and Joseph A. O'Connor Trust ("USO Investor Group") (ECF No. 25); (iii) Guohua Wang ("Wang") (ECF No. 47); (iv) Ali Pourmemar and Randall Hernandez ("Pourmemar & Hernandez") (ECF No. 32); (v) Elaine Vogel and Richard Vogel ("Vogel") (ECF No. 36); Andrei Danet ("Danet") (ECF No. 19); (vi) Fady Sorial and Ramy Sorial ("Sorial") (ECF No. 28); and (vii) Steven Bailey ("Bailey") (ECF No. 22). Subsequent to the expiration of the Lead Plaintiff deadline, the following movants have either withdrawn their motions or filed a notice of non-opposition to the competing movants: Vogel, Danet, Pourmemar & Hernandez, Bailey, and Wang. *See* ECF Nos. 50-54.

[3] *See Lucas v. United States Oil Fund, LP*, No. 20-cv-04740 (S.D.N.Y. June 19, 2020) ("*Lucas* Action"); *Ephrati v. United States Oil Fund, LP*, No. 20-cv-06010 (S.D.N.Y. July 31, 2020) ("*Ephrati* Action"); *Palacios v. United States Oil Fund, LP*, No. 20-cv-06442 (S.D.N.Y. Aug. 14, 2020) ("*Palacios* Action").

period commencing on February 25, 2020 through April 28, 2020 (the "Expanded Class Period"). The Expanded Class Period alleges an identical theory to the *Lucas* and *Ephrati* Actions. *See Palacios* Action, ECF No. 1 ¶¶ 3, 56-67.

For the reasons discussed herein, the Expanded Class Period should not be utilized for the purposes of this motion. The two key catalysts on which all three actions rely occurred in ***March 2020***, ***after*** the starting date of the Expanded Class Period: (1) the oil pricing war between Russian and Saudi Arabia, and (2) COVID-19 related shutdowns and business interruptions. As such, the Expanded Class Period is chronologically impossible as pled. It is precisely under this thin set of circumstances that courts depart from the normal course of adopting the most expansive class period at the lead plaintiff stage, instead electing to use a shorter, more realistic period. *See, e.g.*, *In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505 (SAS), 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (plausibility standard); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (frivolity standard). Accordingly, the Expanded Class Period should be rejected, and the Original Class Period utilized for the pending motions.

Having established that the Original Class Period is the only cognizable period before the Court, Heritage possesses the largest financial interest of **$4,545,829** on a LIFO basis. *See* Original Class Period Loss Analysis ("Loss Analysis"), attached as Exhibit A to the Supplemental Declaration of Francis. P. McConville ("Supp. McConville Decl."). As the movant claiming the largest financial interest while also satisfying the typicality and adequacy requirements of Rule 23, Heritage is the presumed "most adequate plaintiff," and should therefore be appointed as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Varghese v.*

2

*China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (noting that approximate losses suffered is the most important metric for analyzing financial interest).

Independent of respective financial interests, the PSLRA-mandated certification submitted with Nutit's motion failed to provide the requisite authority from the entity's Board of Directors, rendering Nutit's motion defective. *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."). Specifically, neither the declaration of one of Nutit's directors, Zenděk Strnad, nor Nutit's certification with Strnad as sole signatory, makes any mention of Strnad's authority to bind Nutit to this litigation. Further, Nutit's Articles of Association requires the signature of two directors to bind the Company, and the law of the Czech Republic requires Nutit's chairman to act in litigation or, in the alternative, to empower another agent through a written power of attorney. *See* Declaration of Jiří Buchvaldek (the "Buchvaldek Decl."), attached as Exhibit B to the Supp. McConville Decl. Absent such actions, Nutit's certification is defective under the PSLRA and Nutit must be disqualified from consideration as Lead Plaintiff. Upon Nutit's disqualification, Heritage unequivocally possesses the largest financial interest under either class period before the Court.

