UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                                              x
ROBERT LUCAS, Individually and on Behalf  :   Civil Action No. 1:20-cv-04740-PGG
of All Others Similarly Situated,         :
                                          :   CLASS ACTION
                                          :
                  Plaintiff,              :
                                          :
                                          :
      vs.                                 :
                                          :
UNITED STATES OIL FUND, LP, UNITED        :
STATES COMMODITY FUNDS LLC, JOHN          :
P. LOVE and STUART P. CRUMBAUGH,          :
                                          :
                  Defendants.             :
                                          :
                                              x
MOSHE EPHRATI, Individually and on        :   Civil Action No. 1:20-cv-06010-PGG
Behalf of All Others Similarly Situated,  :
                                          :   CLASS ACTION
                  Plaintiff,              :
                                          :
                                          :
      vs.                                 :
                                          :
UNITED STATES OIL FUND, LP, UNITED        :
STATES COMMODITY FUNDS LLC, JOHN          :
P. LOVE and STUART P. CRUMBAUGH,          :
                                          :
                  Defendants.             :
                                              x
```

[Caption continued on following page.]

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD
PLAINTIFF MOTION

4844-5571-3482.v2

<table>
<tr><td>DANNY PALACIOS, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>UNITED STATES OIL FUND, LP, UNITED STATES COMMODITY FUNDS LLC, JOHN P. LOVE and STUART P. CRUMBAUGH,<br><br>     Defendants.</td><td>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:</td><td>Civil Action No. 1:20-cv-06442-PGG<br><br><u>CLASS ACTION</u></td></tr>
</table>

4844-5571-3482.v2

**TABLE OF CONTENTS**

<b>Page</b>

I.     INTRODUCTION ..................................................................................................................1

II.    ARGUMENT.......................................................................................................................3

        A.     Heritage's Attempt to Shrink the Class Period to Leapfrog Nutit as the Movant with the Largest Financial Interest Is Factually Incorrect and Improper........................................................................................................................3

        B.     The Presumption in Nutit's Favor Has Not Been Rebutted....................................8

III.    CONCLUSION.................................................................................................................10

4844-5571-3482.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bodri v. GoPro, Inc.*,
  2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ............................................................5

*City of Roseville Emps.'Ret. Sys. v. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010),
  *aff'd*, 442 F. App'x 672 (3d Cir. 2011)...................................................................8

*Eichenholtz v. Verifone Holdings, Inc.*,
  2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .........................................................2

*Hom v. Vale, S.A.*,
  2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..............................................................4

*In re BP, PLC Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) .....................................................................6

*In re Centerline Holding Co. Sec. Litig.*,
  2008 WL 1959799 (S.D.N.Y. May 5, 2008) .............................................................6

*In re Century Bus. Servs. Sec. Litig.*,
  202 F.R.D. 532 (N.D. Ohio 2001) .......................................................................2, 4

*In re KIT Digit., Inc. Sec. Litig.*,
  293 F.R.D. 441 (S.D.N.Y. 2013) .............................................................................1

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................4

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
  2020 WL 3396660 (S.D. Ohio June 19, 2020) ........................................................4

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ........................................................8

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998)........................................................................................6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) .............................................................................6

*Rao v. Quorum Health Corp.*,
  221 F. Supp. 3d 987 (M.D. Tenn. 2016)...................................................................9

4844-5571-3482.v2

**Page**

*Union Asset Mgmt. Holding v. SanDisk Corp.*,
2016 WL 406283 (N.D. Cal. Jan. 22, 2016) ..............................................................7

*Villare v. ABIOMED, Inc.*,
2020 WL 3497285 (S.D.N.Y. June 29, 2020) ...........................................................6

*Wilder v. News Corp.*,
No. 1:11-cv-04947-PGG (S.D.N.Y. June 5, 2012) ...................................................1

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(2)(A)..........................................................................................................9
§78u-4(a)(3)(B)(iii)(II) .............................................................................................1

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................................1, 3

4844-5571-3482.v2

## I.    INTRODUCTION

The field of lead plaintiff motions filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") has been narrowed down to two: (1) Nutit, A.S., a sophisticated investor with the largest loss; and (2) Andrew Taesoo Chang on behalf of himself and in his capacity as Chief Financial Officer and sole shareholder of Heritage Investment Corp. ("Heritage").[1]

With a loss of more than $13.5 million under either the last-in, first-out ("LIFO") or the first-in, first-out ("FIFO") methods – ***more than double the next largest movant*** – Nutit indisputably possesses the largest financial interest and is otherwise adequate and typical under Rule 23.  *See* ECF No. 45-3.  Accordingly, Nutit is entitled to the PSLRA's "most adequate plaintiff" presumption.  To rebut this presumption, Heritage is required to offer "***proof***" that Nutit "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see also Wilder v. News Corp.*, No. 1:11-cv-04947-PGG, ECF No. 31 at 3 (S.D.N.Y. June 5, 2012) (Gardephe, J.) (competing movant must offer "***proof***" to rebut presumption).  Heritage has not done so.

