# EXHIBIT 1

Case 1:20-cv-04740-PGG   Document 158-1   Filed 11/24/21   Page 2 of 8

Release No. 11006 (S.E.C. Release No.), Release No. 33-11006, 2021 WL 5205955

S.E.C. Release No.
Securities Act of 1933

SECURITIES AND EXCHANGE COMMISSION (S.E.C.)

## IN THE MATTER OF UNITED STATES COMMODITY FUNDS LLC AND UNITED STATES OIL FUND, LP, RESPONDENTS.

Administrative Proceeding File No. 3-20648
November 8, 2021

**ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER**

**I.**

 **\*1**  The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), against United States Commodity Funds LLC ("USCF") and United States Oil Fund, LP ("USO") (together with USCF, "Respondents").

**II.**

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondents' Offer, the Commission finds[1] that:

**<u>Summary</u>**

1. These proceedings concern a failure to disclose material information by USO, a commodity pool regulated by the Commodity Futures Trading Commission ("CFTC") pursuant to the Commodity Exchange Act, and its general partner, USCF, a commodity pool operator registered with the CFTC, about certain limitations imposed on USO by its sole futures commission merchant ("FCM") during the time period specified below, that rendered statements made misleading.

2. In April 2020, macroeconomic events roiled the oil markets, and April 20, 2020 saw the near-month oil futures contract to expire, otherwise known as the ""front month futures contract," "go negative" (*i.e.*, breach zero and settle in negative territory) for the first-time ever. Around the same time, USO--an exchange-traded product ("ETP") that seeks for the changes in its net asset value ("NAV") to track the changes in the spot price of crude oil--received record investor inflows. On April 20, 2020, USO filed a Form 8-K announcing that it anticipated exhausting its existing inventory of available shares, and separately filed

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   1

IN THE MATTER OF UNITED STATES COMMODITY..., Release No. 11006...

Case 1:20-cv-04740-PGG    Document 158-1    Filed 11/24/21    Page 3 of 8

with the Commission a registration statement on Form S-3, also on April 20, 2020. On April 21, 2020, USO filed a Form 8-K that announced it had in fact exhausted its inventory and announced a suspension of new creations of shares.

**\*2** 3. Contemporaneous with, and in reaction to, these events, the FCM communicated to USO, one of its largest and most longstanding customers, a limitation in an April 22, 2020 telephone call, confirmed in an April 23, 2020 e-mail, that would inhibit USO's ability to invest through the FCM the proceeds generated by the future creation of new USO shares in any investment that would increase USO's risk profile ("New Creations Limit"). This New Creations Limit was critical to USO, as an ETP, as it restricted USO from investing the proceeds generated by the future sale of newly-created shares in certain oil futures contracts. This meant that those proceeds would have to be invested in U.S. Treasuries or cash equivalents or simply held as cash, thereby introducing the risk of tracking error between USO's investment objective and its NAV whenever the suspension of new creations was lifted.

4. Following the invocation of the New Creations Limit, USO made numerous relevant public filings, including pre-effective amendments to the April 20 registration statement, in which it could have made full and clear disclosure of the New Creations Limit. Instead, USO failed to fully disclose the character and nature of this limit. As a result, USO's investors failed to receive material information to inform their investment decisions.

5. At the time, Commission staff was conducting a review of USO's offering registration statement. Between around May 6 and 10, 2020, the FCM asked USO whether it had informed Commission staff of the New Creations Limit, and following USO's filing of a pre-effective amendment to the registration statement on May 11, 2020, the FCM itself informed Commission staff of the New Creations Limit. A Commission staff comment letter on the May 11 pre-effective amendment followed on May 13, 2020 and requested USO to, among other things, "[d]escribe the specific constraints placed on you by your FCM." In another pre-effective amendment to the registration statement filed on May 21, 2020, USO made curative disclosures, about a month after the New Creations Limit was first imposed. USO filed Forms 8-K on May 29 and June 9, 2020 announcing its agreements with additional futures commission merchants, and its registration statement was declared effective on June 12, 2020.

