**ROPES
& GRAY**

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

**Memo Endorsed:** The request for leave to reply is granted. Accordingly, the Court will consider this letter response in resolving Defendants' motion to dismiss. The Clerk of Court is directed to terminate the motion at Dkt. No. 155.

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge
Dated: March 29, 2022

May 13, 2021

**BY ECF**

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:    *In re: United States Oil Fund, LP Securities Litigation*, No. 1:20-cv-04740 (PGG) (GWG)

Dear Judge Gardephe:

We represent defendants United States Oil Fund, LP ("USO"), United States Commodity Funds LLC ("USCF"), John P. Love, Stuart P. Crumbaugh, Nicholas D. Gerber, Andrew F Ngim, Robert L. Nguyen, Peter M. Robinson, Gordon L. Ellis, and Malcolm R. Fobes III (collectively, the "USO Defendants") in the above-referenced action.[1] Pursuant to Rule I.A of Your Honor's individual rules of practice, we write to respectfully request leave to reply to Plaintiff's Notice of Supplemental Authority (the "Notice"), ECF No. 154, and to provide that reply below.

> 1.  **The USO Defendants respectfully request leave to reply to Plaintiff's Notice.**

Plaintiff's Notice contains six pages of legal argument regarding *Set Capital LLC v. Credit Suisse Grp. AG*, No. 19-cv-3466, 2021 WL 1619620 (2d Cir. Apr. 27, 2021), *vacating in part* No. 18-cv-2268, 2019 WL 4673433 (S.D.N.Y. Sept. 25, 2019). Accordingly, the USO Defendants respectfully request leave to reply to Plaintiff's arguments to aid the Court in resolving the pending Motion to Dismiss the Consolidated Amended Complaint (the "Motion"). ECF No. 142.

> 2.  *Set Capital* **is readily distinguishable from this action, and** *ProShares Trust II* **remains the controlling precedent.**

Contrary to the Notice's suggestion that *Set Capital* is "directly on point," *Set Capital* is plainly distinguishable. Notice at 1. The Notice ignores key facts and legal analysis central to the *Set Capital* holding, including the structural differences between the exchange traded note ("ETN") at

---

[1] Capitalized terms not defined herein have the meaning set forth in USO Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defendants' Memorandum" or "Defs.' Mem."). ECF No. 143.

ROPES & GRAY LLP

- 2 -                                                                May 13, 2021

issue in *Set Capital* and the exchange traded fund ("ETF") at issue here. Significantly, the Notice fails to even mention the alleged ETN-specific conduct that was determinative in *Set Capital* and which is entirely absent in the present action (a case involving an ETF). Rather, in this case, as in *ProShares Trust II* (also an ETF case), Plaintiff's allegations concern the allegedly undisclosed impact of the fund's own large holdings in futures contracts on the underlying market for those futures contracts. *See* Reply at 3–6; *In re ProShares Tr. II Sec. Litig.*, 839 F. App'x 649 (2d Cir. 2021), *aff'g* No. 19-cv-886, 2020 WL 71007, at *7–8 (S.D.N.Y. Jan. 3, 2020). As such, *Set Capital* is plainly distinguishable.

In *Set Capital*, plaintiffs were found to have adequately pled manipulative acts and misstatements or omissions in an ETN's disclosures – including regarding the acceleration events, forced redemptions, and a purported conflict of interest between defendants and their investors – that have no corollary to the present action. *Set Capital*, 2021 WL 1619620, at *1, 2, 4, 15. Specifically, the *Set Capital* defendants allegedly could force investors to redeem (*i.e.*, cash out) their shares either at their option or at the occurrence of a pre-defined "Acceleration Event." *Id.* at *2. During an acceleration event, defendants allegedly would pay investors an amount based on the ETN's daily closing indicative value. *Id.* To keep the ETN's closing indicative value down during volatility spikes and thereby minimize their potential liability to their own investors during an acceleration event, the *Set Capital* defendants allegedly "hedge[d]" by purchasing large quantities of shares in the underlying futures market. *Id.* at *3. In other words, defendants allegedly took positions in the underlying futures market *against their investors' interests*. Plaintiffs further alleged that defendants "knew with virtual certainty" from their own hedging conduct during three prior volatility spikes that, in the event of the next volatility spike, they again would hedge their positions in the underlying futures market against their investors' interests. *Id.* at *14. Plaintiffs then alleged that defendants offered millions of additional shares to the market – allegedly "despite shareholder pressure to eliminate sales of volatility-related ETNs" – to intentionally trigger a liquidity squeeze and destroy the value of the ETN. *Id.* at *3. Plaintiffs alleged that this allowed defendants to declare an acceleration event and "lock[] in a profit" by minimizing redemption payouts to investors. *Id.* at *5, 7.

