

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

**Memo Endorsed:** The request for leave to reply is granted. Accordingly, the Court will consider this letter response in resolving Defendants' motion to dismiss. The Clerk of Court is directed to terminate the motion at Dkt. No. 159.

SO ORDERED.

Paul G. Gardephe
United States District Judge
Dated:  March 29, 2022

December 6, 2021

**BY ECF**

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:    *In re: United States Oil Fund, LP Securities Litigation*, No. 1:20-cv-04740 (PGG) (GWG)

Dear Judge Gardephe:

We represent defendants United States Oil Fund, LP ("USO"), United States Commodity Funds LLC ("USCF"), John P. Love, Stuart P. Crumbaugh, Nicholas D. Gerber, Andrew F Ngim, Robert L. Nguyen, Peter M. Robinson, Gordon L. Ellis, and Malcolm R. Fobes III (collectively, the "USO Defendants") in the above-referenced action.  Pursuant to Rule I.A of Your Honor's individual rules of practice, we write to respectfully request leave to reply to Plaintiff's Notice of Supplemental Authority (the "Notice"), ECF No. 158, and to provide that reply below.

### 1. The USO Defendants respectfully request leave to reply to Plaintiff's Notice.

Plaintiff's Notice contains several pages of legal argument regarding the SEC's recent Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order in *In the Matter of United States Commodity Funds LLC and United States Oil Fund, LP*, SEC Release No. 11006, 2021 WL 5205955 (Nov. 8, 2021) ("SEC Order").  Plaintiff erroneously claims the SEC Order further supports denial of Defendants' pending Motion to Dismiss the Consolidated Amended Complaint (the "Motion").  ECF No. 142.  Accordingly, the USO Defendants respectfully request leave to reply to Plaintiff's arguments to aid the Court in resolving the pending Motion.

ROPES & GRAY LLP

- 2 -                                                    December 6, 2021

2. **The SEC Order addresses wholly separate disclosures and factual issues over a different time period than the disclosures challenged in the CAC[1] and further underscores Plaintiff's failure to allege any materially misleading statements or omissions in the disclosures at issue here.**

Hoping to take advantage of the recently announced SEC Order to lend support to its threadbare claims in this action, Plaintiff strains to recast the allegations in the CAC in an attempt to suggest some plausible connection between the CAC's claims and the SEC's investigation of a wholly separate set of disclosures and factually distinct issues spanning a time period that does not overlap with the Class Period in this action apart from a mere four days. As an initial matter, under Second Circuit precedent, the SEC Order and related settlement, which were not the result of a judicial adjudication and involved no admission of liability, should not be relied upon in evaluating whether Plaintiff has stated a claim.[2] Regardless, Plaintiff's submission of the SEC Order not only fails to support the allegations in the CAC, it affirmatively underscores the CAC's failure to allege any materially misleading statements or omissions in the *disclosures at issue in this case* – namely, USO's February and March 2020 Registration Statements.

Indeed, while USO's disclosures in its March 2020 Registration Statement are expressly referenced in the SEC Order (demonstrating the disclosures were within the scope of the investigation), the Order in no way asserts or even suggests any misleading statements or omissions in those disclosures. *See* Plf.'s Supp. Authority at 2 ("The SEC Order arises from the SEC investigation at issue in the CAC regarding disclosures made to investors in a registration statement filed by USO with the SEC in *April 2020*, as well as pre-effective amendments to USO's registration statement, about changes made to USO's investment strategy and limitations placed on the Fund in the Spring

---

[1] Capitalized terms not defined herein have the meaning set forth in Defendants' Memorandum of Law in Support of Their Motion to Dismiss (ECF No. 143) ("Defs.' Mem.").

[2] In similar settings, courts in this Circuit have given limited weight to SEC administrative orders that shareholder-plaintiffs seek to invoke as authority or evidence supporting securities claims. *See, e.g., Lipsky v. Commonwealth United*, 551 F.2d 887, 893–94 (2d Cir. 1976) (affirming the district court's decision to strike allegations from the complaint that were derived from a separate SEC federal court complaint and consent judgment, finding that the SEC's consent judgment had resulted from a "private bargaining" between the SEC and the defendant rather than any "hearing or ruling or any form of decision on the merits by the district court" and equating it to a nolo contedere plea); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 336 (Bankr. S.D.N.Y. 1999) ("The Second Circuit has clearly held that consent judgments . . . are not the result of actual adjudications on the merits and therefore can not be used as evidence in subsequent litigation between the parties."); *In re Platinum and Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593–94 (S.D.N.Y. 2011) (holding that "CFTC's findings" in its Order were "properly stricken from the Complaint," noting "[t]o the extent the Complaint describes the manipulative trading scheme, those allegations simply recast the CFTC's findings and are derived wholesale from the CFTC order," which are "paradigms of the type of pleading prohibited by *Lipsky* and its progeny.").

ROPES & GRAY LLP

- 3 -                                             December 6, 2021

of 2020.") (emphasis added).  The SEC Order focuses solely on whether certain Form 8-Ks issued in late April and May 2020 timely disclosed to USO investors the potential risk that could be incurred by the Fund going forward should additional new shares be issued and created pursuant to a separate, subsequent registration statement.  Specifically, the SEC Order addresses whether USO timely disclosed a particular factual development, namely that its futures commission merchant ("FCM") had on or around April 22 or 23 told USO that it could not invest through the FCM the proceeds generated by any hypothetical "*future* creation of new USO shares."  SEC Order at *2–3 (emphasis added).  The SEC Order defines this late-breaking development as the "New Creations Limit."  *Id*. at *2.  The SEC Order then goes on to address disclosures by USO from April 24 through May 21, 2020 relating solely to the New Creations Limit and any potential risk that could be incurred by the Fund "*going forward*" should new shares be issued pursuant to a registration statement that was not even made effective until June 2020.  *Id*. at *5–8 (emphasis added).

