UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

In re UNITED STATES OIL FUND, LP : Civil Action No. 1:20-cv-04740-PGG-GS
SECURITIES LITIGATION :
 : CLASS ACTION
 :
This Document Relates To: :
 :
  ALL ACTIONS. :

———————————————————————— x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO
FILE THE [PROPOSED] SECOND CONSOLIDATED AMENDED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..........................................................................................................1

II.     LEGAL STANDARD....................................................................................................3

III.    ARGUMENT.................................................................................................................4

      A.      Plaintiff's Motion is Timely, Made in Good Faith, and Will Not Cause
            Undue Prejudice to Defendants ................................................................5

      B.      The Proposed Amendment Is Not Futile ..................................................6

           1.      The SAC Alleges Extensive, Newly-Pled Factual Allegations
                Supporting Plaintiff's Claims ........................................................8

           2.      The SAC Adequately Pleads Violations of the Securities Laws and
                Addresses the Deficiencies Identified by the Court...................................11

IV.     CONCLUSION.............................................................................................................20

**CASES**

*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)..................................................................................1, 5

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
  2024 WL 89120
  (2d Cir. Jan. 9, 2024) ...............................................................................................................4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)........................................................................................................4

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020).....................................................................................19

*Francisco v. Abengoa, S.A.*,
  559 F. Supp. 3d 286 (S.D.N.Y. 2021), *aff'd in part sub nom.*,
  *Sherman v. Abengoa, S.A.*, 156 F.4th 152 (2d Cir. 2025).....................................................4, 5

*Heller v. Goldin Restructuring Fund, L.P.*,
  590 F. Supp. 2d 603 (S.D.N.Y. 2008).....................................................................................19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................................12, 16

*In re Reserve Fund Sec. & Derivative Litig.*,
  732 F. Supp. 2d 310 (S.D.N.Y. 2010).....................................................................................19

*In re United States Oil Fund, LP Securities Litigation*,
  2025 WL 2771445
  (S.D.N.Y. Sept. 29, 2025) ............................................................................................... *passim*

*In re Veon Ltd. Sec. Litig.*,
  2020 WL 13755172
  (S.D.N.Y. Mar. 31, 2020) .........................................................................................................4

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016)........................................................................................................7

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011).......................................................................................................7

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).....................................................................................................17

*New Jersey Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013).....................................................................................................12

**Page**

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009)........................7

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012)...............................................................................................6, 8

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
2020 WL 5757628
(S.D.N.Y. Sep. 27, 2020) (Gardephe, J.) ........................................................... 6-7, 13

*Pappas v. Qutoutiao Inc.*,
2024 WL 4588491
(2d Cir. Oct. 28, 2024)............................................................................................7

*Pasternack v. Shrader*,
863 F.3d 162 (2d Cir. 2017)......................................................................................4

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
2016 WL 2859622
(S.D.N.Y. May 16, 2016).........................................................................................4

*Ragan v. AppHarvest Inc.*,
2022 WL 22863367
(S.D.N.Y. July 22, 2022) ........................................................................................5, 6

*Saraf v. Ebix, Inc.*,
632 F. Supp. 3d 389 ...............................................................................................4

*Set Cap. LLC v. Credit Suisse Grp. AG*,
996 F.3d 64 (2d Cir. 2021)......................................................................................8, 19

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
341 F.R.D. 542 (S.D.N.Y. 2022) .............................................................................6

*Sodha v. Golubowski*,
154 F.4th 1019 (9th Cir. 2025) .........................................................................8, 13, 16

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
2024 WL 456745
(S.D.N.Y. Feb. 5, 2024).........................................................................................19

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015)......................................................................................8

**Page**

*Sun v. TAL Educ. Grp.*,
 2023 WL 6394413
 (S.D.N.Y. Sep. 29, 2023)......................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007)..............................................................................................................8

*United Coal Co. v. Xcoal Energy & Res.*,
 2024 WL 4533349
 (S.D.N.Y. Oct. 21, 2024) .....................................................................................................5

*Venkataraman v. Kandi Techs. Grp., Inc.*,
 2022 WL 4225562
 (S.D.N.Y. Sep. 13, 2022)......................................................................................................8

*Winston Van v. Bright Health Grp., Inc.*,
 2025 WL 3171688 (2d Cir. Nov. 13, 2025).........................................................................12

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
 §78t(a).................................................................................................................................6
 §78j(b)..................................................................................................................2, 6, 8, 17

17 C.F.R.
 §240.10b-5 ...........................................................................................................2, 6, 8, 17
 §229.105(a) ........................................................................................................................13
 §229.303(b)(2)(ii) ............................................................................................................7, 8

Federal Rules of Civil Procedure
 Rule 8...................................................................................................................................7
 Rule 9(b) ...........................................................................................................................4, 7
 Rule 12(b)(6 .........................................................................................................................6
 Rule 15(a)..............................................................................................................................1
 Rule 15(a)(2).....................................................................................................................1, 3

## SECONDARY AUTHORITIES

*Mgmt.'s Discussion & Analysis of Fin. Condition & Results of Operations*,
 1989 WL 1092885, at *4 (May 18, 1989)

## I.    INTRODUCTION

Lead plaintiff Nutit, A.S. ("Plaintiff") respectfully submits this memorandum of law in support of its motion for leave to file the [Proposed] Second Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 182) pursuant to Federal Rule of Civil Procedure ("Rule") 15(a) and this Court's September 29, 2025, Memorandum Opinion and Order dismissing the amended complaint ("Order") (ECF No. 178).[1] The proposed amendment[2] adds specific, detailed, and highly significant factual allegations that address the very pleading defects that formed the basis for the Court's Order. Indeed, the "liberal standard" of Rule 15(a) directs that leave to amend be freely granted as only undue delay, bad faith, undue prejudice to the opposing party, or futility of amendment can justify denying permission to amend. Fed. R. Civ. P. 15(a)(2); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). Here, where none of those conditions is present and the additional allegations further demonstrate Defendants' liability, leave to amend should be granted.

