**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: UNITED STATES OIL FUND, LP SECURITIES LITIGATION | Case No. 1:20-cv-04740-PGG |
| | <u>CLASS ACTION</u> |
| This Document Relates To:  ALL ACTIONS | |

**USO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THE [PROPOSED] SECOND CONSOLIDATED AMENDED <u>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY ...................................................................................................4

ARGUMENT...........................................................................................................................5

I.     The Proposed SAC Fails to Allege Any Material Misstatement or Omission. ...................5

    A.     Statements About "Risk Factors Involved with an Investment
in USO" in the February and March Registration Statements.................................6

    B.     Statements in the March Registration Statements About Whether
the Price of USO Shares Will Track Changes in the Spot Price of Oil,
Oil Securities, and Per Share NAV.........................................................................9

    C.     Statements in the March Registration Statement Concerning
the Fund's Historical Performance. .......................................................................11

    D.     Statements in the March Registration Statement Concerning
the Effects of Contango on the Fund. ....................................................................11

    E.     Statements About Regulatory Position Limits in
the March Registration Statement. ........................................................................13

    F.     Statements about the Fund's Investment Strategy
in the March Registration Statement. ....................................................................14

    G.     Language in February and March Registration Statements
Suggesting that an Investment in USO Was a Proxy for Investing
in the Crude Oil Market..........................................................................................15

    H.     Alleged Omissions in the March Registration Statement
About USO's "Creation and Exacerbation" of Market Events. ............................16

    I.     Other Alleged Omissions Outside the Registration Statements. ...........................17

II.     The Proposed SAC Fails to Include any Allegation Sufficient To Plead Scienter............18

    A.     The SAC Does Not Plausibly Plead Motive...........................................................18

    B.     The SAC Does Not Plausibly Plead
Conscious Misbehavior or Recklessness. ..............................................................19

    C.     A Holistic Review Does Not Support a Finding of Scienter. ................................21

III.     The Proposed SAC Fails to Establish any Violation of Regulation S-K.........................22

CONCLUSION....................................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asay v. Pinduoduo Inc.*,
   No. 18-cv-7625, 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020)................................................23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).....................................................................................................19

*Barilli v. Sky Solar Holdings, Ltd.*,
   389 F. Supp. 3d 232 (S.D.N.Y. 2019) .......................................................................................8

*C.D.T.S. v. UBS AG*,
   No. 12 Civ. 4924, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub
   nom.*, *Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d
   Cir. 2015) ...............................................................................................................................19

*In re Coty Inc. Sec. Litig.*,
   No. 14-cv-919, 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)..................................................23

*Foman v. Davis*,
   371 U.S. 178 (1962)..................................................................................................................5

*Gutman v. Lizhi Inc.*,
   633 F. Supp. 3d 681 (E.D.N.Y. 2022) .......................................................................................8

*Hart v. Internet Wire, Inc.*,
   145 F. Supp. 2d 360 (S.D.N.Y. 2001) .....................................................................................20

*Holbrook v. Trivago N.V.*,
   No. 17 Civ. 8348 (NRB), 2019 WL 948809 (S.D.N.Y. Feb. 26, 2019), *aff'd
   sub nom.*, *Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019).........................................22

*Hutchison v. Deutsche Bank Sec. Inc.*,
   647 F.3d 479 (2d Cir. 2011)....................................................................................................22

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991)......................................................................................................6

*Kapps v. Torch Offshore, Inc.*,
   379 F.3d 207 (5th Cir. 2004) ..................................................................................................23

*Lucente v. Int'l Bus. Machs. Corp.*,
   310 F.3d 243 (2d Cir. 2002)......................................................................................................5

*Medina v. Tremor Video, Inc.*,
  640 F. App'x 45 (2d Cir. 2016) ........................................................................................8

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014)..............................................................................................6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)..............................................................................................6

*Newton v. Meyer*,
  No. 22 Civ. 540 (JPC), 2023 WL 2563115 (S.D.N.Y. Mar. 17, 2023) ...................................14

*Nguyen v. MaxPoint Interactive, Inc.*,
  234 F. Supp. 3d 540 (S.D.N.Y. 2017) ...................................................................................22

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..............................................................................................20

*Optimum Strategies Fund I, LP v. United States Oil Fund. LP*,
  No. 22-cv-00511 (MPS), 2023 WL 2526394 (D. Conn. Mar. 15, 2023) ................................21

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
  538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).......................13

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
  No. 118 Civ. 9848 (PGG), 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) .............................12

*Plumbers & Steamfitters Loc. 137 Pension Fund v. Am. Express Co.*,
  No. 15 CIV. 5999 (PGG), 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017) ....................6, 10, 13

*Pollio v. MF Glob., Ltd.*,
  608 F. Supp. 2d 564 (S.D.N.Y. 2009) ..................................................................................11

*In re ProShares Tr. Sec. Litig.*,
  728 F.3d 96 (2d Cir. 2013)................................................................................................12

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)..............................................................................................18

*In re Rsrv. Fund Sec. & Derivative Litig.*,
  732 F. Supp. 2d 310 (S.D.N.Y. 2010) ..................................................................................19

*Rubinstein v. Credit Suisse Grp. AG*,
  457 F. Supp. 3d 289 (S.D.N.Y. 2020) ..................................................................................13

*Stadnick v. Vivint Solar, Inc.*,
  861 F.3d 31 (2d Cir. 2017)..............................................................................................5, 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................21

*In re TVIX Sec. Litig.*,
  25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom.*, *Elite Aviation LLC v.*
  *Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014)....................................................13

*In re UBS AG Sec. Litig.*,
  No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd*
  *sub nom.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752
  F.3d 173 (2d Cir. 2014)....................................................................................21

*In re Vroom, Inc. Sec. Litig.*,
  No. 21 CIV. 2477 (PGG), 2025 WL 862125 (S.D.N.Y. Mar. 18, 2025)................................6

*Wandel v. Gao*,
  590 F. Supp. 3d 630 (S.D.N.Y. 2022) ....................................................................8

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ..........................................18

Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o .......................*passim*

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§
  78j and 78t ...........................................................................................*passim*

**Regulations**

17 C.F.R. § 229.105 ..........................................................................................22

17 C.F.R. § 229.303 ..........................................................................................22

17 C.F.R. § 229.503 ..........................................................................................22

**Rules**

Fed. R. Civ. P. 9(b) .........................................................................................18

Fed. R. Civ. P. 12(b)(6)...................................................................................4, 5

**PRELIMINARY STATEMENT**

Plaintiff's proposed second consolidated amended complaint (the "SAC") fails to cure the fatal defects that the Court identified in its well-reasoned opinion granting Defendants' motion to dismiss the Consolidated Amended Complaint (the "CAC"). Amendment would be futile, and leave to amend should be denied.