Under either circumstance, Heritage is the only qualified movant and is thus the presumptive Lead Plaintiff. As no movant has, or will be able to, submit the requisite "proof" to rebut this strong, statutory presumption in favor of Heritage, it is entitled to appointment under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is

3

convinced that some other plaintiff would do a better job."). Accordingly, Heritage respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its selection of Lead Counsel; and deny all competing motions.

## ARGUMENT

### I.   HERITAGE IS THE PRESUMPTIVE LEAD PLAINTIFF

Heritage is the movant claiming the largest financial interest while satisfying the adequacy and typicality requirements of Rule 23 in the only cognizable class period before the Court. Therefore, Heritage is the presumptive Lead Plaintiff and entitled to appointment. *See Mayer v. Apogee Enters., Inc.*, No. 18-cv-3097 (NEB/SER), 2019 WL 927315, at *1–2 (D. Minn. Feb. 26, 2019).

#### A.   The Expanded Class Period Should be Rejected

The *Palacios* Action has set forth no valid justification for its expansion of the class period. While Heritage does not foreclose the possibility that subsequent pleadings may justify such expansion, as currently pled, the Expanded Class Period fails to survive even the most lenient standard of review. The Court should reject the Expanded Class Period and instead utilize the Original Class Period for the purposes of this motion.

While courts will typically adopt the longest, most inclusive class period at the lead plaintiff stage, certain judicial tests have emerged to safeguard against meritless expansion. In *Centerline*, Judge Scheindlin rejected a longer class period under a plausibility standard, finding that the complaint "fail[ed] to allege any facts whatsoever that would support an inference that [the defendants'] statements were false when made." 2008 WL 1959799, at *3. In *MGIC Investment*, Judge Adelman applied a frivolity test, holding that "[f]or purposes of selecting the lead plaintiff," it was appropriate to "review the complaint and briefs to make sure that the allegations supporting the longer class period are not obviously frivolous." *MGIC Investment*,

256 F.R.D. at 625; *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 436 (S.D. Tex. 2010) (adopting *MGIC* approach to consider whether allegations supporting the longest noticed class period are "obviously frivolous").[4]

Just two months ago, Judge Ramos applied both the frivolity and plausibility tests in declining to use a longer class period at the lead plaintiff stage. *See Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *5 (S.D.N.Y. June 29, 2020). In *ABIOMED*, Judge Ramos found that the complaint advancing the longer period had "proffer[ed] no factual allegations that defendants' statements made in early November 2018 were false or misleading." *Id.* While Judge Ramos did not foreclose on the possibility that "plaintiffs could . . . plead or prove an observed decline in the rate of revenue growth by early November 2018," as it currently stood, the longer class period "ple[d] no facts that make [it] plausible." Here, just as in *ABIOMED*, the Expanded Class Period should be rejected as both frivolous and implausible as pled.

Under either standard, the Expanded Class Period fails. The *Palacios* Action, as do all related actions pending before the Court, alleges the following theory of fraud:

> USO stated that it would achieve its investment objective by investing substantially all of its portfolio assets in the near month WTI futures contract. ***However, unbeknownst to investors, extraordinary market conditions in early 2020 made USO's purported investment objective and strategy unfeasible. Oil demand fell precipitously as governments imposed lockdowns and businesses halted operations in response to the coronavirus pandemic. In addition, in early March 2020, Saudi Arabia and Russia launched an oil price war, increasing production and slashing export prices in a bid to increase the global market share of their domestic petrochemical enterprises***. As excess oil

---

4  Importantly, despite these differing standards of review, electing to use a shorter class period for lead plaintiff appointment has no prejudicial effect on the putative class, as "all courts agree that they should not make any binding determinations regarding the proper class period as part of the lead-plaintiff analysis." *MGIC Investment*, 256 F.R.D. at 624.

supply increased and oil prices waned, the facilities available for storage in Cushing, Oklahoma approached capacity, ultimately causing a rare market dynamic known as "super contango" in which the futures prices for oil substantially exceeded the spot price. At the same time, retail investors began pouring hundreds of millions of dollars into USO in an attempt to "buy the dip," believing (correctly) that the price of oil would rebound as economies exited lockdown periods and the Russia/Saudi oil price war ended. Because of the nature of USO's investment strategy, these converging factors caused the Fund to suffer exceptional losses and undermined the Fund's ability to meet its ostensible investment objective.