Rather than accept Nutit's greater financial interest under the longer, more inclusive class period that Heritage itself used to calculate its financial interest in its motion, Heritage's opposition

---

[1]    Richard Vogel and Elaine Vogel; Ali Pourmemar and Randall Hernandez; Steven Bailey; and Guohua Wang filed notices of non–opposition to the competing lead plaintiff motions, recognizing that they do not possess the largest individual financial interest and/or acknowledging that Nutit possesses the largest financial interest. *See* ECF Nos. 50, 52, 53, 54 ("movant Nutit . . . appears to have by far the "largest financial interest" in the outcome of the litigation of all other movants, and apparently satisfies all other PSLRA requirements for Lead Plaintiff appointment" and "submit[ting] the appropriate class period for this litigation is the longer period of February 25, 2020, through April 28, 2020").  Andrei Danet withdrew his motion on August 31, 2020.  *See* ECF No. 51.  The remaining movants – Joseph A. O'Connor Trust and Arjun Bhartia as well as Fady Sorial and Ramy Sorial – failed to file response briefs and have presumably abandoned their motions.  *See In re KIT Digit., Inc. Sec. Litig.*, 293 F.R.D. 441, 443 (S.D.N.Y. 2013) ("Two additional movants . . . did not file opposition briefs, and thus the Court deems their applications abandoned or withdrawn.").  Unless otherwise noted herein, all emphasis is added and citations are omitted.

4844-5571-3482.v2

switches gears and urges the Court to adopt a shorter class period (*see* ECF No. 56 at 5), an argument that is "***inimical*** to the interests of the class members [Heritage] purportedly represent[s]." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008). As Heritage acknowledged in its motion, "at the lead plaintiff stage, courts have found that the 'use of the longer, more inclusive class period is proper . . . because the longer class period encompasses more potential class members and damages.'" ECF No. 34 at 2 n.2. If, as Heritage now claims, the longer period truly is implausible, Heritage would have argued that point in its motion instead of advocating for the longer period – a period which increased the size of its own claimed loss by more than 37% – over the shorter class period. *Compare* ECF No. 39-3 *with* ECF No. 57-1. It did not. Instead, Heritage only abandoned the longest class period ***after*** it saw the competing motions and realized it lacked the largest financial interest in that period. For this reason alone, Heritage's belated contentions regarding the length of the class period should be rejected.

Moreover, Heritage's attempt to shorten the class period fails as the longest period is not only plausible, but supported by Heritage's own opposition. Heritage concedes that "COVID-19 had already begun its now-infamous global spread ***in February 2020***" (ECF No. 56 at 7), which rendered the United States Oil Fund, LP's ("USO" or the "Fund") registration statement filed on February 25, 2020 ("February Registration Statement") false and misleading. *See Palacios* ECF No. 1 at ¶¶30, 52. "Since allegations of misrepresentation have been made, it would be premature for the court to use a class period that disregards damages potentially suffered due to [USO]'s alleged misrepresentation[.]" *Eichenholtz*, 2008 WL 3925289, at *2. Accordingly, because these well-pled allegations are neither frivolous nor implausible, the Court should reject Heritage's attempt to "shrink the kingdom until [it is] king." *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001).