6. From April 24 through May 21, 2020, USO's public filings, including three pre-effective amendments to its registration statement, failed to fully disclose material information regarding the New Creations Limit in numerous public filings, rendering those public filings misleading. As a result, USO and USCF violated Section 17(a)(3) of the Securities Act.

**Respondents**

7. **United States Commodity Funds LLC** is a Delaware limited liability company, with its principal place of business in Walnut Creek, California. It is a registered commodity pool operator with the CFTC and a member of the National Futures Association. USCF's operating activities consist primarily of providing management services to eight Securities Act commodity-based funds, including USO, as their General Partner and serving as Sponsor for the fund series within two trusts. USCF is responsible for and signed all of USO's public filings with the Commission, including its prospectus, registration statement, amended registration statements, and Forms 8-K.

**\*3** 8. **United States Oil Fund, LP** is a Delaware limited partnership, with its principal place of business in Walnut Creek, California. It is a commodity pool regulated by the CFTC that registers with the Commission its continuous offering of common shares of beneficial interest under the Securities Act. Its shares may be purchased and sold on the NYSE Arca, Inc. ("NYSE Arca") stock exchange under the ticker "USO." USO is managed and controlled by USCF.

**Background**

**USO's Investment Objective and Portfolio**

IN THE MATTER OF UNITED STATES COMMODITY..., Release No. 11006...

Case 1:20-cv-04740-PGG    Document 158-1    Filed 11/24/21    Page 4 of 8

9. According to its March 23, 2020 Prospectus filed pursuant to Securities Act Rule 424(b)(3) ("Prospectus"), as supplemented April 1, 2020, USO's investment objective was for "its shares' per share net asset value ('NAV') to reflect the daily changes in percentage terms of the spot price of light, sweet crude oil delivered to Cushing, Oklahoma, as measured by the daily changes in the price of a specified short-term futures contract on light, sweet crude oil called the 'Benchmark Oil Futures Contract.'"

10. The Benchmark Oil Futures Contract is defined in the Prospectus as the "futures contract on light, sweet crude oil as traded on the New York Mercantile Exchange (the 'NYMEX') [*i.e.*, the NYMEX West Texas Intermediate ('WTI') Crude Oil Futures Contract ("WTI Oil Futures Contract")] that is the near month contract to expire, except when the near month contract is within two weeks of expiration, in which case it will be measured by the futures contract that is the next month contract to expire."

11. Although the Prospectus discloses USO may invest in "Oil Futures Contracts" other than the Benchmark Oil Futures Contract, as well as "Other Oil-Related Investments," prior to mid-April 2020, USO had historically invested primarily in the Benchmark Oil Futures Contract, otherwise known as the "front month futures contract."

12. Beginning in mid-April 2020, however, USO gradually changed the composition of its investment portfolio due to market events and resulting regulatory restrictions and FCM limitations, decreasing its concentration of investments in the Benchmark Oil Futures Contract and leading to a diversification of investments ranging from the front month futures contract to further down the futures curve into later months. Just before or while making these April changes to its investment portfolio, USO typically filed a Form 8-K, with the first such Form 8-K dated April 16, 2020 and the last such Form 8-K dated April 30, 2020. In the April 30 Form 8-K, USO provided a waterfall describing its future intended investment decision making, starting with investment in the front month futures contract and ending with investment in Other Oil-Related Investments.

**Oil "Goes Negative"**

 **\*4**  13. With the backdrop of the COVID-19 pandemic and a supplier price war, on April 3, 2020, the first of a series of April exchange notices were issued to certain market participants addressing the possibility of negative pricing of energy futures contracts. Before these issuances, there was market uncertainty as to whether futures exchanges would support oil going negative, *i.e.*, whether oil futures contracts could settle at a price below zero.

14. Soon thereafter, on April 20, 2020, the May WTI Oil Futures Contract, which was set to expire April 22, 2020, in fact breached zero for the first time ever, settling that day at -$37.63.[2]

**Increasing Inflows into USO**

15. Simultaneous with these oil market events, USO experienced record daily inflows into the pool, including from a substantial number of retail investors. For example, on April 13, 2020, USO experienced its second-largest inflows in the pool's history, and then, on April 16, 17, and 20, 2020, it experienced single-day record inflows, with each day surpassing the prior day's newly-established record.