In light of these allegations, *Set Capital* held that plaintiffs sufficiently pled actionable manipulative conduct and that defendants' offering documents were adequately pled to be misleading insofar as they stated that defendants' "hedging activity 'could' or 'may' impact prices of [the ETN]" while "affirm[ing] that [defendants] had 'no reason to believe' that it would" – as defendants allegedly "knew with virtual certainty" based on their experience with three prior volatility spikes that they *would* hedge their own risks to profit at the expense of investors during the next volatility spike. *Id.* at *8, 14.

Here, unlike in *Set Capital*, Plaintiff does not allege that USO offered its shares or took positions in the underlying futures market to deliberately "hedge" against its own investors' interests or profit at their expense. In fact, Plaintiff does not point to any alleged conflict of interest whatsoever between USO and its investors – let alone any mechanism by which USO could have forced investors to

ROPES & GRAY LLP

- 3 -                                                                May 13, 2021

redeem their shares to profit at their expense.  Indeed, Plaintiff here could not make such allegations because ETFs like USO have distinct structural features from ETNs.  Notably, *Set Capital* explicitly recognized these inherent structural differences between ETFs and ETNs in distinguishing and reaffirming *ProShares Trust II*'s dismissal of an action alleging securities fraud in connection with an ETF offering:

> We recognize that, in *In re Proshares Tr. II Sec. Litig.*, we affirmed the district court's dismissal of claims arising out of similar market events – namely, illiquidity in the VIX futures market during afterhours trading on February 5, 2018. . . . While there are superficial similarities between the two cases, our decision in *ProShares* addressed different disclosures related to a different underlying securities product – an exchange traded fund (ETF), which bundles securities together. . . . In part because of the material differences between ETFs and ETNs, the complaint in *ProShares* did not allege market manipulation or the failure to fully disclose a conflict of interest. . . . Here, unlike in *Proshares*, the complaint plausibly alleges that [defendant] gave itself the right to accelerate the notes it issued such that it could use its own trading to depress their price, force redemptions, and profit at its investors' expense.

*Id.* at \*14 n.94 (citing *ProShares Tr. II*, 839 F. App'x at 650–51).

In this action, Plaintiff advances the same theories and challenges nearly identical disclosures as in *ProShares Trust II*.  *See* Defs.' Mem at 25–26; Reply at 4–6.  Plaintiff alleges that USO's disclosures about the impact of USO's large holdings on the futures contract market were misleading and that, by offering shares pursuant to allegedly misleading disclosures, USO executed a scheme to mislead investors into buying USO shares to generate management fees.  These allegations are clearly distinguishable from those in *Set Capital*.  Moreover, as explained in Defendants' Memorandum and Reply, Plaintiff's arguments fail because the disclosures were not misleading as a matter of law, and Plaintiff has not pled that Defendants engaged in any manipulative conduct.  For all of these reasons, *ProShares Trust II* remains the controlling precedent in this present action.[2]

---

[2] The Notice argues that "*ProShares Trust II* did not involve a fund manager **itself** intentionally creating the circumstances of its own fund's demise by flooding the market with new share issuances," but rather, it concerned an ETF that "suffered collateral damage as a result of a severe market dislocation created by **others**."  Notice at 4 (emphasis in original).  Plaintiff's argument is demonstrably wrong.  In *ProShares Trust II*, Judge Cote quoted from the complaint in finding: "The gravamen of the SAC is that the Registration Statement was misleading because it failed to disclose that the Fund's 'own conduct of rebalancing in an overly crowded VIX futures market could itself drive up the price of VIX futures contracts, the level of market volatility, and the level

ROPES & GRAY LLP

- 4 -                                                                   May 13, 2021

> **3.  Contrary to Plaintiff's far-fetched assertions in the Notice, *Set Capital* does not support Plaintiff's position that Defendants should have disclosed purported "adverse facts."**

Plaintiff's Notice strains the Second Circuit's analysis in attempting to force a connection between *Set Capital* and this action.  Specifically, Plaintiff argues that Defendants should have disclosed in real time purported "adverse facts" about market events and conditions impacting USO and predicted how they would culminate in investor losses in the future.  Notice at 2–5.  But *Set Capital* simply did not address this issue.  While *Set Capital* noted that "cautionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized in the past and is virtually certain to materialize again," the related *Set Capital* analysis is quite distinct from the current action.  *Set Capital*, 2021 WL 1619620, at *14.  *Set Capital* held that plaintiffs in that action adequately alleged that cautionary words in the ETN's offering documents "warn[ing] that [defendants'] hedging activity 'could' or 'may' impact prices of [the ETN] but affirm[ing] that [defendants] had 'no reason to believe' that it would" were misleading because defendants themselves allegedly failed to disclose their own conduct in "structur[ing] the market for [the ETN] to *ensure* that the next volatility spike would allow it to profit at its own investors' expense."  *Id.* (emphasis added).  In this regard, the Court highlighted the allegation that defendants purportedly "knew with virtual certainty" from experience hedging against investors' interests during three prior volatility spikes that their hedging activity *would* depress the ETN's value.  *Id.*