Those developments and disclosures are in no way at issue in this action.  The CAC focuses almost exclusively on alleged materially misleading statements or omissions in the Fund's *February* and *March* 2020 Registration Statements regarding two main themes: (i) how the Fund operates; and (ii) how oil prices (and thus USO's share price) were affected by the global pandemic and price war between major oil producing countries in 2020.  Specifically, Plaintiff alleges that Defendants sold billions of dollars' worth of USO shares to investors pursuant to the February and March 2020 Registration Statements and amassed enormous positional concentration in the oil futures markets without disclosing that *Defendants' own actions were facilitating:* "(i) the collapse of oil futures prices; (ii) a liquidity crisis, as the Fund approached regulatory limits; (iii) a breakdown in the Fund's crucial tracking functions;" and "(iv) the complete abandonment of the Fund's investment strategy that was promoted to solicit investment in USO."  Opp. at 1.  ECF No. 151.  The CAC defines a "Class Period" that tracks the time period of those disclosures, alleged omissions, and allegedly related impacts, from February 25 through April 28, 2020.  CAC ¶ 1.  ECF No. 68.

Notwithstanding Plaintiff's attempt to stretch both the procedural import and substance of the SEC Order, nothing in the SEC Order references, much less criticizes, USO's disclosures challenged in the CAC.  Specifically, the SEC Order simply takes no issue with USO's Registration Statement disclosures regarding liquidity, contango, tracking error, non-correlation, or the impact of the global pandemic on the Fund.  CAC ¶ 145.  Nor does the SEC Order criticize the Fund's disclosures regarding its discretion to diversify its portfolio allocation including by investing in later month futures contracts and/or other oil-related instruments.  In fact, the SEC Order expressly *acknowledges* both that the Fund's Prospectus disclosed that USO could invest in "'Oil Futures Contracts' other than the Benchmark Oil Futures Contract, as well as 'Other Oil-Related Investments,'" and that the FCM in imposing the New Creations Limit made clear it was not trying to "prohibit[] the rebalanc[ing]" of USO's portfolio.  SEC Order at *3, 4–5.  And finally, the SEC Order takes no issue with USO's disclosures regarding the Fund approaching regulatory position limits and the impact that might have on the Fund.  Rather, the SEC Order concerns the timeliness of USO's disclosure regarding the New Creation Limit issued by its FCM and the impact that could

ROPES & GRAY LLP

- 4 -                                                    December 6, 2021

have on the Fund's risk "*going forward*" should new shares be registered, available for issuance, created and issued. Crucially, the new share issuance of concern in the SEC Order occurred well after the putative Class Period. SEC Order at *5–8 (emphasis added).

Plaintiff's other allegations of purportedly misleading statements outside the Registration Statements are no better connected to, much less supported by, the SEC Order. The SEC Order says nothing about alleged deficient disclosures in the March 20 and 24, 2020 8-Ks regarding the Fund's financial trends or status. *Compare* CAC ¶¶ 160, 184–85 (claiming the March 20 and 24 Form 8-Ks misstated the financial condition of the Fund because they only disclosed data through December 31, 2019 and not the market trends occurring through March 2020). The SEC Order says nothing about alleged deficient disclosures regarding position limits imposed by regulators in or around April 2020. *Compare* CAC ¶ 186 (claiming the April 16 and April 22, 2020 Form 8-Ks failed to disclose that the exchanges had already imposed position limits on the Fund and thus failed to adequately provide the supposed reasons for the Fund's reallocation of investments).

Prior to the announcement of the SEC Order, Plaintiff sought to have this Court infer, based on the mere existence of the SEC investigation the wrongdoing that Plaintiff alleges in the CAC. CAC ¶ 14. But the SEC Order *now confirms* that any disclosures addressed in the SEC investigation and subsequent Order are factually and temporally separate and apart from the alleged misstatements Plaintiff has put forward in the CAC. In short, placing the CAC and SEC Order side by side, it is clear that even if everything asserted in both documents were taken as true – which, of course, USO does not concede in any way – the Fund's alleged delay in disclosing a class-period factual development simply does not lend support for Plaintiff's allegations of deficient risk disclosures in the Registration Statements – especially when the development that came to pass was a risk expressly warned of in the prior challenged disclosures.[3]

Where, as here, there is simply no factual connection between the subject matter of the SEC Order and the CAC's allegations, the issuance of the negotiated administrative order is simply a non-event for purposes of the pending Motion to Dismiss. The ostensible "supplemental authority" does nothing to bolster Plaintiff's claims, and in fact strongly supports the arguments made in Defendants' Motion to Dismiss.

---

[3] Aside from dealing with an entirely different set of disclosures and allegations, Plaintiff's attempt to rely on the SEC Order asserting a violation of Section 17(a)(3) of the Securities Act – for which a finding of mere negligence is sufficient – as support for his allegations of fraudulent intent under Section 10(b) of the Exchange Act likewise misses the mark.

ROPES & GRAY LLP

- 5 -                                        December 6, 2021

Respectfully submitted,

/s/ Amy D. Roy

Amy D. Roy

cc: All counsel (via ECF)