The extensive new facts alleged in the proposed SAC plausibly establish that Defendants, *inter alia*: (1) made materially false and misleading statements, or omitted material facts necessary to make statements in the registration statements not misleading, in violation of §11 of the 1933 Act; (2) failed to disclose not only known material trends, but events and ***uncertainties***, impacting, or

---

[1]    All citations to the Order are to the pages in the Westlaw citation, *In re United States Oil Fund, LP Securities Litigation*, 2025 WL 2771445 (S.D.N.Y. Sept. 29, 2025). All capitalized terms not otherwise defined herein shall have the meanings ascribed in the proposed SAC (defined below). All internal citations and quotation marks are omitted, and all emphasis is added, unless otherwise noted. All references to "¶_" or "¶¶_" refer to the proposed SAC. The "Class Period" is February 25, 2020 to April 28, 2020, inclusive.

[2]    The [Proposed] Second Consolidated Amended Complaint for Violations of the Federal Securities Laws ("SAC") is attached as Exhibit A to the Declaration of Vincent A. Serra ("Serra Decl."). Exhibit B to the Serra Decl. is a "redline" version of the proposed SAC, which demonstrates how the SAC differs from the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC"), and details the specific allegations that have been added.

reasonably likely to impact, the financial condition of the Fund in violation of Item 303 of SEC Regulation S-K; and (3) acted with the requisite scienter necessary to establish Plaintiff's claims under §10(b) and Rule 10b-5 of the 1934 Act. Additionally, while expanding the factual allegations, the SAC simultaneously narrows the claims in deference to several of the Court's concerns. Notably, the SAC omits several categories of statements and omissions from the February Registration Statement and March Registration Statement (the "Registration Statements"), including those regarding liquidity and illiquidity, the Saudi/Russia oil price war, USO's roll period and position closures, certain contango and tracking-related statements, and information about the Fund's NAV and roll information posted on defendant USCF's website.[3]

By incorporating the new factual allegations and refining the overall allegations in accordance with the Court's guidance, the SAC remedies what the Court determined were pleading defects in the CAC. Significantly, the the SAC contains new factual allegations that the SEC and CFTC fined USO and USCF $2.5 million for *failing to disclose material information to investors* regarding limitations placed on USO by its futures commission merchant that impacted the Fund's ability to achieve its investment objective during the Class Period. ¶¶158-163. Moreover, the new allegations provide additional detail regarding the severe known risks to the Fund's investment objective arising from the unprecedented economic turmoil and volatility in the oil and futures markets in which the Fund operates that was *caused* in large part by Defendants' own outsized positional concentration and market-distorting conduct that were not disclosed to investors. For example, the SAC adds allegations about COVID-19's adverse impact on the Fund early in the Class

---

[3]    The SAC also narrows the parties by removing *ten* authorized participant defendants who were voluntarily dismissed on February 1, 2021 (ECF No. 140), and now alleges a §11 claim as to only five authorized participant defendants (ABN Amro, Goldman Sachs & Company, J.P. Morgan Securities Inc., Merrill Lynch Professional Clearing Corporation, and Virtu Financial BD LLC).

Period, including **before** the February Offering, and defendant Love's recognition that COVID-19 was a "big factor" impacting a "meaningful" amount of demand as early as January 2020.  ¶65.

Likewise, the extensive additional scienter allegations in the SAC establish an inference that Defendants acted with scienter that is at least as compelling as any opposing inference.  ¶¶240-247. Specifically, the SAC adds highly significant detailed allegations that, *inter alia*: (1) the CME Group, which operates the NYMEX exchange (upon which USO's futures contracts trade), was in "constant contact" with USO during the Class Period about approaching accountability levels that would ultimately impede the Fund's ability to achieve its investment objective (¶¶130-150); (2) the USO Defendants had access to confidential market data and other information from its licensing agreement with NYMEX (¶¶202, 247); (3) it was the USO Defendants' practice to scrupulously monitor the complex market dynamics impacting the oil markets and the Fund, and, as a result, defendant Love possessed unique knowledge and insight of the materially adverse impacts on USO during the Class Period, including by virtue of his roles leading USCF (a small, 15-person company), overseeing USO's development and portfolio before becoming CEO, and soliciting investment in the Offerings[4] as a registered representative of the Fund's marketing agent (¶¶61-62, 202, 240, 253); and (4) USO's history of market-distorting activity put the USO Defendants on notice that the Fund's rapid and outsized growth led to detrimental impacts to USO and its investors (¶¶63-64, 244-246).

Accordingly, Plaintiff respectfully requests that the Court grant leave to file the SAC.