Lead Plaintiff Nutit, A.S. purports to be an investor in United States Oil Fund, LP (the "Fund" or "USO"), an exchange-traded fund with a daily investment objective tied to the performance of short-term futures contracts on crude oil. Plaintiff brings this putative class action to recoup its alleged losses on investments made between February 25 and April 28, 2020 by challenging registration statements that USO filed with the U.S. Securities and Exchange Commission ("SEC") in connection with offerings of USO shares on February 25 and March 23, 2020. Plaintiff purports to bring claims under (a) Section 11 of the Securities Act of 1933 (the "Securities Act") against all Defendants, and Section 15 of the Securities Act against United States Commodity Funds LLC ("USCF") and the Individual Defendants,[1] on behalf of investors who purchased USO shares pursuant and/or traceable to the Fund's prospectuses and registration statements ("Registration Statements") issued in connection with the February 25 and March 23 offerings; and (b) Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 against the USO Defendants on behalf of a putative class of investors who purchased USO shares during the February 25 to April 28, 2020 putative class period. CAC ¶ 1.

The CAC alleged that Plaintiff and other investors opportunistically sought to "buy the dip" in the price of USO shares as oil prices were declining during the class period—hoping to

---

[1] The Individual Defendants are John P. Love, Stuart P. Crumbaugh, Nicholas D. Gerber, Andrew F Ngim, Robert L. Nguyen, Peter M. Robinson, Gordon L. Ellis, and Malcolm R. Fobes III. The "USO Defendants" is used to collectively refer to USO, USCF, and the Individual Defendants.

profit by "tak[ing] advantage of rapidly evolving events in oil markets." *Id.* ¶¶ 6, 62.  USO shares instead continued to decline due to extraordinary developments that dramatically impacted supply and demand for oil, including the highly publicized COVID-19 pandemic.  Yet, even under these extraordinary circumstances, USO achieved its stated investment objective throughout the class period—successfully providing the exposure to oil prices that investors sought in purchasing USO shares.  Fundamentally, Plaintiff faults USO's disclosures during the Class Period regarding (i) how the Fund operates, which was fully and accurately disclosed, and (ii) how oil prices (and thus USO's share price) were affected by a once-in-a-century public health crisis and black swan market event.  Plaintiff's losses were caused by the fact that oil prices continued to decline during the class period rather than rebound as investors hoped—not by some undisclosed feature of the Fund or hidden risk of investing.  The securities laws do not permit recovery for the materialization of well-disclosed risks, especially those pertaining to public events beyond any defendant's ability to predict.

In a detailed opinion dismissing the CAC in its entirety, the Court concluded that Plaintiff failed to (1) allege materially misleading misrepresentations and omissions in the Registration Statements, (2) allege scienter, (3) allege the omission of information required by Items 303 and 105, (4) state a claim under Section 11, or (5) establish control person liability.  *See* Mem. Opinion & Order (Sept. 29, 2025), Dkt. No. 178 ("Order").

The Court granted leave to seek to amend the complaint, and Plaintiff now repackages the same theories from the CAC with additional but immaterial gloss, conclusory assertions, and hindsight characterizations of an unprecedented market dislocation.  The SAC still fails to allege that the February and March Registration Statements contain any actionable misstatement or omission and still fails to plead scienter with the particularity and cogency the securities laws

-2-

demand.  Accordingly, each of the claims contained in the proposed SAC fails as a matter of law, and Plaintiff's motion for leave to amend the complaint should be denied as futile.

*First*, Plaintiff does not plausibly allege in the SAC any material misstatement or omission of fact as required to state a claim under both the Securities Act and the Exchange Act.  Plaintiff points to purportedly "new" allegations that either are not new at all and were previously considered by the Court or that simply fail to convert nonactionable statements into actionable ones.  The core disclosures in the February and March 2020 Registration Statements remain the same, and the "new" allegations do not plausibly show that any challenged statement was false or misleading when made.  Risk disclosures expressly warned of volatility, tracking variance, and regulatory constraints, as well as the possibility of extraordinary exchange or regulatory actions. Accurate historical data and clearly labeled illustrations of market structure cannot be recast as misstatements by invoking later events or changed market circumstances.  And USO's statements about contango, tracking, and investment strategy continue, even under Plaintiff's massaged narrative, to be entirely consistent with the total mix of disclosed information.  The 2021 SEC settlement order (touted by Plaintiff as a new allegation) was fully addressed by the parties' supplemental submissions and the Order, and in any event is unrelated to the subject matter of Plaintiff's claims.

*Second*, the proposed amendment still fails to plead scienter as required to make out a claim under the Exchange Act.  The SAC again leans on generic corporate motives, group pleading, and broad references to unspecified internal data and "confidential market data" from its exchange provider.  None of the allegations approach the strong inference required to establish scienter.  The proposed SAC includes no particularized allegations of contemporaneous reports or statements contradicting the public disclosures, no concrete facts showing that any defendant actually knew

the challenged statements were false, and no coherent theory that is at least as compelling as the obvious alternative: that Defendants made good-faith, cautionary disclosures amid rapidly evolving market conditions.