*Palacos* Action, ECF No. 1 ¶ 3 (emphasis added); *see also Palacios* Action Notice, Supp. McConville Decl. Ex. C.  Therefore, all three above-captioned actions allege that unprecedented COVID-19 shutdowns/interruptions, as well as the oil pricing war between Russia and Saudi Arabia, set into motion a chain of events which ultimately caused USO to suffer significant losses and materially impaired its investment strategy.

Unlike the *Lucas* and *Ephrati* Actions, which allege a class period beginning in March 2020, the *Palacios* Action alleges a class period beginning on February 25, 2020.  The *Palacios* Action, however, provides no factual basis to support its expansion of the class period, instead parroting the earlier-filed actions by alleging that Defendants failed to disclose the "extraordinary convergence of existential threats that the Fund was in fact facing ***at the time***." *Id.* ¶ 57 (emphasis added).  In regard to COVID-19 specifically, the *Palacios* Action alleges that at the start of the Expanded Class Period, USO "had ***already*** been severely impacted by increased volatility in oil and oil-related markets and reduced oil demand as a result of the COVID-19 pandemic." *Id.* ¶ 59 (emphasis in original).  Therefore, according to the *Palacios* Action, at the start of the Expanded Class Period USO had ***already*** been impacted by an adverse combination of oil volatility and demand caused by COVID-19 and the oil pricing war.  Yet at the outset, the *Palacios* Action concedes (correctly) that the oil pricing war between Saudi Arabia and Russia

6

did not begin until "early March 2020." Thus, for the Expanded Class Period to be "obviously not frivolous," let alone plausible, COVID-19 interruptions must have already been impacting USO's operations on or before February 25, 2020. As pled, unfortunately, this is not the case.

While COVID-19 had already begun its now-infamous global spread in February 2020, it was not until March 2020 that the virus truly began to impact oil prices on a global scale. As such, widespread government imposed lockdowns and halted business operations—the very same interruptions the *Palacios* Action alleges caused demand for oil to fall precipitously—did not occur until March 2020.[5] On this point, USO's subsequent filings with the SEC describing the related impacts to its operations *explicitly state* that such impacts began in ***March 2020***:

> ***In March 2020, contango dramatically increased and reached historic levels during the economic crisis arising from the COVID-19 pandemic and disputes among oil producing nations regarding limits on oil production levels***. This contango was due to significant market volatility that has occurred and is continuing in the crude oil markets as well as the oil futures markets. Crude oil prices have collapsed in the wake of the COVID-19 demand shock, which reduced global petroleum consumption, and the price war launched by Saudi Arabia at the beginning of March 2020 in response to Russia's unwillingness to participate in extending previously agreed upon supply cuts. An estimated twenty million barrels a day of crude demand evaporated as a result of quarantines and massive drops in industrial and manufacturing activity. In addition, the United States, OPEC, Russia, and other oil producers around the world agreed to a historic 9.7 million barrel per day cut to crude supply. In the short term, this cut does not close the gap relative to the massive drop in demand. However, the duration of the agreement, lasting until 2022, should allow oil prices to slowly recover as demand re-materializes. ***The supply cut should also reduce at least some of the unprecedented volatility oil markets experienced in March***. As the crisis continues into the second quarter of 2020, and potentially beyond, demand weakness and

---

[5] *See generally* Secon, Woodward, & Dave Mosher, *A comprehensive timeline of the coronavirus pandemic at 6 months, from China's first case to the present*, Business Insider (June 30, 2020), https://www.businessinsider.com/coronavirus-pandemic-timeline-history-major-events-2020-3.