4844-5571-3482.v2

Even assuming, *arguendo*, that the shorter class period should prevail at this early stage, Nutit's \$4.5 million LIFO loss in that period (*see* ECF No. 57-1 at 2) still would be significantly greater than Heritage's claimed loss because Heritage improperly attempts to include a purported \$1.5 million "loss" when it closed a put option position it opened March 11, 2020 – *i.e.*, **before** the shorter period Heritage now urges.  *See* ECF No. 39-2 at 9.  Heritage's decision to open this position was made during a period Heritage now argues was untainted by fraud and, therefore, cannot be used to inflate its losses.  As a result, even assuming Heritage's new (but erroneous) view of the pleadings was accurate, Nutit still suffered more than **50% greater losses** than Heritage.  In sum, under any scenario, Nutit possesses a far greater financial interest in this case than Heritage.

Finally, Heritage argues that Nutit's Certification is defective (*see* ECF No. 56 at 3) despite containing all of the necessary representations attested to by a representative with personal knowledge pursuant to the PSLRA because "Nutit's Articles of Association requires the signature of two directors."  ECF No. 56 at 3.  Not only is any concern pertaining to Nutit's Certification – misplaced as it may be – moot given that Nutit has filed a Certification executed by both directors (*see* Declaration of David A. Rosenfeld in Support of Reply Memorandum of Law in Further Support of Lead Plaintiff Motion ("Rosenfeld Reply Decl."), Ex. A), Heritage's argument reflects a fundamental misunderstanding of the PSLRA certification requirement, and misapplies Czech law and Nutit's bylaws.

Because it is the investor with the largest loss – no matter the period – that also satisfies the requirements of Rule 23, Nutit respectfully submits that its motion should be granted.

## II.    ARGUMENT

### A.    Heritage's Attempt to Shrink the Class Period to Leapfrog Nutit as the Movant with the Largest Financial Interest Is Factually Incorrect and Improper

As Heritage itself recognized in "us[ing] the longer period for the purpose of calculating its

– 3 –

financial interest in its initial motion," courts routinely apply the longest class period to determine lead plaintiff movants' respective financial interests. *See* ECF No. 34 at 2 n.2; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("For the purposes of [the lead plaintiff] analysis, we use the longer class period with the earlier start date."); *Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) ("use of the longer, more inclusive class period is proper for purposes of the present motion because the longer class period encompasses more potential class members and damages"). This is especially true when, as here, the case involves complex factual determinations that will require expert testimony to resolve. Indeed, this case centers on the intricate interplay of oil futures markets, the spot price of oil, and the unique characteristics of the USO exchange traded fund, which are all impacted by commodity prices, oil supply and demand, liquidity constraints in the relevant securities markets, the nature of West Texas Intermediate futures delivery, and the exceptional circumstances and risks engendered by the coronavirus pandemic, related government shutdowns, and the Saudi/Russia oil price war. *See generally Lucas* ECF No. 1; *Ephrati* ECF No. 1; *Palacios* ECF No. 1.

Having now seen the competing movants' financial interests and realizing that Heritage's loss is not as large as Nutit's loss, Heritage invites the Court to shrink the class period by almost a month from February 25, 2020 through April 28, 2020 to March 19, 2020 through April 28, 2020. The Court should decline this request. *See, e.g.*, *Century Bus. Servs.*, 202 F.R.D. at 536 (lead plaintiff movants "cannot simply define the class they seek to represent . . . [or] shrink the kingdom until they are king"); *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660, at *6 (S.D. Ohio June 19, 2020) (refusing to allow movant to switch the "method of accounting which both [competing movants] adopted in their initial motions" and emphasizing that courts have "expressed disproval for vacillating advocacy such as this, especially as it pertains to

– 4 –

calculating losses for appointment as lead plaintiff"); *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology. . . . This fact alone counsels in favor of adopting the LIFO methodology, as opposed to the 'retained shares' methodology."). Indeed, if the longer class period truly is implausible as Heritage now claims, Heritage would have argued that point in its motion instead of advocating for the longer period – a period which increased the size of its claimed losses by more than 37% – over the shorter class period. *Compare* ECF No. 39-3 *with* ECF No. 57-1. Not only is Heritage's proposal bereft of the necessary legal support, it also betrays the theory of liability underlying the complaints on file.