16. As a result of these record daily inflows, USO exhausted its inventory of shares on April 21, 2020, and on that same date, it filed a current report on Form 8-K announcing that it had sold all of its shares and therefore was suspending new creations of shares.[3] In anticipation of exhausting its inventory of shares, USO on April 20, 2020 filed a Form 8-K announcing that fact and the same day filed a registration statement on Form S-3 seeking to register an offering of additional shares.

**FCM's Limitation on New Creations**

17. After oil went negative on April 20, 2020, the FCM, then USO's sole futures commission merchant, imposed certain limitations on USO pursuant to its account agreement with the pool. In particular, on April 22, 2020, the FCM conveyed on a telephone call with USO the newly-imposed New Creations Limit, which the FCM confirmed in an April 23, 2020 e-mail.

Case 1:20-cv-04740-PGG     Document 158-1     Filed 11/24/21     Page 5 of 8

IN THE MATTER OF UNITED STATES COMMODITY...; Release No. 11006...

18. As a result of this New Creations Limit, USO would be restricted from investing the proceeds of any new creations, if it had shares available for sale, in oil futures contracts that would allow it to meet its investment objective and instead would be limited to investing such proceeds in U.S. Treasuries or cash equivalents or simply holding them as cash. Therefore, the New Creations Limit presented the risk of tracking error between USO's investment objective and its NAV whenever new shares were registered and the corresponding suspension of new creations announced on April 21, 2020 was lifted.

19. On April 23, 2020, the FCM e-mailed formal notification of the New Creations Limit to USO, stating in relevant part: "[A]s discussed on our call, in light of current market conditions, [FCM] is not willing to expand the risk profile of the clearing relationship through new creations and additional increases in risk . . . ." And, the FCM again communicated the New Creations Limit in an e-mail sent to USO the morning after that, on April 24, 2020: "As a clarification to yesterday's note, [FCM] is not prohibiting the rebalance of the portfolio but [FCM] is not willing to expand the risk profile of the clearing relationship through new creations and additional increases in risk." That same evening, USO responded, "We will keep you posted on all developments and understand your comments below."

**USO's Disclosures Following New Creations Limit**

 **\*5**  20. In a Form 8-K dated April 24, 2020, USO first publicly referenced certain "risk mitigation measures" imposed by the FCM. In pertinent part, USO stated in the April 24 Form 8-K that, along with certain other circumstances, "risk mitigation measures imposed by USO's futures commission merchant . . . further limit USO and other market participants from investing in crude oil futures contracts in certain months," thereby "caus[ing] USO to invest in Oil Futures Contracts other than the Benchmark Oil Futures Contract." Nowhere did the April 24 Form 8-K specifically mention the FCM's limit on USO's ability, if it had shares available for sale, to invest the proceeds generated by new creations in any oil futures contracts.

21. In a Form 8-K dated April 27, 2020, USO repeated the above-referenced language. Moreover, following a description of "USO's Current Investment Intentions," USO included this additional language: "The foregoing investment intention announced in this Form 8-K could change as a result of any or all of the following: . . . additional or different risk mitigation measures taken by USO's FCM with respect to USO acquiring additional Oil Futures contracts . . . ." The New Creations Limit would not qualify as an "additional or different risk mitigation measure[]" that could cause a change to USO's investment intention, as the FCM had already imposed that limit five days earlier.

22. In a pre-effective amendment dated April 27, 2020, USO amended the registration statement it had previously filed on April 20, 2020, including among its revisions a repetition of the above-referenced language from the April 24 Form 8-K. And, in a Form 8-K dated April 30, 2020, USO explicitly referred back to its references to futures commission merchant "risk mitigation measures" in prior filings, stating "[a]s previously disclosed, various factors including, but not limited to, . . . risk mitigation measures imposed by FCMs on USO and other market participants, have severely limited USO's ability to invest in the Benchmark Oil Futures Contract and certain of the other investments in which USO traditionally would have invested in a substantial portion of its portfolio." Finally, in another pre-effective amendment dated May 6, 2020, USO amended its registration statement again, but references to futures commission merchant "risk mitigation measures" only used language that, in substance, resembled that found in the April 24 and 30 Forms 8-K.