By contrast, Plaintiff does not allege any prior experience or any information uniquely known to the USO Defendants that would have required the USO Defendants to *further* disclose the impact of the COVID-19 pandemic or any other market developments during the class period.  Instead, as explained in detail in Defendants' Memorandum and Reply, the USO Defendants kept investors fully apprised of the potential for growth in assets during the class period by disclosing the exact size and nature of USO's offerings and providing daily updates on the size and makeup of its investment portfolio.  RS at 1, 24.  The USO Defendants further disclosed the risks posed by such growth – including risks of market illiquidity, contango, imposition of regulatory limits, and ultimately large investor losses.  Moreover, the March Registration Statement cautioned that the COVID-19 global pandemic was the type of "general economic condition[]" that "impair[s] the functioning of financial markets and institutions [and] also may adversely impact the demand for crude oil," and could "have a direct adverse impact on crude oil prices."  Defs.' Mem. at 15–16, 33–35; Reply at 10–11; RS at 9.  As Plaintiff concedes, the real time impact of developing market conditions on oil and oil futures prices also were widely publicly available.  *See also* CAC ¶¶ 74–78, 81, 85–86, 91–94, 151, 178.  As explained in Defendants' Memorandum and Reply, Defendants have "no duty to disclose information that is within the public domain through publication in the news media."  *See* Defs.' Mem. at 35–39 (citation omitted); Reply at 12.  *Set Capital* did not

---

of the [VIX Short-Term Futures] Index – thereby driving down the value of SVXY shares.'" *Proshares Tr. II*, 2020 WL 71007, at *7 (emphasis and alterations in original).

ROPES & GRAY LLP

- 5 -                                                                    May 13, 2021

address comparable disclosures or these well-established principles.    Plaintiff's arguments to the contrary must fail.[3]

### 4. Unlike in *Set Capital*, Plaintiff's allegations of scienter are conclusory.

Plaintiff's Notice asserts that "in certain ways, Defendants' scienter is even more compellingly alleged here" – implying that the *Set Capital* plaintiffs had to "connect the dots up the management chain" to plead scienter.    Notice at 5–6.    This argument ignores the particularized allegations of conscious misbehavior and recklessness in *Set Capital* that defendants:    (1) knew hedging decreased the value of the ETN, allowing them to profit at the expense of investors, because they had done so during three prior volatility spikes; (2) announced an arrangement ensuring their access to additional hedging instruments to protect their ability to profit at the expense of their investors after the third volatility spike; and (3) expanded their holdings in futures contracts in breach of internal risk limits to destroy their value and profit at investors' expense. *Set Capital*, 2021 WL 1619620, at *9–10.    The Court also took into account allegations that defendants, including the CEO, made public misstatements, noting that "these statements are relevant only" when viewed alongside the other allegations. *Id.* at *9.    The Court further acknowledged the existence of a pending SEC investigation, stating that "neither the SEC investigation nor the magnitude of the alleged fraud independently raises a compelling inference of manipulative intent; we view these facts principally as supporting culpable inferences drawn from stronger allegations discussed earlier." *Id.* at *10.    In stark contrast, the Notice confirms that Plaintiff's only scienter allegations are that "USO Defendants were ***themselves*** personally responsible for the day-to-day management of the Fund, as well as the makers of the materially false and misleading statements at issue."    Notice at 6 (emphasis in original).    These conclusory allegations fall far short of the PSLRA, Rule 9(b), and the allegations found to be sufficient to survive dismissal in *Set Capital*. *See* Defs.' Mem at 46–51; Reply at 19–22.

Respectfully submitted,

/s/ Amy D. Roy

Amy D. Roy


cc:  All counsel (via ECF)

---

[3] The Notice once again retreats to unfounded assertions that USO misled investors by stating that the WTI futures market was highly liquid and that the USO share price was a proxy for investing in crude oil.    Notice at 3–4.    For all of the reasons in Defendants' Memorandum and Reply, reading these disclosures in context, Plaintiff's arguments are devoid of merit. *See* Defs.' Mem. at 13–15, 25, 31–33, 35–39; Reply at 4, 9–10.    Moreover, *Set Capital* has no bearing on these arguments, as no analogous disclosures were at issue in that action.