## II.    LEGAL STANDARD

Rule 15(a)(2) permits a party to amend its pleading with the opposing party's consent or the court's leave, providing that "[t]he court should freely give leave when justice so requires."  Fed. R.

---

[4]    The "Offerings" refer to the February 25, 2020, public offering (the "February Offering") and March 23, 2020, public offering (the "March Offering").

Civ. P. 15(a)(2).  "[C]omplaints dismissed under Rule 9(b)" or the PSLRA "are almost always dismissed with leave to amend[.]"  *Saraf v. Ebix, Inc.*, 632 F. Supp. 3d 389, 402 (S.D.N.Y. 2022) (quoting *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017)); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b).").

"The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient, as [b]efore learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 313 (S.D.N.Y. 2021), *aff'd in part sub nom., Sherman v. Abengoa, S.A.*, 156 F.4th 152 (2d Cir. 2025); *see also Sun v. TAL Educ. Grp.*, 2023 WL 6394413, at *34 (S.D.N.Y. Sep. 29, 2023) ("The 'usual practice' in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint.").  Additionally, the Second Circuit has "been ***particularly skeptical*** of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue[.]"  *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, 2024 WL 89120, at *4 (2d Cir. Jan. 9, 2024).  Moreover, courts routinely allow plaintiffs to amend complaints alleging violations of securities laws where the amendment includes new factual allegations.  *See In re Veon Ltd. Sec. Litig.*, 2020 WL 13755172, at *1 (S.D.N.Y. Mar. 31, 2020) (allowing plaintiff to file a second amended complaint to add allegations); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 2016 WL 2859622, at *13 (S.D.N.Y. May 16, 2016) (granting leave to file a third amended complaint so that the plaintiff could "supplement [the] pleading with new information discovered since filing the [PAC]").

## III.    ARGUMENT

"Under [Rule 15's] liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave

is granted, or the proposed amendment is futile." *Agerbrink*, 155 F. Supp. 3d at 452.  Given the absence of undue delay, bad faith, prejudice, and futility here, Plaintiff's motion should be granted.

### A. Plaintiff's Motion is Timely, Made in Good Faith, and Will Not Cause Undue Prejudice to Defendants

*First*, Plaintiff's motion is filed within the Court's November 26, 2025 deadline for filing a motion for leave to amend.  ECF No. 181 at 1.  Accordingly, it cannot be argued that Plaintiff has unduly delayed or failed to act diligently.  *Second*, there can likewise be no credible suggestion that Plaintiff has moved in bad faith.  "In this Circuit . . . 'the party opposing the amendment carries the burden of showing undue prejudice or bad faith.'"  *United Coal Co. v. Xcoal Energy & Res.*, 2024 WL 4533349, at *4 (S.D.N.Y. Oct. 21, 2024).   Plaintiff has alleged new factual information demonstrating the actionability of its claims.  *See, e.g.*, *Abengoa*, 559 F. Supp. 3d at 312, 323 (granting leave to file a third amended complaint that added new factual allegations).  These allegations are detailed, support each of Plaintiff's claims, largely narrow the universe of allegedly actionable misstatements and omissions, and address the deficiencies detailed by the Court in the Order.

*Third*, Defendants cannot demonstrate any undue prejudice from the proposed SAC.  While "undue prejudice [also] warrants denial of leave to amend," *Agerbrink*, 155 F. Supp. 3d at 454 (emphasis in original), an amendment only prejudices a non-moving party if the assertion of the new claim or defense "would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] (ii) significantly delay the resolution of the dispute." *Abengoa*, 559 F. Supp. 3d at 314 (quoting *Agerbrink*, 155 F. Supp. 3d at 454).  Moreover, "the prospect of spending more time, effort, or money on litigation . . . does not render an amended complaint unduly prejudicial."  *Ragan v. AppHarvest Inc.*, 2022 WL 22863367, at *1 (S.D.N.Y. July 22, 2022).  Here, the proposed SAC asserts no new claims, legal theories, or parties, and instead

- 5 -

narrows and refines the allegations by reducing both the universe of allegedly false and misleading statements and omissions and the number of parties, and supplements and adds detailed factual allegations addressing the defects identified by the Court.  Moreover, "Defendants will suffer no cognizable prejudice from the amendment," because having to file a new motion to dismiss in response to the SAC is not prejudicial.  *AppHarvest*, 2022 WL 22863367, at \*1.

## B.      The Proposed Amendment Is Not Futile

Finally, permitting Plaintiff to amend the CAC to incorporate the new factual allegations and refine the claims in light of the Court's Order will not be futile.  "The party opposing a motion to amend bears the burden of establishing that an amendment would be futile."  *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 550 (S.D.N.Y. 2022).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *see also Sjunde*, 341 F.R.D. at 550 ("An amendment is not 'futile' if it could withstand a motion to dismiss under Rule 12(b)(6).").  Under this standard, "a court must accept the facts alleged by the party seeking amendment as true and construe them in the light most favorable to that party."  *Id*.