The Court should deny Plaintiff's motion for leave to amend because the proposed amended complaint does not cure the fundamental pleading failures identified in the Court's Order and each claim fails as a matter of law.

## PROCEDURAL HISTORY

On June 19, 2020, the first of three putative securities fraud class action lawsuits was filed on behalf of purchasers of USO securities during the Class Period (February 25, 2020 to April 28, 2020). Dkt. No. 1. On August 18, 2020, Plaintiff moved to consolidate complaints. Dkt. No. 43. The Court granted the motion on September 16, 2020. Dkt. No. 63. Plaintiff filed the CAC on November 30, 2020. Dkt. No. 68. The USO Defendants moved to dismiss the CAC under Rule 12(b)(6) on April 29, 2021, Dkt. No. 142; Plaintiff opposed on April 30, 2021, Dkt. No. 151; and the USO Defendants replied on April 29, 2021, Dkt. No. 145. On April 29, 2021, the remaining Authorized Participant Defendants and ALPS Distributors, Inc. joined the motion to dismiss. Dkt. No. 145.[2]

On September 29, 2025, the Court entered the Order granting Defendants' motion and dismissing the CAC in its entirety. Dkt. No. 178. In the Order, the Court granted Plaintiff leave to move to amend, provided that, "in any such motion Plaintiff will explain in detail how each defect cited in this Opinion has been satisfied by factual allegations in the proposed second amended complaint." *Id.* at 91. On November 26, 2025, Plaintiff filed a Motion for Leave to file

---

[2] While the USO Defendants' motion to dismiss was pending, the parties submitted supplemental authority to the Court and sought leave to respond to the same. *See* Dkt. Nos. 154–55, 158–59, 161–62, 167–70.

a Second Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Motion").  Dkt. Nos. 182, 183-2, 184.

## ARGUMENT

Plaintiff's motion for leave to amend its deficient complaint should be denied for the same reasons set forth in the Court's opinion, including because Plaintiff has failed to identify any false or misleading statement in the Registration Statements or in any other disclosure and failed to plead facts to support a finding of scienter.  A Court may deny leave to amend where there is "futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Here, the SAC would not withstand a motion to dismiss because the SAC does not cure the myriad defects identified in the Court's opinion dismissing all claims, and therefore, amendment is futile.

## I.   THE PROPOSED SAC FAILS TO ALLEGE ANY MATERIAL MISSTATEMENT OR OMISSION.

Just as with the CAC, all of Plaintiff's claims fail as a matter of law because the SAC points to no statement in the Registration Statements or elsewhere that is even arguably false or misleading and asserts no omission of material fact that renders the disclosures misleading.[3]  To bring a viable misrepresentation or omission claim under Section 11 of the Securities Act, Section 10(b) of the Exchange Act, or Rule 10b-5, Plaintiff must allege that each challenged Registration Statement contained a false statement of material fact or omitted a material fact "necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a); *see Stadnick v. Vivint Solar, Inc.*, 861

---

[3] Plaintiff's Motion notes that the SAC has abandoned certain challenged statements from the CAC, "including those regarding liquidity and illiquidity, the Saudi/Russia oil price war, USO's roll period and position closures, certain contango and tracking-related statements, and information about the Fund's NAV and roll information posted on defendant USCF's website."  Mot. 2.

F.3d 31, 36 (2d Cir. 2017); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991).

"A statement is misleading if a reasonable investor, in the exercise of due care, would have received a false impression from the statement." *Plumbers & Steamfitters Loc. 137 Pension Fund v. Am. Express Co.*, No. 15 CIV. 5999 (PGG), 2017 WL 4403314, at *13 (S.D.N.Y. Sept. 30, 2017) (citation omitted).  "In general[,] there is no duty to disclose a fact . . . 'merely because a reasonable investor would very much like to know that fact' . . . ." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) (citation omitted).  "[D]isclosure is required," however, "when necessary to make . . . statements made, in light of the circumstances under which they were made, not misleading." *Id.* (internal quotation marks and citations omitted).  In other words, "once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Id.*

"That duty is not boundless, however." *In re Vroom, Inc. Sec. Litig.*, No. 21 CIV. 2477 (PGG), 2025 WL 862125, at *13 (S.D.N.Y. Mar. 18, 2025) (internal quotations marks and citation omitted).  "[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject." *Id.* (quoting *Plumbers & Steamfitters Loc. 137 Pension Fund*, 2017 WL 4403314, at *13).  "[T]he proper inquiry requires an examination of defendant's representations, taken together and in context." *Meyer*, 761 F.3d at 250 (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010)).  "In other words, [courts] look to the 'total mix' of available information." *Plumbers & Steamfitters Loc. 137 Pension Fund*, 2017 WL 4403314, at *13 (alteration in original) (citation omitted).

    **A.**    **Statements About "Risk Factors Involved with an Investment in USO" in the February and March Registration Statements.**

The SAC does not include any new allegations that overcome the deficiencies identified by the Court with respect to Plaintiff's claim that failure to reference the emerging COVID-19

pandemic in the February 2020 Registration Statement and the USO Defendants' disclosures about the risks flowing from COVID-19 in the March 2020 Registration Statement rendered the disclosures materially false or misleading.  Order 24–28, 32–34.  The Court determined that the risk factors included in the Registration Statements were not materially false or misleading because no allegation in the CAC plausibly pleaded that, at the time the statements were made, (1) the significance and duration of the COVID-19 pandemic was known, (2) Defendants had unique knowledge regarding the COVID-19 pandemic, or (3) the Fund had already been materially impacted by the COVID-19 pandemic.  Order 26, 34.  The proposed SAC does not cure any of those shortcomings.

*The Significance of COVID-19 Was Unknown at the time of the Challenged Statements.* As the Court noted, "the global effects of the pandemic, the likely duration of those effects, and the catastrophic effect on the oil market was far from clear" at the time of the February and March Offerings.  Order 26; *see also id.* at 34 ("[T]he significance and duration of the pandemic and its effect on the crude oil market were not clear [by March 23, 2020].").  Plaintiff asserts that the SAC adds allegations showing that "*weeks* before the February Offering . . . the [COVID-19] outbreak had *already* posed a known significant and identifiable risk to USO and the crude-oil and futures market in which it operated."  Mot. 11 (citing SAC ¶¶ 65–68).  These newly added allegations are exclusively public statements or news reports, *see* SAC ¶¶ 65–68, and do nothing to alter the Court's previous conclusion.