7

limited storage capacity will continue to put pressure on crude oil in the near term.[6]

(emphasis added).  Finally, and most telling, the volatility in the price of oil only *began* to spike

in March 2020:



Despite this evidence to the contrary, the *only* token factual basis offered in the *Palacios*

Action, is that "the coronavirus pandemic had been declared a global public health emergency by

the WHO in January 2020."  *Palacios* Action, ECF No. 1 ¶ 52.  Even this justification lacks bite.

The World Health Organization declared COVID-19 a *pandemic* in March 2020.[8]  Simply put,

the *Palacios* Action has made no attempt to justify the Expanded Class Period, especially in light

of all publicly available information pointing to March 2020.  Accordingly, the Expanded Class

Period, as pled, is implausible and frivolous.

---

[6]   *See* https://www.sec.gov/Archives/edgar/data/1327068/000117120020000335/i20312_uso-s3a2.htm.

[7]   Source: Bloomberg market data; *see also* Hodari & Toy, *Crude Leaps More Than 20% on Hopes Price War Will End*, Wall St. J. (Apr. 2, 2020), https://www.wsj.com/articles/oil-leaps-on-hopes-for-u-s-action-end-to-saudi-russia-spat-11585821756.

[8]   *WHO Declares Pandemic; Deaths in Italy Surge 31%: Virus Update*, Bloomberg (Mar. 11, 2020), https://www.investing.com/news/economy/who-declares-pandemic-deaths-in-italy-surge-31-virus-update-2107557#:~:text=%28Bloomberg%29%20--%20The%20World%20Health%20Organization%20declared%20the,10%20times%20more%20deadly%20than%20the%20seasonal%20flu.

Finally, Judge Chhabria's opinion in *SanDisk* is instructive as to the risk of delay associated with adopting the Expanded Class Period. *Union Asset Mgmt. Holding v. SanDisk Corp.*, No. 15-cv-01455-VC, 2016 WL 406283 (N.D. Cal. Jan. 22, 2016). In *SanDisk*, Judge Chhabria was compelled to reopen the lead plaintiff process at the motion to dismiss, finding that the adoption of the longer class period at the lead plaintiff stage had been improper. *Id.* at *5. Judge Chhabria had previously adopted the longest class period at the lead plaintiff stage "after taking a quick look at the complaint." *Id.* During the "hard look . . . taken in response to the motion to dismiss," however, Judge Chhabria discovered the longer class period to be rife with infirmities—concluding that "the class period proposed by the current lead plaintiffs was artificially long." *Id.* Reflecting on the "more realistic" class period, Judge Chhabria determined that "lead plaintiffs may not have the largest financial interest in the relief sought by the class." *Id.* Consequently, Judge Chhabria ordered that notice be republished, and the lead plaintiff process reinitiated.

As a result of the foregoing, Heritage respectfully requests that the Court decline to adopt the Expanded Class Period for the purposes of lead plaintiff appointment.

**B.    Heritage Has the Largest Financial Interest Under the Operative Class Period**

Because the *Palacios* Action has failed to set forth a cognizable justification for the Expanded Class Period, Heritage is the presumptive lead plaintiff.

Heritage is the movant possessing the largest financial interest of **$4,545,829** in the Original Class Period. *See McKenna v. Dick's Sporting Goods, Inc*, No. 17-CV-3680 (VSB), 2018 WL 1083971, at *4–5 (S.D.N.Y. Feb. 27, 2018) (finding the movant with the largest financial interest to be the "presumptive lead plaintiff"). Heritage's claims are typical of the Class because it purchased USO securities in reliance on Defendants' alleged misstatements and

omissions and was damaged thereby. *See Gordon v. MiMedx Grp., Inc.*, No. 18 Civ. 01831 (ER), 2019 WL 1254551, at *3 (S.D.N.Y. Mar. 19, 2019).  Finally, Heritage is adequate because it lacks any antagonism towards the Class, has retained highly competent counsel, and has a substantial financial interest to ensure the vigorous advocacy on behalf of the Class.  *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009).