Heritage now argues that the longer class period is both "frivolous and implausible" because there is supposedly no conceivable way the price of USO could have been impacted by the undisclosed risks alleged in the complaints at the period's start. ECF No. 56 at 5. Yet, Heritage's own opposition brief demonstrates that this is not true. As Heritage concedes, "COVID-19 had already begun its now-infamous global spread *in February 2020*." ECF No. 56 at 7. In fact, as has been widely reported, the COVID-19 pandemic began to spread internationally from China even earlier, in January 2020, and was declared a public health emergency of international concern by the World Health Organization that month. *See Palacios* ECF No. 1 at ¶52. Thus, the pandemic's spread by February 25, 2020, which is alleged to have posed undisclosed risks to USO investors, is not only plausible but well documented. The question is not one of plausibility, but, if anything, one of degree, and will involve the resolution of complex factual issues inappropriate for resolution at this stage of the proceedings.

– 5 –

4844-5571-3482.v2

The facial plausibility of the longer period here – as Heritage itself acknowledged by seeking to benefit from the longest period when its motion was filed – distinguishes this case from the wholly unsupported periods in the decisions Heritage cites.  For example, unlike in *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799 (S.D.N.Y. May 5, 2008), the *Palacios* complaint does not "fail[] to allege ***any facts whatsoever*** that would support an inference that [] statements were false when made." *Id*. at \*3; *see also Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at \*5 (S.D.N.Y. June 29, 2020) (the complaint advancing the longer class period alleged ***no facts*** that made it "plausible").  Here, the *Palacios* complaint clearly alleges that USO's February Registration Statement was false and misleading as it failed to disclose how the coronavirus – which had already ravaged China and other Asian countries by this time – threatened the Fund's performance and investment objective.  *See Palacios* ECF No. 1 at ¶¶30, 52 (alleging that the February Registration Statement's risk disclosures failed to address how the coronavirus, which "had been declared a global public health emergency by the WHO ***in January 2020***," would impact the Fund).  The longer class period clearly meets the "obviously frivolous" standard applied in *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009), as well as numerous other decisions wherein courts have adopted the longer, more inclusive period. *See also, e.g.*, *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010) (same).

Irrespective of the fact that Heritage relies on inappropriate materials outside of the four corners of the complaints in its attempt to undermine the longer class period, *see, e.g.*, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) (recognizing that review of a motion to dismiss must be limited to the "four corners" of the complaint), these materials affirm that Nutit's financial interest is greater.  As alleged, USO's artificial inflation rendered the Fund's NAV per share, which USO published "daily," false and misleading.  *See Lucas* ECF No. 1 at ¶¶24, 61-65;

*Ephrati* ECF No. 1 at ¶¶24, 39-43; *Palacios* ECF No. 1 at ¶¶24, 63-67.  In arguing that the class period should begin on March ***19***, 2020, Heritage points to oil price volatility which purportedly "spike[d]" on March ***9***, 2020, contending that this is the earliest point at which it is plausible to allege that defendants' statements regarding USO's NAV and investment objective were materially false and misleading.  ECF No. 56 at 8.  But, in doing so, Heritage fails to recognize that Nutit first purchased its USO shares on March ***9***, 2020*, meaning that Nutit's losses are entirely encompassed within the actual period during which Heritage now claims the price of USO was first plausibly impacted by fraud.  Thus, even if Heritage's extrinsic materials are considered (which they should not be), Nutit's financial interest would remain the largest of all movants at more than $13.5 million. *See* ECF No. 45-2 at 5.  As such, *Union Asset Mgmt. Holding v. SanDisk Corp.*, 2016 WL 406283 (N.D. Cal. Jan. 22, 2016), is inapposite because even under Heritage's erroneous view of the pleadings and facts at issue in this case, Nutit would still indisputably "have the largest financial interest in the relief sought" by the putative class.  *Id*. at *5.