**FCM's Inquiries as to USO's Outreach to Commission**

23. Although USO disclosed "risk mitigation measures imposed by [its] futures commission merchant" in various filings, it did not fully disclose the New Creations Limit, rendering statements it made misleading. Despite USO's failure to fully disclose the New Creations Limit in the above-referenced filings, the limit remained in place through late-April and into May 2020, with the FCM periodically re-emphasizing in e-mails and conversations with USO that the FCM was not willing to expand the risk profile of their clearing relationship through new creations. For example:
 **\*6**  • In a May 5, 2020 e-mail, the FCM included that "[u]nfortunately we will not be able to accommodate new creations;"

• In a May 6, 2020 e-mail, the FCM stated, "We need to reiterate our position limits as attached correspondence of April 23 remain in effect and [FCM] is not willing to expand the risk profile of our clearing relationship through new creations;"

• During a May 7, 2020 telephone call, the FCM "reiterated we [are] not willing to accept new creates;" and

• In a May 10, 2020 e-mail, the FCM stated, "[L]et me reiterate our position that [FCM] is currently not willing to accept additional positions resulting from new creates, and indeed is seeking to reduce our overall exposure we have as the sole FCM to USO."

24. During this same time period, USO had advised the FCM of its belief that its registration statement may imminently be declared effective, and USO sought relief from the New Creations Limit in anticipation of such a declaration. For example, in a May 10, 2020 e-mail, USO explained that, when the registration statement becomes effective, "[s]ome people will surely create" so "we should be prepared for anything" because "[w]e could open with $200M, $500M...we really don't know," continuing we "cannot gate creations[, s]o [we] need [FCM], our only source of exposure, to meet whatever need materializes."

25. Between around May 6 and 10, 2020, USO and the FCM, including, at times, legal counsel for both entities, discussed, among other things, USO's plans in the event that it was able to issue new shares, including whether USO had informed Commission staff of the New Creations Limit. For example, on May 10, 2020, the FCM asked USO whether Commission staff knew of "position limits imposed by both the exchange and FCM and the impact that would have on new creations?" USO responded that on "advice of counsel" it was "unable to disclose information about conversations with our regulators."

26. On May 11, 2020, USO again amended its registration statement, filing another pre-effective amendment. This pre-effective amendment again did not fully disclose the New Creations Limit. Later that day, the FCM itself informed Commission staff of the New Creations Limit. On May 13, 2020, Commission staff sent USO a comment letter on USO's May 11 pre-effective amendment to the registration statement, including the following comment: "Please describe the specific constraints placed on you by your FCM and how those constraints impact your ability to invest in the Benchmark Oil Futures Contract, the ICE WTI Contract or any other oil futures contracts."

 *7  27. By failing to adequately inform the investing public, during the period April 24 through May 21, 2020, of the specific constraints put on the fund and, in turn, the impact that those constraints would have on the fund's ability to meet its investment objective, each of the above public filings were materially misleading.

**USO's Disclosure of New Creations Limit, Additional Futures Commission Merchants, and Notice of Effectiveness**

28. On May 21, 2020, USO finally disclosed the New Creations Limit, as well as the investment risk that this limit presented, in a pre-effective amendment.

29. For example, a relevant section from the pre-effective amendment was changed from the simple statement that "FCMs and other market participants have taken risk mitigation measures that constrain USO's ability to invest in the Benchmark Futures Contract and the ICE WTI Contract" in the May 11 pre-effective amendment, to the following in the May 21 pre-effective amendment:
[FCM] and other market participants, including other FCMs, have taken risk mitigation measures that constrain USO's ability to invest in the Benchmark Futures Contract and other Oil Futures Contracts. [FCM], currently USO's only FCM, has expressly informed USO that, until further notice, USO may not hold positions in the Benchmark Futures Oil Futures Contract and that it may not purchase any other Oil Futures Contracts for USO's portfolio through [FCM] whether or not such purchases would be within the limits permitted by the exchanges. . . . USO cannot predict with any certainty when and whether [FCM] will remove these limitations. USO has been engaging in efforts to enter into additional FCM agreements for the purpose of the purchase and

Case 1:20-cv-04740-PGG    Document 158-1    Filed 11/24/21    Page 7 of 8

sale of Benchmark Oil Futures Contracts as well as other Oil Futures Contracts. To date, USO has not entered into an agreement with any FCM other than [FCM] and it cannot predict with any certainty when it will do so.