Plaintiff brings claims under both §11 of the 1933 Act and §§10(b) and 20(a) of the 1934 Act and Rule 10b-5 promulgated thereunder.  Section 11, unlike claims brought under §Section 10(b), "imposes ***strict liability*** on issuers and signatories, and negligence liability on underwriters, where 'any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'"  *Panther Partners Inc. v. Jianpu Tech.*

- 6 -

*Inc.*, 2020 WL 5757628, at *6 (S.D.N.Y. Sep. 27, 2020) (Gardephe, J.).[5]  "The purpose of registration statements is to provide accurate and meaningful material information so that investors can make informed decisions about whether or not to purchase stock in a particular offering, and to understand the risks inherent in the investment."  *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).  Moreover, even if information in the public domain may be known to investors, "case law does not support the sweeping proposition that an issuer of securities is never required to disclose publicly available information."  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011).

Plaintiff also alleges that Defendants violated their affirmative obligations under certain SEC regulations, including Item 303 of SEC Regulation S-K, which requires companies to "[d]escribe any known trends or ***uncertainties*** that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. §229.303(b)(2)(ii).  "[D]isclosure [under Item 303] is necessary where a ***trend***, demand, commitment, ***event or uncertainty*** is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations."  *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 94 (2d Cir. 2016) (cleaned up). Critically, "Item 303 'specifies its own standard for disclosure—*i.e.*, ***reasonably likely to have a material effect***' and requires ***more***

---

[5]     "[T]he Rule 8 notice pleading standard applies where the 'plaintiff alleges negligent preparation of the registration statement and prospectus, rather than fraudulent preparation,' . . . or where the complaint 'explicitly does not allege fraud[.]'"  *Pappas v. Qutoutiao Inc.*, 2024 WL 4588491, at *1 (2d Cir. Oct. 28, 2024) (summary order) (citations omitted).  Moreover, "a Securities Act claim sounding in negligence or strict liability will not be subjected to the heightened standard of Rule 9(b) merely because of the complaint's other claims."*Id.* at *2.  Moreover, the Court's Order determined that the CAC "sufficiently pled standing for purposes of its Section 11 claim at this stage of the litigation."  Order at *46-*49.

*disclosure* than the materiality test typically used in securities law." *Sodha v. Golubowski*, 154 F.4th 1019, 1041 (9th Cir. 2025); *see also id*. at 1037-39 (analyzing 17 C.F.R. §229.303(b)(2)(ii)).[6]

To state a claim under §10(b) and Rule 10b-5, however, Plaintiff must plead scienter with particularity. But "[t]he inference that the defendant acted with scienter" need only be "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). "The inference[, however,] need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* at 324. "The sufficiency of a complaint's allegations of scienter are evaluated holistically considering all of the facts alleged, taken collectively, rather than any individual allegation, scrutinized in isolation." *Venkataraman v. Kandi Techs. Grp., Inc.*, 2022 WL 4225562, at *4 (S.D.N.Y. Sep. 13, 2022) (quoting *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 78 (2d Cir. 2021)).

### 1. The SAC Alleges Extensive, Newly-Pled Factual Allegations Supporting Plaintiff's Claims

The SAC contains the following new allegations that support the falsity and materiality of the challenged statements in the February and March registration statements, including, for example:

- On November 8, 2021, the SEC and CFTC imposed a combined $2.5 million civil penalty on USO and USCF, and concluded that USO and USCF *violated* the 1933 Act and the CEA, including by making material misrepresentations to investors during the Class Period for failing to disclose that the Fund's sole futures commission merchant told USO as early as April 22, 2020, that it would not execute any new oil futures positions for the Fund – a "*critical*" omitted fact according to the

---

[6]     "[G]eneric cautionary language" that is "spread out over several different filings" and "often unconnected to the [defendant's] financial position" does not satisfy Item 303. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 105 (2d Cir. 2015); *see also Ikanos Commc'ns*, 681 F.3d at 122 (finding that the "the Registration Statement's generic cautionary language . . . did not fulfill [the defendant's] duty to inform the investing public of the particular, factually-based uncertainties of which it was aware"). Moreover, "Item 303's disclosure obligations, like materiality under the federal securities laws' anti-fraud provisions, do not turn on restrictive mechanical or quantitative inquiries." *Id*.; *accord Sodha*, 154 F.4th at 1038.

SEC – thereby introducing the risk of tracking error between USO's investment objective and its NAV.  ¶¶158-163.

- "[C]oncern about demand" for oil from COVID-19 existed well in advance of the February Offering, including as early as January 2020, and was expected to impact a "meaningful" amount of demand and thereby USO's performance.  For example, in early February 2020, oil demand in China – which accounted for three-quarters of global oil demand growth in 2019 – had plummeted 20% because of COVID-19.  U.S. and international energy agencies slashed their oil demand forecasts throughout February and March 2020, and as early as February 4, 2020, an analyst said that "[t]he scale of the fall [of crude] has *shocked* the energy industry" and that "[w]e have not seen a demand destruction event of this scale that moves this quickly."  ¶¶65-68.

- Reports attributed USO's rapid growth and size as major contributing factors to the extreme distortions in the oil markets at that time and the Fund's near-complete abandonment of its investment objective by the end of the Class Period.  For example, one outlet reported, "[b]ecause of the fund size and number of futures contracts it purchased, [USO] actually *worsened* the 2020 crash."  Likewise, an analyst explained that "the extreme distortions in the commodities futures curve [were] *caused* by ETFs like USO," and that "[t]he culprit here is obvious.  The United States Oil ETF, USO. . . . USO's simultaneous creation of new positions in the June and July contracts added to the glut of 'paper oil' that is *causing* this oil market spasm."  Another analyst commented, "[t]he massive issuance of USO shares (from 156 million outstanding a year ago to 1.482 billion outstanding as of [April 30, 2020]) has created a bloated monster of a security that cannot possibly achieve its original goal of mirroring the moves in near-term oil futures contracts," and thus "has become an actively managed ETF."  ¶¶99-139.