The CAC included references to similar contemporaneous public news reports regarding COVID-19, *see, e.g.*, CAC ¶ 61, showing that the developing market conditions in early 2020 were widely publicized by major national news organizations in real time.  *See Wandel v. Gao*, 590 F. Supp. 3d 630, 642 (S.D.N.Y. 2022) ("[T]he [a]mended [c]omplaint itself shows how the entire

world had tracked COVID-19 since its inception.  This was not an instance where investors only had access to 'sporadic press reports or reports published in other contexts' about the virus." (citation omitted)).  Plaintiff's additional citations in the SAC to such news reports do not give rise to a violation of the securities laws.  Defendants have "no duty to disclose information that is within the public domain through publication in the news media."  *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254–55 (S.D.N.Y. 2019).

   ***Defendants Had No Unique Knowledge at the time of the Challenged Statements.*** Further, the SAC adds no new allegation to plausibly plead that Defendants "had any unique knowledge" at the time of the February and March 2020 Offerings of the potential significant impact or duration of the COVID-19 pandemic.  Order 26; *see also id.* at 34.  To try to cure this deficiency, Plaintiff points to alleged quotes from Defendant Love in January 2020, including that there was "some concern about demand" due to COVID-19 but that any dip in demand would be "a short-lived thing."  SAC ¶ 65.  Rather than supporting Plaintiff's claim that Defendants had unique knowledge about COVID-19, Mr. Love's quote supports the opposite conclusion, *i.e.*, that "the likely duration of [the global effects of the pandemic] and the catastrophic effect on the oil markets was far from clear," Order 26, at the time of the February and March Offerings.  *See Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 49 (2d Cir. 2016) (non-precedential) ("The . . . complaint does not state facts from which we can infer that defendants knew of the existence or impact of any uncertainty or trend that the rest of the world did not know, and that therefore should have been disclosed.").  "Plaintiff's allegations at most suggest that [d]efendants knew COVID-19 existed, not that it would persist and spread globally, thereby having a negative impact on its operations and revenues."  *Gutman v. Lizhi Inc.*, 633 F. Supp. 3d 681, 690 (E.D.N.Y. 2022).

Moreover, the SAC fails "to allege how the existence of COVID-19 was 'information uniquely within [d]efendants' control.'" *Id.* (citation omitted).

       ***The Fund Was Not Affected at the time of the Challenged Statements.*** Finally, despite Plaintiff's bald contention to the contrary, no new allegation supports the assertion that the Fund was already affected by COVID-19 economic turmoil at the time of the February and March Offerings. Plaintiff points to allegations that "later-disclosures . . . reveal[ed] losses in February 2020 to the tune of $200 million" and that the pandemic "had ***already*** contributed to an additional nearly ***$1 billion*** in losses by the time of the" March Offering. Mot. 11–12. But the CAC included these exact allegations, *see* CAC ¶¶ 107, 209, and thus were already considered by the Court, *see, e.g.*, Order 47 (quoting Plaintiff's allegation that "by the time of the March Offering the Fund had suffered close to $1 billion in additional losses in March alone and was on track to lose ***$1.2 billion*** by the end of the month").

      **B.**     **Statements in the March Registration Statements About Whether the Price of USO Shares Will Track Changes in the Spot Price of Oil, Oil Securities, and Per Share NAV.**

      Plaintiff continues to challenge statements in the March Registration Statement regarding "the ability to track oil, the Benchmark Contract . . . and USO's NAV" as false and misleading. Mot. 15 (citing SAC ¶¶ 160–62).[4] Plaintiff asserts that the SAC includes "additional allegations underscoring the falsity and materiality of" these statements and cites to allegations in the SAC detailing a November 8, 2021 SEC Order in *U.S. Commodity Funds LLC & U.S. Oil Fund, LP*, SEC Release No. 11006 (Nov. 8, 2021) ("SEC Order") and a parallel order issued by the CFTC

---

[4] The Motion states that Plaintiff has abandoned "certain . . . tracking-related statements," from the SAC, Mot. 2, without identifying those statements. It appears that Plaintiff has dropped its challenge to statements in the February Registration Statement "about whether the price of the Fund's shares will track changes in the spot price of oil, oil securities, and per share NAV." Order 40. To the extent that Plaintiff still challenges these statements, they are not actionable for the reasons already determined by the Court. *See id.* at 40–42.

the same day (the "CFTC Order"). *Id.* These purportedly "new" allegations are not actually new at all; they track almost verbatim Plaintiff's arguments included in a supplemental authority letter submitted to and considered by the Court in its Order. *Compare* Dkt. No. 158, Notice of Supplemental Authority (Nov. 24, 2021), *with* SAC ¶¶ 160–62; *see also* Order 18–19 (detailing Plaintiff's notice of supplemental authority). Plaintiff already advanced its theory to the Court that the SEC Order supports a finding that certain of USO's filings contained false and misleading statements. As a result, nothing in the SAC disturbs the Court's conclusion that "a reasonable investor would not 'have received a false impression from the [challenged] statement[s].'" Order 45 (alterations in original) (quoting *Plumbers & Steamfitters Loc. 137 Pension Fund*, 2017 WL 4403314, at \*11).