Therefore, because Heritage is the movant claiming the largest financial interest who also satisfies the typicality and adequacy requirements of Rule 23, the PSLRA mandates a strong presumption in favor of Heritage's appointment. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).  As no movant has, or will be able to, rebut this presumption with the requisite "proof,"  Heritage is entitled to appointment as Lead Plaintiff under the PSLRA's sequential review process. *See Cavanaugh*, 306 F.3d at 732.

## II.    NUTIT'S INVALID CERTIFICATION IS DISQUALIFYING

Nutit's PSLRA certification, signed by only a single Director without apparent authority to bind Nutit and in violation of its Articles of Association and the laws of the Czech Republic, is null and void.  Having failed to timely submit a valid certification, Nutit's motion for appointment as Lead Plaintiff must be denied.  *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d at 818 (discussing strict, 60-day deadline to file motions for lead plaintiff appointment).

*First*, both Nutit's certification and the declaration of its compliance officer and Director, Strnad, fail to state that Strnad individually has the authority to bind Nutit to this litigation.  Nutit's PLSRA mandated certification provides only Strnad's title as "Director & Compliance Officer," and remains entirely silent as to his authority to bind Nutit.  Similarly, Strnad's declaration vaguely asserts that he is "authorized to make this declaration," but fails to specify whether he is authorized to make the declaration on Nutit's behalf or the source of his authority to bind Nutit.  Courts have rejected lead plaintiff applications on the ground that the relevant

10

PSLRA certification lacks any indication that its signatory had the requisite authority, and this Court should do so here. *See, e.g., In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 WL 918535, at *2–4 (D.N.J. Mar. 3, 2015) (rejecting institutional lead plaintiff movant where certification provided no indication that its signer was authorized to sign on the company's behalf); *In re Enzymotec Sec. Litig.*, 2015 WL 918535, at *3 (rejecting lead plaintiff movant where certification "provide[d] no indication that its signer . . . is authorized to sign the certification on [movant's] behalf").

     *Second*, Nutit is a joint stock company organized under the laws of the Czech Republic. *See* Buchvaldek Declaration ¶ 3.  Nutit is overseen by two directors, Mr. Wojciech Świątkowski, the Chairman of the Board, and Mr. Zdeněk Strnad, the Director and compliance officer who signed Nutit's certification. *Id.*; ECF No. 45-4 ¶ 1.  Nutit's Articles of Association unequivocally provide that "the company shall ***always*** *be represented by at least two members of the Board of Directors jointly*, ***always*** *the Chairman of the Board of Directors and another member of the Board of Directors*."  Buchvaldek Declaration ¶ 5 (emphasis added).  Nutit's PSLRA required certification, however, is executed by only one Director, Strnad, and thus fails to satisfy the rudimentary corporate formality necessary to bind Nutit and ensure its consideration as a Lead Plaintiff movant in this Action.

     *Finally*, Nutit's PSLRA required certification, despite its compliance officer's alleged "significant legal experience in commercial law, civil law, and acquisitions and mergers" (ECF No. 45-4 ¶ 1), fails to append evidence of Strnad's signing authority as required under Czech law and Nutit's Articles of Association.  Specifically, "[t]he [PSLRA] makes such certifications a prerequisite to making an application to serve as lead plaintiff" and such certifications must be submitted in writing. *See In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 WL

476658, at *3 (N.D. Ill. Jan. 28, 2020).  Under the relevant law of the Czech Republic, the fact that the certification is a written instrument requires Strnad to append a written delegation of authority or written power of attorney to demonstrate his signing authority.  *See* Buchvaldek Declaration ¶ 6.  Having failed to do so, the certification does not bind Nutit.