Finally, even if one were to disregard the relevant case law, the pleadings, and Heritage's own factual contentions and begin the class period on March 19, 2020, Nutit's $4.5 million LIFO loss during the shortened period (*see* ECF No. 57-1 at 2) would ***still*** be significantly greater than Heritage's financial interest because Heritage inflated its loss amount in this period by more than $1.5 million.  As its loss chart demonstrates, Heritage sold 20,000 put option contracts on March 11, 2020 with a strike date of March 27, 2020 – a position that Heritage opened well ***before*** its preferred class period.  *See* ECF No. 39-3 at 3.  Nine days later, on March 20, 2020, Heritage closed this pre-class period position by repurchasing the 20,000 put contracts.  *Id.*  Thus, under Heritage's own gerrymandered class period, any impact from its March 11, 2020 option position would not be recoverable because the position was entered into ***before*** the time Heritage argues the prices of USO

securities were impacted by defendants' fraud.  *See, e.g.*, *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 394 (D. Del. 2010) ("To have standing, a plaintiff must base its claims on allegedly false or misleading statements ***made prior to*** plaintiff's security purchases or sales."), *aff'd*, 442 F. App'x 672 (3d Cir. 2011) (emphasis added and in original). When these "losses" are properly removed, Nutit's LIFO loss during Heritage's own truncated class period are ***more than $1.5 million greater, or more than 50% larger,*** than Heritage's own claimed LIFO loss.  *See* ECF No. 57-1 at 2.[2]

In sum, Heritage's attempt to shrink the class period is improper and does not change the fact that Nutit possesses a far greater financial interest than Heritage in any proposed period.

### B.    The Presumption in Nutit's Favor Has Not Been Rebutted

Armed with nothing more than rank speculation, Heritage contends that Nutit is inadequate to serve as lead plaintiff because Nutit's "PSLRA certification, signed by only a single Director without apparent authority to bind Nutit and in violation of its Articles of Association and the laws of the Czech Republic, is null and void."  ECF No. 56 at 10.  Heritage's attempt to rebut the presumption in Nutit's favor not only falls short, it also serves to further demonstrate Heritage's own inadequacy and lack of understanding of the PSLRA's lead plaintiff requirements.

As an initial matter, any concern pertaining to Nutit's Certification – misplaced as it may be – is moot given that Nutit has executed a Certification executed by both of its directors.  *See* Rosenfeld Reply Decl., Ex. A.  And any argument by Heritage that the Certification is untimely

---

[2]    These purchases also raise typicality and adequacy concerns unique to Heritage because they reflect a bearish view of the price of USO.  Much like a short sale, by covering put option contracts that it had written, Heritage was expressing a concern that the price of USO would continue to decline below the strike price, rather than the belief that the price of the shares would increase in value as was typical for the class.  *See, e.g.*, *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (finding that "short selling shares and buying to cover those short sales . . . [is] atypical of the class as profit accrues when the price of the security decreases").

– 8 –

would be disingenuous because, as its own counsel recognized, "the certification requirement in the PSLRA does not have a time limit" and "many courts have allowed lead plaintiff movants to amend their certifications." *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016) (collecting cases); Rosenfeld Reply Decl., Ex. B.

More to the point, Heritage's contention defies the PSLRA which simply requires that all "plaintiff[s] seeking to serve as a representative party on behalf of a class" must "provide a sworn certification" containing certain averments. 15 U.S.C. §78u-4(a)(2)(A). Tellingly, Heritage does not argue that Nutit failed to timely file a sworn Certification, that Nutit failed to include the requisite information, that any of the PSLRA-required information is inaccurate or lacking, or that the Nutit representative who signed the Certification does not have personal knowledge of the facts attested therein. Nor can it, given that Nutit's Certification largely mirrors Heritage's own Certification. *Compare* ECF No. 39-2 *with* 45-2.