30. Furthermore, USO added to the pre-effective amendment an explicit Risk Factor addressing the New Creations Limit titled "Risk mitigation measures imposed by USO's FCM have the potential to cause tracking error by limiting USO's investments, including its ability to fully invest in the Benchmark Futures Contract and other Oil Futures Contracts, which could cause the price of USO's shares to substantially vary from the price of the Benchmark Oil Futures Contract." In relevant part, USO described how the New Creations Limit could constrain USO's ability to meet its investment objective going forward:

In addition, if USO were to again offer Creation Baskets for purchase, it is anticipated that the limitations being imposed by the exchanges and USO's FCM will significantly limit USO's ability to invest the proceeds of the purchases of Creation Baskets in Oil Futures Contracts. Assuming this to be the case, if USO sells Creation Baskets again, USO would invest in other permitted investments, including Other Oil-Related Interests, and may hold larger amounts of Treasuries, cash and cash equivalents, which will further impair USO's ability to meet its investment objective.

 **\*8**  31. USO was eventually able to enter into agreements with additional futures commission merchants, as disclosed in Forms 8-K dated May 29 and June 9, 2020, which would allow USO to invest the proceeds of the sale of new USO shares in oil futures contracts.

32. On June 12, 2020, the USO registration statement was declared effective, and a prospectus was filed for the offering of additional shares. At this point, USO had new shares available for sale for the first time since April 21, 2020.

33. As a result of the conduct described above, USO and USCF violated Section 17(a)(3) of the Securities Act, which prohibits in the offer or sale of securities, engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.[4]

**IV.**

In view of the foregoing, the Commission deems it appropriate to impose the sanctions agreed to in Respondents' Offer.

Accordingly, it is hereby ORDERED that**:**

A. Pursuant to Section 8A of the Securities Act, Respondents USO and USCF cease and desist from committing or causing any violations and any future violations of Section 17(a)(3) of the Securities Act.

B. Respondents shall, within 30 days of the entry of this Order, pay a civil money penalty in the amount of two million five hundred thousand dollars ($2,500,000.00) ("Penalty") to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). The Penalty will be offset, up to one million two hundred and fifty thousand dollars ($1,250,000.00), by the amount of any payment made pursuant to *In the Matter of United States Commodity Funds LLC* promulgated by the CFTC. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

(1) Respondents may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondents may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondents may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center

Accounts Receivable Branch

HQ Bldg., Room 181, AMZ-341

6500 South MacArthur Boulevard

Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying USO and USCF as Respondents in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Osman Nawaz, Division of Enforcement, Securities and Exchange Commission, Brookfield Place, 200 Vesey Street, New York, NY 10281.

C. Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondents agree that in any Related Investor Action, they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondents' payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondents agree that they shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

**\*9** By the Commission.
Vanessa A. Countryman
Secretary

Footnotes

1      The findings herein are made pursuant to Respondents' Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

2      USO was not then invested in the May WTI Oil Futures Contract.

3      As an ETP, USO trades on the NYSE Arca after its shares are initially purchased by authorized participants, *i.e.*, institutional firms that purchase shares in blocks of 100,000 called "baskets" through USO's marketing agent, with the price of a basket equal to the shares' NAV. These initial purchases are referred to as "creations." USO continuously issues new shares until its inventory is exhausted. To the extent USO's inventory is exhausted, new creations are suspended until a new registration statement to register the offering of additional shares is filed and declared effective.

4      Negligence is sufficient to establish a violation of Section 17(a)(3) of the Securities Act. *Aaron v. SEC*, 446 U.S. 680, 685, 701-02 (1980).

Release No. 11006 (S.E.C. Release No.), Release No. 33-11006, 2021 WL 5205955

**End of Document**                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.