- "[O]il market volatility" reached an "all-time high" in March 2020, and "WTI crude oil futures price volatility was so high in the run-up to the March Offering that price declines on March 9 and March 18 were the largest single-day declines since at least 1999, both of which were at least twice as large as the largest single-day decrease during the 2008-09 financial crisis."  ¶95.

- USO later-acknowledged that "*[p]rior to 2020*, periods of contango or backwardation have not materially impacted USO's investment objective," indicating that contango *had* materially impacted USO's investment objective during the Class Period.  ¶150.

Additionally, the SAC pleads considerable new and specific allegations that Defendants' misrepresentations and omissions were knowingly (or at a minimum, recklessly) false or misleading when made, including, for example, the following:

- Under a licensing agreement with NYMEX, USO and USCF received *confidential market data* and other information from the exchange on which USO's oil futures traded during the Class Period, including "settlement prices (on a rolling basis) for

the front (or spot) month, and the three months immediately thereafter for . . . NYMEX Light, Sweet Crude Oil (for delivery in Cushing, Oklahoma)." ¶¶202, 247.

- USO Defendants maintained constant communications with the CME Group (which operates NYMEX) during the Class Period. On April 22, 2020, Terry Duffy, the CEO of the CME Group stated that "we are in *constant contact* with people at USO and other large participants on their accountability levels of what they are going to do as it gets closer and closer into the delivery mechanism." Through their communications with the CME Group, the USO Defendants had access to nonpublic and specialized information regarding market conditions and participant activity that was unavailable to ordinary investors. Moreover, Defendants would have been aware of the dangers to retail investors of investing heavily in WTI futures contracts (in which USO had historically almost exclusively invested) given Duffy's comments that "small retail investors are somebody that we do not target" and the CME Group's warning that "*oil futures trading is not suitable for retail investors* and should only be done by professionals who understand and can manage the risks, including the challenges posed by physical settlement." ¶¶55, 130, 202, 250.

- Defendant Love effectively acknowledged in an interview shortly before the Class Period that demand-related impacts from COVID-19 affecting the oil markets in which USO operated had already created a material risk in January 2020, stating that "just a couple of days after the phase one trade deal is signed [on January 15, 2020] we have the coronavirus erupt and . . . become a *big factor* in the market. So there's some *concern* about demand on that side" and that the amount of demand impacted would be "*meaningful*." ¶¶65, 243.

- USCF and defendant Love closely monitored the intricacies of the underlying oil markets, including movements in global supply and demand, crude oil inventory data, storage capacity levels, oil production, geopolitical developments affecting oil prices, and macroeconomic trends. ¶¶202, 241-243.

- USO Defendants had advance notice that NYMEX would facilitate negative pricing in WTI futures contracts through the Fund's relationship with CME Group, including through an April 3, 2020 communication to its CME "Market Data" customers, which included USO and USCF, that effective April 5, 2020, futures and options, including crude oil "*will be flagged as eligible to trade at negative prices*." ¶¶76, 251.

- USO had a history of market-distorting activity that put the USO Defendants on notice that rolling huge positions and rapidly growing USO could detrimentally impact the Fund and its investors, including through: (1) a 2009 CFTC investigation concluding that USO's futures broker failed to properly disclose certain trades and that USCF could be liable; and (2) as a result of extreme volatility in the oil markets in 2014, which saw USO swell dramatically in size through massive investor inflows and inflict heavy losses on investors. ¶¶63-64.

- 10 -

- Defendant USCF, the Fund's Sponsor, was a small, 15-person company responsible for billions of dollars of oil futures contracts during the Class Period and led by CEO and President defendant Love, who worked as the portfolio manager of USO during its launch in 2006, and who also solicited investment and sold USO shares as a registered representative of USO's marketing agent, defendant ALPS. ¶¶61-62, 202, 240, 253.

### 2. The SAC Adequately Pleads Violations of the Securities Laws and Addresses the Deficiencies Identified by the Court

The additional factual allegations in the SAC address the concerns raised by the Court and demonstrate that the allegedly false and misleading statements and omissions are actionable under the securities laws. As to the omission of COVID-19 and the resulting impacts to the Fund as a risk factor in the February Registration Statement, the SAC adds significant allegations showing that, *weeks* before the February Offering (and at a minimum, by the time of the offering), the outbreak had *already* posed a known significant and identifiable risk to USO and the crude-oil and futures markets in which it operated. ¶¶65-68. For example, as alleged, defendant Love himself acknowledged in January 2020 – almost a month before the offering – that COVID-19 had "become a big factor in the market," caused "concern about demand," and would "meaningful[ly" impact demand, thereby recognizing a material risk to USO and its investment strategy of providing investors a cost-effective way to invest in crude oil price movements. ¶¶65, 166. Moreover, as later-disclosures would reveal, losses in February 2020 to the tune of over $200 million (for the month ending just four days after the offering) verify that, at the time of the February Offering, the Fund had already been significantly impacted by the COVID-19-induced economic turmoil in the oil markets. Whether investors believed the negative impact from the risk to be temporary (Order at *14-*15) – or sought to purchase USO when its price was declining in the hope that oil prices would recover as COVID-19 fears eased – does not minimize Defendants' disclosure obligations because