As detailed in the USO Defendants' response to the supplemental authority letter, the SEC Order takes no issue with the Registration Statement disclosures regarding, among other things, tracking error. *See* Dkt. No. 159, USO Defendants' Request for Leave to Reply to Plaintiff's Notice of Supplemental Authority (Dec. 6, 2021). Instead, the SEC Order addresses whether USO timely disclosed a particular factual development, namely that its futures commission merchant ("FCM") had on or around April 22 or 23, 2020 told USO that it could not invest through the FCM the proceeds generated by any hypothetical "future creation of new USO shares." SEC Order at \*2–3. The SEC Order defines this late-breaking development as the "New Creations Limit." *Id.* at \*2. The SEC Order then goes on to address disclosures by USO from April 24 through May 21, 2020 relating solely to the New Creations Limit and any potential risk that could be incurred by the Fund "*going forward*" should new shares be issued pursuant to a registration statement that was not even made effective until June 2020. *Id.* at \*5–8 (emphasis added).

There is no factual connection between the subject matter of the SEC Order and the SAC's allegations. It does nothing to bolster Plaintiff's claims.

### C. Statements in the March Registration Statement Concerning the Fund's Historical Performance.

As the Court noted, "Plaintiff's sole complaint" about statements in the March Registration Statement regarding the Fund's historical performance "is that Defendants' presentation of historical data ended with 2019, when catastrophic results in 2020 were already known." Order 49 (citing CAC ¶¶ 155, 160, 162). That sole (and rejected) complaint remains in the SAC. *See* Mot. 16 ("[T]he SAC alleges, for example, that the massive investment losses the Fund suffered in February and March 2020 . . . was a known adverse trend, event, and/or uncertainty then-impacting the Fund's financial condition that Defendants were required to disclose[.]"). The Court has already considered and rejected Plaintiff's claim about these losses in early 2020, including because "the March 2020 Registration Statement does not make representations, promises, or predictions about the future." Order 49. To the contrary, as the Court noted, the historical data is presented under a heading stating that "**\*PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.**" *Id.* (quoting Dkt. No. 144-2, at 26, 29, 33 (Mar. 2020 Registration Stmt.)). No allegation in the SAC overcomes the well-established principle "that '[d]efendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy.'" *Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009) (citation omitted).

### D. Statements in the March Registration Statement Concerning the Effects of Contango on the Fund.

Plaintiff continues to challenge statements in the March Registration Statement regarding the risk that "a prolonged period of contango *could* have a significant negative impact on USO's

per share NAV and total return." Order 52 (quoting CAC ¶ 68).[5] The Court found that such statements were not actionable because the CAC failed to plead "facts showing that the risk of the Fund experiencing negative effects due to a super contango dynamic had 'already materialized in the marketplace'" at the time of the statements. Order 54 (quoting *Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 118 Civ. 9848 (PGG), 2020 WL 5757628, at *12 (S.D.N.Y. Sept. 27, 2020)).

Plaintiff attempts to cure this deficiency by pointing to language in the May 6 Amendment, Mot. 14, which was already cited in the CAC. *Compare*, CAC ¶ 134, *with* SAC ¶ 149. Plaintiff now tries to spin the May 6 Amendment's statement that "*[p]rior to 2020*, periods of contango or backwardation have not materially impacted USO's investment objective" to necessarily mean that "in 2020 – including *during* the Class Period – contango *had* materially impacted USO's investment objective[.]" SAC ¶ 150 (first alteration in original). This tries to prove too much. *First*, the May 6 Amendment states that "*[i]n March 2020*, *contango dramatically increased and reached historic levels*." SAC ¶ 149. This language confirms only that there was a "nascent super contango dynamic" in March 2020 as the world began to shut down, not that "the Fund was already suffering 'severe negative impacts' as a result." Order 54(citation omitted). *Second*, Plaintiff's attempt to fault Defendants for failing to predict the negative results from the nascent super contango dynamic in March 2020 by pointing to statements made months later in May with the benefit of hindsight is unavailing. The securities laws do not require defendants "to predict and

---

[5] The Motion states that Plaintiff has abandoned "certain contango . . . statements," from the SAC, Mot. 2, without identifying those statements. It appears that Plaintiff dropped its challenge to statements in the Registration Statements regarding how "[p]eriods of contango . . . *do not materially impact USO's investment objective* of having the daily percentage changes in its per share NAV track the daily percentage changes in the price of the Benchmark Oil Futures Contract." Order 50 (alterations in original) (quoting CAC ¶¶ 143, 161)). To the extent that Plaintiff still challenges these statements, they are not actionable for the reasons already determined by the Court. *See id.* at 50–52.

disclose all possible negative results across any market scenario." *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 105 (2d Cir. 2013); *see also In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 452 (S.D.N.Y. 2014) ("It is not a material omission to fail to predict future market performance." (citation omitted)), *aff'd sub nom.*, *Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) (non-precedential).   Plaintiff cannot rely on "20/20 hindsight" to challenge disclosures in the Registration Statements.   *See Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 295 (S.D.N.Y. 2020) (citation omitted); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009) (non-precedential).

> **E.      Statements About Regulatory Position Limits in the March Registration Statement.**

No new allegation in the CAC overcomes the deficiencies identified by the Court with respect to Plaintiff's claim that statements about regulatory position limits in the March Registration Statement were false and misleading.  *See* Order 55–59.  The Court found that "the challenged language describing the relevant regulatory position limits—and USO's intention to invest all proceeds it received in oil futures contracts—cannot plausibly be regarded as an attempt to falsely represent to investors that the Fund faced no risk of regulatory action after the March Offering." *Id.* at 58.  Indeed, the Court noted that "the March 2020 Registration Statement warns that 'USO could be ordered to reduce its futures contracts' if it exceeded regulatory limits, and that the effect of such regulatory action could be 'substantial and adverse[.]'" *Id.*  Accordingly, the Court held that a "reasonable investor" would not "'have received a false impression from the [challenged language]' given these warnings." *Id.* (alteration in original) (quoting *Plumbers & Steamfitters Loc. 137 Pension Fund*, 2017 WL 4403314, at *11).