In sum, the evidence demonstrates that Nutit filed an invalid and defective certification, disqualifying it from consideration as Lead Plaintiff in this Action. *See Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-cv-3244 (WJM), 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (lead plaintiff movant's "deficient certifications will subject it to a unique defense that renders them "incapable of adequately representing the class" and, as a result, they are not the presumptively most adequate lead plaintiff") (citation omitted); *see also Baydale v. Am. Express Co.*, No. 09 Civ. 3016 (WHP), 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (denying Swedish money manager's motion for appointment as lead plaintiff where there was a concern as to whether it had authority under Swedish law to sue on behalf of its funds).[9]

## III.   ALL REMAINING MOTIONS SHOULD BE DENIED

As a result of the foregoing, Heritage is the only qualified movant claiming the largest financial interest while also satisfying the typicality and adequacy requirement of Rule 23 in **any** class period, and is thus entitled to appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  As the lead plaintiff review process mandated by the PSLRA is a sequential one, the Court's inquiry thus begins and ends with Heritage.  *See In re Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he

---

[9] Critically, any attempt by Nutit to remedy these deficiencies would be untimely under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(A)(ii); *see also Nasin*, 2017 WL 5598214, at *3 (rejecting attempt to file amended certification after the 60-day deadline).

is entitled to lead plaintiff status . . . .").  By virtue of this reason alone, Heritage should be appointed, and all competing motions denied.

The USO Investor Group should additionally be denied as an unrelated, lawyer-driven group, cobbled together solely for the purposes of claiming a larger loss.  In passing the PSLRA, "Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff."  *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997); *see also  In re Ply Gem Holdings Inc. Sec. Litig.,* No. 14-CV-3577 (JPO), 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) ("[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation.").  While there is not a *per se* ban on unrelated lead plaintiffs groups in this District,[10] a group of unrelated investors vying for appointment is required to make a "compelling showing" as to how its appointment would benefit the class.  *Elstein v. Net1 UEPS Techs.*, Inc., No. 13 Civ. 9100 (ER), 2014 WL 3687277, at *2 (S.D.N.Y. July 23, 2014) ("courts have typically required that plaintiffs lacking such a relationship present a more compelling showing.").  Because the USO Investor Group has shown "nothing to indicate that the overall quality of the action will be improved by [its appointment]," its motion should be denied as contrary to the purposes of the PSLRA.  *Id.* at *5

Accordingly, all competing motions should be denied.

## CONCLUSION

For the foregoing reasons, Heritage respectfully requests that the Court issue an Order (i) consolidating the above-captioned actions; (ii) appointing Heritage as Lead Plaintiff for the

---

[10] As previously stated in Heritage's opening papers, Mr. Chang is the CEO and sole shareholder and beneficiary of Heritage Investment.  *See* ECF No. 39-1 (Declaration of Mr. Chang).  Therefore, while Heritage may technically encompass two legal "persons," it does not fall under the traditional lead plaintiff "group" analysis.

Class; (iii) approving Heritage's selection of Labaton Sucharow as Lead Counsel for the Class; and (iv) granting such other relief as the Court may deem just and proper.

DATED: September 1, 2020                    Respectfully submitted,

                                            */s/ Francis P. McConville*

                                            **LABATON SUCHAROW LLP**
                                            Christopher J. Keller
                                            Eric J. Belfi
                                            Francis P. McConville
                                            David J. Schwartz
                                            140 Broadway
                                            New York, New York 10005
                                            Telephone: (212) 907-0700
                                            Facsimile: (212) 818-0477
                                            ckeller@labaton.com
                                            ebelfi@labaton.com
                                            fmcconville@labaton.com
                                            dschwartz@labaton.com

                                            *Counsel for Lead Plaintiff Movant Andrew
                                            Taesoo Chang and Heritage Investment
                                            Corp. and Proposed Lead Counsel for the
                                            Class*

                                            **THE SCHALL LAW FIRM**
                                            Brian Schall
                                            Rina Restaino
                                            1880 Century Park East, Suite 404
                                            Los Angeles, California 90067
                                            Telephone: (310) 301-3335
                                            Facsimile: (310) 388-0192
                                            brian@schallfirm.com
                                            rina@schallfirm.com

                                            *Additional Counsel for Andrew Taesoo
                                            Chang and Heritage Investment Corp.*

14