Rather, Heritage argues that under the laws of the Czech Republic and Nutit's bylaws – not the PSLRA – both of Nutit's directors must authorize any official acts taken by Nutit, including the filing of a lead plaintiff motion. *See* ECF No. 56 at 10. Heritage's argument fails because it misapprehends the difference between a contract and a certification. The Czech Republic statute Heritage references pertains to legal undertakings, *i.e.*, contracts. A PSLRA certification is not a contract, but is akin to an affidavit as it is testimonial information sworn under penalty of perjury. More problematic to Heritage's position, Nutit received authorization from ***both directors*** to pursue its lead plaintiff motion, as demonstrated in its agreement signed well before the lead plaintiff motion's August 18, 2020 deadline (the relevant portion of which is produced below):[3]

---

[3]    Without waiving any applicable privileges (including the Attorney-Client Privilege), Nutit will provide a copy of its retainer to the Court for *in camera* review upon the Court's request.

– 9 –

4844-5571-3482.v2

NUTIT, A.S.
c/o Zdenek Strnad, Chairman
CUBE Office Complex
Evropská 178, 160 00 Praha 6-Vokovice

   Re: United States Oil Fund, LP Litigation

Dear Mr. Strnad:

  This letter will confirm that Robbins Geller Rudman & Dowd LLP and Bronstein, Gewirtz & Grossman, LLC have been retained by you in connection with securities litigation brought to recover the losses incurred by investors in United States Oil Fund, LP ("US Oil"). Robbins Geller

*  *  *

  Please sign below and return this agreement if you would like us to pursue this matter as outlined above.

     NUTIT, A.S.

     By: _____
       Zdenek Strnad, Chairman

     By: _____
       Wojciech Swiatkowski, Chairman

Thus, contrary to Heritage's rank speculation, Nutit not only followed the necessary provisions pursuant to the PSLRA, but also its own bylaws. In sum, Heritage has not offered the "*proof*" necessary to rebut the lead plaintiff presumption in Nutit's favor.

## III. CONCLUSION

  Nutit's lead plaintiff motion should be granted.

DATED: September 8, 2020     Respectfully submitted,

          _____
          *s/ David A. Rosenfeld*
          DAVID A. ROSENFELD

– 10 –

4844-5571-3482.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
VINCENT M. SERRA
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
PERETZ BRONSTEIN
EITAN KIMELMAN
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com
eitan@bgandg.com

– 11 –

4844-5571-3482.v2

Additional Counsel for Plaintiff

4844-5571-3482.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 8, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

4844-5571-3482.v2

# Mailing Information for a Case 1:20-cv-04740-PGG Lucas v. United States Oil Fund, LP et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jessica M. Bergin**
  jessica.bergin@ropesgray.com,courtalert@ropesgray.com

- **Regina Marie Calcaterra**
  rcalcaterra@calcaterrapollack.com

- **Richard William Gonnello**
  rgonnello@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,klenahan@faruqilaw.com,dbehnke@faruqilaw.com

- **Matthew Moylan Guiney**
  guiney@whafh.com

- **Shannon Lee Hopkins**
  shopkins@zlk.com,shalliday@zlk.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com,info@glancylaw.com,greg-linkh-2000@ecf.pacerpro.com

- **Francis Paul McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Seth Maxwell Pavsner**
  spavsner@hrsclaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Amy D. Roy**
  amy.roy@ropesgray.com,James.Nowell@ropesgray.com,Jessica.Bergin@ropesgray.com,CourtAlert@ropesgray.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert A. Skinner**
  Robert.Skinner@ropesgray.com,Megan.Everman@ropesgray.com,CourtAlert@ropesgray.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)