- 11 -

short-term risks must also be disclosed, particularly where, as here, those risks can (and did) have significant long-term consequences.[7]

Similarly, the cursory reference to a potential risk of "pandemics (*e.g.*, COVID-19)" in the March Registration Statement was likewise insufficient to apprise investors of the rapidly increasing COVID-19 risk that existed at the time of the March Offering, which was no longer simply a potential risk of investing in USO, as it had *already* contributed to an additional nearly *$1 billion* in losses by the time of the offering. ¶209. As detailed in the SAC and later acknowledged in USO's own SEC filings, by the time of the March Offering, the significant extent of COVID-19's impact on the oil markets had, by extension, already impacted the Fund and its investment objective, rendering the superficial mention of COVID-19 inadequate and misleading. ¶¶149-150; *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized").[8] Indeed, according to reports issued before the March Offering, the crisis was *already* "one of the biggest oil crashes in history," and the resulting turmoil was, according to one industry professional, tantamount to "Operation Desert Storm, Enron, 9/11, Hurricane Katrina/Rita, Lehman Bros, combined [and was happening] every single day." ¶76. Furthermore – and significantly – because the SAC alleges substantial new allegations evidencing that COVID-19

---

[7]     *See New Jersey Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013)) ("There are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a . . . prospectus on the basis that the information is public knowledge and otherwise available to them.").

[8]     For example, USO's subsequently-filed SEC filings clarified that COVID-19 produced "*unprecedented conditions*" at the time of the March Offering, "namely simultaneous oversupply and a collapse in demand for crude oil combined with a lack of on-land storage for crude oil," and an extended period of contango. ¶150; *see Winston Van v. Bright Health Grp., Inc.*, 2025 WL 3171688, at *4-*5 (2d Cir. Nov. 13, 2025) (finding "post-IPO statements" by executives helped demonstrate "that at least some of the risks identified in the Offering Documents had already materialized at the time of the IPO") (summary order).

was not only a known trend, but also an event and uncertainty then-impacting and reasonably likely to continue to impact USO's financial performance (¶¶65-68, 149-150), Defendants' formulaic statements regarding "pandemics" in the Registration Statements, and the complete omission of the risk in the February Registration Statement, violated Item 303. *See* SEC's Interpretive Release on Item 303 (available at *Mgmt.'s Discussion & Analysis of Fin. Condition & Results of Operations*, 1989 WL 1092885, at *4 (May 18, 1989)) (disclosure duty exists "where a trend, demand, commitment, ***event or uncertainty*** is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation").[9]

Moreover, the SAC addresses the Court's concerns about other allegedly false and misleading statements and omissions regarding USO's investment objective and strategy, including the Registration Statements' representations that "[i]nvestors may choose to use USO as a means of investing indirectly in crude oil," and "USO's investment strategy is designed to provide investors with a cost-effective way to invest indirectly in crude oil." ¶¶172, 183. For example, the SAC includes new allegations about USO's rapid growth leading up to the March Registration Statement having imperiled its investment objective, including the existence of "all-time high" "[o]il market volatility" in March 2020, and the Fund's responsibility for creating "extreme distortions" in the markets during the Class Period that threatened the Fund's investment objective. ¶¶95, 99. Likewise, the SAC strengthens the CAC's Item 303 allegations as to these statements by alleging

---

[9]     *See also Sodha*, 154 F.4th at 1030 (vacating dismissal of an alleged misleading statement that the company was "directly affected by elements beyond our control, such as . . . changes in the volatility in financial markets . . . as a result of the COVID-19 pandemic"). For a typical §11 analysis without an Item 303 allegation, a showing of "unique knowledge" (Order at *14, *19), or any knowledge for that matter, is ***not*** required. *See Jianpu*, 2020 WL 5757628, at *8 ("[P]laintiffs need not plead defendants' knowledge as there is no scienter requirement in Section 11."). Additionally, the failure to include an adequate explanation for investors of how the pandemic was affecting USO's investment objective contravened Item 105's mandate to disclose "the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. §229.105(a).

USO's sharply rising positional concentration and the resulting volatility and market distortions constituted trends, events, and (at a minimum) *uncertainties* that prevented the Fund from being an appropriate and "cost effective" vehicle "to invest indirectly in crude oil," and that had, and would reasonably likely continue having, an adverse impact on USO's financial condition.  ¶¶201-202.[10]

Moreover, the SAC addresses the Court's concerns about statements in the CAC regarding the detrimental impacts to USO's investment objective from extreme contango during the Class Period and USO's ability to track the price of oil, the Fund's per share NAV, and the underlying Benchmark Futures Contract in which the Fund was almost exclusively invested.  *See* Order at *28-*29 (discussing statement that "a prolonged period of contango could have a significant negative impact on USO's per share NAV and total return"); Order at *22-*25 (discussing statements about whether the price of USO shares would track changes in the spot price of oil, oil securities and per share NAV).  The Court dismissed these statements because it found, taken in context with other disclosures, that they were not false or misleading.  *Id*. at *24-*25, *29.