Plaintiff now attempts to make the illogical leap that the statements were false and misleading when made given "Defendants' communications with the CME Group, in combination

with the fact that, shortly thereafter, regulators and USO's futures commission merchant imposed limits on USO—and given the massive size of the Offerings that all but guaranteed that the Fund would in fact run up against those limits." Mot. 16–17. The new allegations state that the CME Group was simply communicating with the USO Defendants regarding "*approaching* accountability levels." Mot. 16 (citing SAC ¶ 130 (emphasis added)). However, nothing about such communication suggests that the CME Group was stating (as the Court framed it) that it would "invariably require USO to reduce its holdings or restrict its ability to invest in front month future contracts" if those limits were reached. Order 58 (emphasis added). Accordingly, the alleged CME Group communications could not plausibly render the statements on position limits in the March Registration Statement misleading.

**F.      Statements about the Fund's Investment Strategy in the March Registration Statement.**

Plaintiff asserts that the SAC addresses deficiencies identified by the Court by "add[ing] allegations underscoring the falsity and materiality of statements regarding USO's 'neutral investment strategy' and that 'USO was not actively managed.'" Mot. 15 (citing Order 58–64). The Court previously concluded that "[a] reasonable investor reading all of the statements in the March 2020 Registration Statement concerning the Fund's investment practices and objectives 'together and in context,' would not be left with the impression that the Fund invariably pursued a neutral investment strategy and always simply tracked the Benchmark Oil Futures Contact." Order 61 (citation omitted). None of the SAC's new allegations change that conclusion.

Plaintiff attempts to overcome this conclusion by pointing to an unsourced, undated quote attributed to Defendant Love and third-party public commentary *after* the March Offering

regarding the Fund's investment strategy.  *See* Mot. 15–16 (citing SAC ¶¶ 53, 139).[6]  Plaintiff

argues that these new allegations support "[t]he notion that USO *had transformed* into an actively

managed fund" after the March Offering and that the transformation was a change from "the

previous common assessment [that it] was a passive investment."  SAC ¶ 139 (emphasis added).

Market observers' statement about the transformation *after* the March Offering do not render any

statement in the March Registration Statement false or misleading.  Indeed, Plaintiff's new

allegations do not disturb the Court's conclusion that—taken in context with all other statements

in the March Registration Statement, including that the Fund "might modify the composition of its

investments,"  Order 62 (quoting Dkt. No. 144-2, at 30 (Mar. 2020 Registration Stmt.))—the

statements regarding USO's investment strategy were not false or misleading.

> **G.    Language in February and March Registration Statements Suggesting that an Investment in USO Was a Proxy for Investing in the Crude Oil Market.**

Plaintiff continues to challenge certain statements in the Registration Statements that

"[i]nvestors may choose to use USO as a means of investing indirectly in crude oil,"  Mot. 13

(quoting SAC ¶ 172), but asserts no new allegations to cure the shortcomings identified in the

Court's Order, *see* Order 63–65.  The Court previously determined that, given the extensive

warnings contained in the Registration Statements regarding use of an investment in USO as an

indirect means of investing in the crude oil market, the challenged statements "cannot be regarded

as an attempt to falsely represent to investors that investing in the Fund provided an exact proxy

for investing directly in the crude oil market."  Order 65.

Plaintiff claims that the "SAC addresses the Court's concerns" and points to supposedly

"new allegations about USO's rapid growth leading up to the March Registration Statement,"

---

[6] The statement from Defendant Love should be disregarded as the SAC includes "no allegations of when [the] statement was made or in what context."  *Newton v. Meyer*, No. 22 Civ. 540 (JPC), 2023 WL 2563115, at *12 n.17 (S.D.N.Y. Mar. 17, 2023).

which purportedly "imperiled [the Fund's] investment strategy." Mot. 13 (citing SAC ¶¶ 95, 99). Setting aside the fact that the Fund consistently pursued its investment strategy and met its stated objective, the CAC already included such allegations, which the Court expressly considered in its Order. Order 64 (quoting from the CAC's allegation that "USO and the markets in which it operated were suffering distortions and unprecedented volatility that it had caused . . . . As a result . . . , USO was not a cost-effective means to invest, even indirectly in crude oil"). Accordingly, the SAC offers no new allegation to alter the Court's finding that "the language in the February and March 2020 Registration Statements about use of 'USO as a [cost-effective] means of investing indirectly in crude oil' is not actionable." Order 65 (alteration in original).

### H.       Alleged Omissions in the March Registration Statement About USO's "Creation and Exacerbation" of Market Events.

The Motion points to "new allegations" in the SAC regarding USO's failure to disclose that its own size, actions, and offerings were contributing to market volatility and price distortion. *See* Mot. 8–9 (citing SAC ¶¶ 99–139) ("Reports attributed USO's rapid growth and size as major contributing factors to the extreme distortions in the oil markets . . . ."). Again, the additions to the SAC do not cure the defects already found by the Court. The SAC continues to rely solely on public news reports and analyst statements made after the fact to try and suggest that USO failed to predict and disclose how USO's own trading was purportedly a contributing factor the impacts of the COVID-19 market disruption. *See, e.g.*, SAC ¶¶ 99 (quoting from *Forbes*), 125 (quoting *Reuters*). It remains the case that investors were fully informed about USO's features and risks, including the sudden risks associated with USO's growth and large trades in a contango environment. *See* Dkt. No. 144-2, at 14 (Mar. 2020 Registration Statement). Simply citing to *more* public statements does not move the needle in creating a duty to disclose where none otherwise exists. Plaintiff argues only that Defendants' statements were misleading absent

-16-

disclosing precise predictions about how those risks could materialize or updating the already disclosed risks as they manifested in real time in 2020.  Because none of the statements cited by Plaintiff was misleading—as discussed above—nothing in the Registration Statements gave rise to a further duty to disclose.  *See* Order 69 ("On this point, Plaintiff merely argues that Defendants' statements were misleading absent the missing information.  For the reasons explained above, this Court has concluded that the statements cited by Plaintiff were not misleading.  Accordingly, Defendants' statements did not give rise to a duty to disclose." (citation omitted)).