The SAC adds allegations further supporting the actionability of these statements and omissions, including that the May 6 Amendment "impliedly admitted that previous statements about the impact of periods of contango and backwardation were indeed false and misleading when made" by revealing that "*[p]rior to 2020*, periods of contango or backwardation have not materially impacted USO's investment objective."  ¶150 ("the May 6 Amendment suggested that in 2020 – including *during* the Class Period – contango *had* materially impacted USO's investment objective, and further elaborated that '[c]ontango may persist for the foreseeable future, potentially at *extreme*

---

10    For similar reasons, the failure to disclose that the Registration Statements themselves would increase the volatility in the markets in which USO operated and thereby threaten the Fund's investment strategy and objective, are likewise actionable and bolstered by the SAC's newly-added allegations.

levels, as a result of the unprecedented conditions in the wake of the COVID-19 crisis . . .'").[11] The SAC also asserts additional allegations underscoring the falsity and materiality of the Fund's statements about the ability to track oil, the Benchmark Contract (in which USO was historically almost exclusively invested), and USO's NAV. *E.g.*, ¶¶160-162 (SEC determining that the imposition of position limits on the Fund's ability to invest in oil futures contracts "was **critical** to USO" and "introduced the risk of tracking error between USO's investment objective and its NAV"); ¶130 (the CME Group was in "constant contact" with USO about its approaching accountability levels).

Additionally, the SAC adds allegations underscoring the falsity and materiality of statements regarding USO's "neutral investment strategy" and that "USO was not actively managed," that address the deficiencies identified by the Court. *Compare* Order at *33-*35 (concluding that such statements "cannot plausibly be regarded as falsely represent[ing] to investors that the Fund will unfailingly and without exception passively pursue the 'neutral investment strategy'") *with* ¶53 (Love distinguishing USO from other USCF funds because it invests "***purely just the front-month future contract***"); ¶139 (April 1, 2020 report that "[i]t is important to remember that USO ***isn't an actively managed fund***."); *id.* (analyst concluding that "the list of what USO could own" following its rapid-fire overhaul "is so broad and vague as to be ***worthless***."); *id.* (asserting that "[t]he notion that USO had transformed into an actively managed fund – ***despite primarily tracking front month futures contracts for 14 years*** – was a common assessment by market observers at the time[.]"); *id.* (the "massive issuance of USO shares . . . has created a bloated monster of a security that cannot

---

[11]    The SAC also includes allegations further demonstrating USO's ability to exacerbate the extreme contango dynamic negatively affecting the Fund in March 2020, which by that time had already "dramatically increased" and reached "historic levels." ¶149; ¶99 (noting that "the enormous amount of contango [] in the oil futures curve" was "caused by" USO and its "implosion"); *id.* (referencing "the extreme distortions in the commodities futures curve caused by ETFs like USO").

possibly achieve its original goal of mirroring the moves in near-term oil futures contracts," and thus "has become an actively managed ETF").

As to the statements and omissions in the March Registration Statement concerning the Fund's historical performance, Order at *27 (noting that "the March 2020 Registration Statement does not make representations, promises, or predictions about the future"), the SAC alleges, for example, that the massive investment losses the Fund suffered in February and March 2020, which deviated significantly from USO's historical investment returns, was a known adverse trend, event, and/or uncertainty then-impacting the Fund's financial condition that Defendants were required to disclose, including under Item 303. ¶¶201-202. Despite having been aware of fundamental financial information revealing staggering losses and existential threats then-impacting the Fund through their senior roles managing and operating the Fund, the USO Defendants misleadingly provided historical performance data without any further disclosure of how the financial situation of the Fund had deviated *far* from historical norms, including generating nearly \$1 billion in additionally losses during the month at the time of the March Offering. *See Facebook*, 986 F. Supp. 2d at 513 (finding Item 303 required defendants to disclose an intra-quarter trend because they were "aware of the material negative impact on [the company's] revenues" shortly before a public offering); *Sodha*, 154 F.4th at 1034 (vacating dismissal where plaintiffs alleged that Item 303 required disclosure of interim declines in "financial metrics and key performance indicators" occurring after the last reported quarter).

The SAC also offers additional allegations regarding USO's statements about its regulatory position limits and accountability levels in the March Registration Statement that address the Court's concerns. Order at *33. For example, the USO Defendants maintained constant communications with CME Group about approaching accountability levels during the Class Period, evidencing the

materiality of such limitations. ¶130.  Moreover, as the SEC would later reveal, the imposition of positional limits on the Fund that impede its ability to invest in oil futures contracts "was critical to USO" and could impair USO's investment objective. ¶162.  The USO Defendants' communications with the CME Group, in combination with the fact that, shortly thereafter, regulators and USO's futures commission merchant imposed limits on USO – and given the massive size of the Offerings that all but guaranteed that the Fund would in fact run up against those limits – support a finding that Defendants' statements were materially false and misleading when made.  Moreover, the USO Defendants' communications with the CME Group further demonstrate their awareness of the adverse trends and uncertainties relating to the impending regulatory limitations, underscoring their violation of Item 303.  ¶¶130, 202.