### I.    Other Alleged Omissions Outside the Registration Statements.

The SAC again complains that the April 16 Form 8-K and an April 22 Form 8-K failed to detail the specific reasons for the Fund's changes to its investment portfolio.  *See* Mot. 17 (citing SAC ¶ 207).  As the Court has already determined, the Registration Statements disclosed from the outset the risks related to regulatory limits, including that USO might invest in later month futures contracts as a result of such limits.  *See* Order 58.  USO's reallocation of its investments was fully within the scope of the Registration Statements' disclosures and consistent with its investment objective.  Having told investors exactly what the Fund might do under such circumstances, USO was under no legal obligation to further update investors when it responded in the manner previously disclosed.

Even if Defendants had an obligation to explain investment decisions that were consistent with the disclosures, Defendants disclosed on April 16 that USO would diversify its portfolio "[c]ommencing on April 17, 2020, and until further notice and market conditions and regulatory conditions permit otherwise."  Dkt. No. 144-5, at 2 (Form 8-K (Apr. 16, 2020)).  The phrase "until . . . market conditions and regulatory conditions permit otherwise" made clear that the Fund altered its investment portfolio in light of market conditions and regulatory requirements.  *Id.*  The disclosures also reminded investors that, as previously disclosed, "USO's portfolio holdings as of

the end of the prior business day are posted each day on the [USO] website," and USO can "invest in . . . futures contracts on the NYMEX and ICE Futures in any month available or in varying percentages or invest in any other permitted investments described . . . in its prospectus, without further disclosure."  Dkt. No. 144-8, at 2 (Form 8-K (Apr. 22, 2020)).[7]

## II.    THE PROPOSED SAC FAILS TO INCLUDE ANY ALLEGATION SUFFICIENT TO PLEAD SCIENTER.

The Exchange Act and Rule 10b-5 claims also fail as a matter of law because the proposed SAC fails to allege any facts demonstrating that the USO Defendants acted with scienter, let alone less facts that would satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA.  No allegation in the SAC is sufficient to disturb the Court's previous conclusion that the allegations are insufficient to support a finding of scienter.  *See* Order 70–80.

### A.    The SAC Does Not Plausibly Plead Motive.

As the Court previously noted, in alleging motive to commit fraud, "a plaintiff may not rely on motives possessed by virtually all corporate insiders, and instead must allege that defendants benefited in some concrete and personal way from the purported fraud."  Order 71 (citation modified).  The CAC did not plead facts demonstrating motive, per the Court, because the "allegations do not establish that the USO Defendants had . . . a personal financial stake that goes 'far beyond that held by typical officers and directors.'"  *Id.* at 74.  Plaintiff now argues that the SAC supports a finding of motive because it alleges that (1) "USCF was a company of only 15

---

[7] The statements in the February and March 2020 Registration Statements challenged under Section 11 are the same statements challenged in connection with Plaintiff's Section 10(b) claim. *See* SAC ¶¶ 221–31.  For all the reasons discussed *supra* regarding the deficiencies with Plaintiff's Section 10(b) claim, the proposed SAC does not allege under Section 11 any actionably false statements or misleading omissions with respect to the February and March 2020 Registration Statements.  Order 88.  Having failed to adequately plead the primary violations of Section 11 of the Securities Act or Section 10(b) of the Exchange Act, the SAC also fails to state a "control person" claim under Section 15 of the Securities Act or Section 20(a) of the Exchange Act. *E.g.*, *Rombach v. Chang*, 355 F.3d 164, 177–78 (2d Cir. 2004).

employees that received management fees from record inflows," and (2) "defendant Love served as a registered representative of ALPS where he stood to personally benefit from marketing USO shares as well as benefiting from receiving management fees from USCF." Mot. 19 (citing SAC ¶ 255).

These allegations fail to establish motive. *First*, the Court has already rejected Plaintiff's motive theory based on the fact that USCF received management fees. *See* Order 72 (Plaintiff's motive allegations "premised on USO Defendants' desire to increase profits and management fees [are] no more than a generic motive possessed by all corporate insiders."). Further, scienter must be separately pled and individually supportable as to each defendant. *C.D.T.S. v. UBS AG*, No. 12 Civ. 4924, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom.*, *Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015) (non-precedential). A generic reference to the number of employees at USCF cannot satisfy that burden. *Second*, while Plaintiff alleges that Defendant Love "stood to personally benefit from marketing USO shares" as a registered representative of ALPS, Mot. 19, nowhere does the SAC allege specific facts that he actually did "market[] USO shares" on behalf of ALPS, nor that he derived any "personal benefit." The allegation simply fails to support a conclusion that Defendant Love had "a personal stake that goes 'far beyond that held by typical officers and directors.'" Order 74; *see also In re Rsrv. Fund Sec. & Derivative Litig.*, 732 F. Supp. 2d 310, 320 (S.D.N.Y. 2010) (complaint adequately alleged motive when certain defendants "own[ed] and controll[ed]" the investment advisor and distributor of the fund and were paid fees for their services).

## B. The SAC Does Not Plausibly Plead Conscious Misbehavior or Recklessness.

The SAC additionally fails to allege any facts demonstrating "strong circumstantial evidence of conscious misbehavior or recklessness" as to any Defendant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Here, Plaintiff's Exchange Act claims cannot

withstand a motion to dismiss, because Plaintiff has failed to "detail specific contemporaneous data or information known to the defendants that was inconsistent with the representation in question." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001) (citation omitted); *See also Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000). As with the CAC, Plaintiff's proposed SAC fails to "explain how the information allegedly available to the USO Defendants . . . contradicts Defendants' public statements during the Class Period." Order 77. As the Court previously stated, "[m]ere access to information does not provide strong circumstantial evidence of recklessness where 'the complaint fails to specify exactly what information was contained [in the data to which a defendant had access] or how said information contradicted Defendants' public statements." *Id.* (internal quotation marks and citation omitted). Plaintiff again asks the Court to assume scienter simply because the USO Defendants created USO, received information about USO, assessed its risks and performance, participated in the WTI futures contracts market, and thereby had access to market trading information. Mot. 18–19 (citing SAC ¶¶ 241–43, 247, 250–51). Plaintiff cannot expect the Court to infer that the USO Defendants acted recklessly simply by pointing to their role in managing the Fund or alleged knowledge of supposed "red flag" market conditions and undisclosed risks with the benefit of hindsight. *Hart*, 145 F. Supp. 2d at 368. For example, the SAC alleges that USO's licensing agreement with the NYMEX exchange on which it trades gave the USO Defendants access to "confidential market data" such as the settlement prices of futures contracts (Mot. 9–10 (citing SAC ¶¶ 202, 247)), but nowhere connects the dots to suggest how access to such information, if even available—which at most simply facilitates efficient rebalancing of USO's holdings consistent with its investment objective—was inconsistent with USO's disclosures or remotely implies recklessness on any Defendant's part.