Furthermore, the SAC reasserts, and provides additional support for, several statements and omissions in April 2020 that the Court did not address and that are actionable under §10(b) and Rule 10(b)(5).  For example, the statements issued on April 16 and 22, 2020, concerning changes to USO's investment strategy, were materially misleading because they failed to disclose that on April 16, 2020, the CME, on behalf of NYMEX, **ordered** the USO Defendants "to limit the Fund's exposure to June WTI futures contracts, a drastic regulatory move that undermined the stated investment strategy and objective of the Fund."  ¶206; *see Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("once a company speaks on an issue or topic, there is a duty to tell the whole truth.").[12]  Moreover, disclosure was also necessary by this time given the constant

---

[12]    The April 22, 2020, statement, though not identified in the CAC, is analogous to the April 16, 2020, statement.  ¶¶206-207.  The April 21, 2020 statement, which was included in the CAC, announced that the SEC had yet to declare effective an S-3 registration statement for the sale of an additional **4 billion** USO shares, but failed to disclose the specific reasons for the SEC's refusal.  ¶208.  The SAC also reasserts certain statements contained on USCF's website that the Court did not address, including that "USO offers commodity exposure without using a commodity futures account," and adds statements from the USCF website's "Disclosures" webpage that repeat

communication between the CME Group and the USO Defendants about regulatory limits, and given

the "critical" limitation placed on the Fund by its futures commission merchant (RBC) on April 22,

2020, further evidencing the materiality of these omissions. ¶152.  Indeed, the SEC's determination

that USO and USCF "*failed to fully disclose material information*" regarding RBC's limitation

significantly bolsters the actionability of the April 22, 2020 statement.  The April 2020 statements

are also actionably false and misleading given the increasingly detrimental impacts to the Fund

following the March Offering as alleged in the SAC..[13]

Finally, the SAC provides substantial new allegations supporting scienter that address the

Court's findings that the CAC failed to adequately allege scienter under both motive and opportunity

and recklessness theories.  Order at *40-*44.  As to recklessness, the SAC alleges that the USO

Defendants closely and regularly monitored and tracked the key factors and developments affecting

the oil markets and impacting the Fund.  ¶¶241-243.  As discussed above, the SAC also alleges that

the USO Defendants maintained constant communications with the CME Group during the Class

Period, giving them access to nonpublic and specialized information concerning market conditions

and advanced notice of negative pricing in WTI futures contracts that was unavailable to ordinary

---

many of the statements discussed above but are also false and misleading for failing to disclose materially adverse impacts to the Fund and its investment objective that occurred following the March Offering as the statements were continually made throughout the Class Period.  ¶¶213-216.

[13]    Similarly, the SAC reasserts that the March 20, 2020, Form 8-K – which stated that the "Company evaluated subsequent events for recognition and disclosure through March 20, 2020, the date the statements of financial condition were issued or filed," and that "*[n]othing has occurred* outside normal operations since that required recognition or disclosure in these statements of financial condition" – was materially false and misleading when made.  ¶209 (explaining that the Fund had "suffered close to $1 billion in losses" at the time of the March Offering, "far exceeding any pre-2020 precedent by hundreds of millions of dollars[.]"); *see also* ¶201 (discussing similar statements made on March 24, 2020).  While the Court did not address these statements in the Order, they are further supported by the additional allegations in the SAC.

investors.  ¶¶250-251.[14]  The SAC further alleges that USO and USCF's access to confidential, nonpublic information through their licensing agreement with NYMEX likewise supports scienter. ¶247.  USO's role in the oil crashes of 2009 and 2014, newly alleged in the SAC, also demonstrate that the USO Defendants had a knowledge and awareness that rapidly growing the Fund and rolling large positions could lead to significant market distortions.  *See Set Cap.*, 996 F.3d at 70-71 (finding recklessness where defendant "knew" certain "purchases would exacerbate the illiquidity" impacting the fund because of prior "significant episodes of market volatility").

Additionally, the SAC supplements Plaintiff's motive allegations by detailing how USCF was a company of only 15 employees that received management fees from record inflows and that defendant Love served as a registered representative of ALPS where he stood to personally benefit from marketing USO shares as well as benefitting from receiving management fees from USCF. ¶255.  *See In re Reserve Fund Sec. & Derivative Litig.*, 732 F. Supp. 2d 310, 320 (S.D.N.Y. 2010) (holding that defendants who had a personal stake in advisory entities and received management fees possessed a sufficient motive to support scienter); *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 620 (S.D.N.Y. 2008) (recognizing motive where fund managers personally benefited from management fees and other compensation tied to attracting investor capital, giving them a concrete financial incentive to commit fraud).

These additional allegations, when considered holistically with the allegations in the CAC and which are reasserted in the SAC, are sufficient to establish that the inference of scienter is "at least as compelling as any opposing inference."  *Set Cap.*, 996 F.3d at 78 (citation omitted).

---

[14]    *See Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *5 (S.D.N.Y. Feb. 5, 2024) (finding that the ability to "monitor the daily influx of demand" for products meant defendants "either knew that demand had fallen . . . or at least had access to that information"); *see also Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 543 (S.D.N.Y. 2020) (scienter adequately pled where defendant "'knew facts or had access to information suggesting that their public statements were not accurate'") (citation omitted).

## IV.      CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for leave to file the SAC.

DATED:  November 26, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
VINCENT M. SERRA


                              /s/ David A. Rosenfeld
                     DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
PERETZ BRONSTEIN
EITAN KIMELMAN
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com
eitan@bgandg.com

*Additional Counsel for Plaintiff*

- 20 -