The unremarkable assertion that the USO Defendants are knowledgeable about historical or day-to-day market conditions concerning crude oil or oil futures contracts, SAC ¶¶ 241–43, does not support an inference that the subsequent market developments were so obvious that it was reckless for the USO Defendants not to have made additional disclosures. *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *16 (S.D.N.Y. Sept. 28, 2012) ("'[R]eports about a downturn . . . do not, by themselves, permit the inference that [defendants] knew or should have known that any of the statements [or omissions] cited in the compliant were misleading' because 'general facts about the financial world are insufficiently particularized to establish that defendants acted with scienter.'" (alterations in original) (citation omitted)), *aff'd sub nom.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). If Plaintiff's theory was enough, scienter could be assumed every time a defendant creates an investment fund, monitors it, and participates in a related market—in other words, tantamount to imposing strict liability.

### C.  A Holistic Review Does Not Support a Finding of Scienter.

Even if Plaintiff could point to facts demonstrating a "'strong inference' of scienter" that is cogent and compelling rather "than merely 'reasonable' or 'permissible,'" the Court must consider "plausible opposing inferences," including "nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323–24 (2007). The more plausible inference here is that the USO Defendants sought for USO to perform as described in the Registration Statements and as required by securities laws despite extraordinary market developments. And, "in the face of an unprecedented global pandemic, [d]efendants were making disclosures in uncharted waters and erred on the side of making broad, general statements about actual and potential investment risks rather than describing rapidly shifting events in detail." Order

at 79 (quoting *Optimum Strategies Fund I, LP v. United States Oil Fund. LP*, No. 22-cv-00511 (MPS), 2023 WL 2526394, at *13 (D. Conn. Mar. 15, 2023)).

**III.    THE PROPOSED SAC FAILS TO ESTABLISH ANY VIOLATION OF REGULATION S-K.**

In support of all Counts, the SAC alleges that Defendants failed to comply with Item 303, 17 C.F.R. § 229.303(a)(3)(ii), and Item 105, 17 C.F.R. § 229.105, of Regulation S-K.  Item 303 requires issuers to disclose any known trends or uncertainties "(1) known to management and (2) 'reasonably likely to have material effects on the registrant's financial condition or results of operations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017) (citation omitted).  Item 105 requires issuers to provide, in registration statements, "under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky."  17 C.F.R. § 229.105 (2019) (formerly 17 C.F.R. § 229.503).  If allegations are not "'reasonably likely' to be material under Item 303," they are not among the "most significant factors" rendering an offering speculative or risky under Item 105.  *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011).

Not only has Plaintiff entirely failed to allege knowledge on the part of management as explained in Part II *supra*, Plaintiff's Regulation S-K allegations fail for all of the reasons already outlined above, as Plaintiff merely points back to the same allegations "detailed in ¶¶ 72–163" in alleging these purported violations.  SAC ¶ 201.  Those arguments are "unavailing" because the disclosures "included ample warning" of the impact of all the risks alleged in the SAC.  *Stadnick*, 861 F.3d at 39.  In addition, Plaintiff failed to plead that any of the alleged developing risks could have established a "trend" that required disclosure.  *See Holbrook v. Trivago N.V.*, No. 17 Civ. 8348 (NRB), 2019 WL 948809, at *19 (S.D.N.Y. Feb. 26, 2019) (explaining there is no general "obligation to disclose the results of a quarter in progress" (citation omitted)), *aff'd sub nom.*,

*Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019) (non-precedential); *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017) ("[E]vents occurring within a two month period of time do not establish a 'trend' for purposes of the disclos[ures] required by Item 303."); *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 218 (5th Cir. 2004) (holding a five-month "decline in natural gas prices [did not yet constitute] a trend" requiring disclosure).

Put simply, Plaintiff has not pointed to anything—trend, uncertainty, event, or otherwise—that USO Defendants were required to disclose that could have altered the total mix of information available to investors at the time. *See, e.g.*, *Asay v. Pinduoduo Inc.*, No. 18-cv-7625, 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020). Moreover, Plaintiff does not plausibly allege that USO Defendants had actual knowledge as to how the developing market conditions would impact the Fund. *See, e.g.*, *In re Coty Inc. Sec. Litig.*, No. 14-cv-919, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) (finding "broad, conclusory" allegations failed to plead with specificity facts demonstrating actual knowledge).

## CONCLUSION

For all the foregoing reasons, the Court should deny the Motion as futile.

-25-

Dated:  December 19, 2025

**ROPES & GRAY LLP**


*/s/ Amy D. Roy*
Robert A. Skinner
Amy D. Roy *(admitted pro hac vice)*

1211 Avenue of the Americas
New York, NY 10036-8704
Tel:  212/596-9000
Fax: 212/596-9090
robert.skinner@ropesgray.com

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel:  617/951-7000
Fax: 617/951-7050
amy.roy@ropesgray.com


*Attorneys for Defendants United States Oil Fund, LP, United States Commodity Funds LLC, John P. Love, Stuart P. Crumbaugh, Nicholas D. Gerber, Andrew F Ngim, Robert L. Nguyen, Peter M. Robinson, Gordon L. Ellis, and Malcolm R. Fobes III*

-24-