UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| In re UNITED STATES OIL FUND, LP SECURITIES LITIGATION | : | Civil Action No. 1:20-cv-04740-PGG-GS |
| | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | |
| | : | |
| ALL ACTIONS. | : | |
| | x | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION FOR LEAVE TO FILE THE [PROPOSED] SECOND CONSOLIDATED AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.    ARGUMENT......................................................................................................1

       A.    The COVID-19 Risk Factor Statements and Omissions Are Actionable ................1

       B.    The SAC Adequately Alleges Violations of Item 303.............................................4

       C.    The SEC and CFTC Orders Significantly Strengthen Plaintiff's Claims ................6

       D.    Defendants Fail to Establish Futility as to the Other Actionable Misstatements and Omissions....................................................................................6

       E.    The SAC Adequately Pleads Scienter....................................................................8

III.    CONCLUSION................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019).......................................................................................3

*Franchi v. SmileDirectClub, Inc.*,
633 F. Supp. 3d 1046 (M.D. Tenn. 2022).................................................................................4

*Garbaccio v. Starbucks Corp.*,
2025 WL 3228275
(W.D. Wash. Nov. 19, 2025) ....................................................................................................9

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016).....................................................................................................6

*Gutman v. Lizhi Inc.*,
633 F. Supp. 3d 681 (E.D.N.Y. 2022) ...............................................................................2, 3, 5

*In re Estee Lauder Co., Inc. Sec. Litig.*,
2025 WL 965686
(S.D.N.Y. Mar. 31, 2025) ........................................................................................................9

*In re UBS AG Sec. Litig.*,
2012 WL 4471265
(S.D.N.Y. Sep. 28, 2012).......................................................................................................10

*In re Virtu Fin., Inc. Sec. Litig.*,
770 F. Supp. 3d 482 (E.D.N.Y. 2025) ......................................................................................9

*Lian v. Tuya Inc.*,
2024 WL 966263
(S.D.N.Y. Mar. 5, 2024) ..........................................................................................................2

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011).....................................................................................................3

*Maher v. Glob. Factors, LLC*,
2025 WL 1554761
(2d Cir. June 2, 2025) ..............................................................................................................3

*Medina v. Tremor Video, Inc.*,
640 F. App'x 45 (2d Cir. 2016) ................................................................................................2

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
709 F.3d 109 (2d Cir. 2013).....................................................................................................3

**Page**

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012)........................................................................................ 4-5

*Pollio v. MF Glob., Ltd.*,
608 F. Supp. 2d 564 (S.D.N.Y. 2009)............................................................................4

*Sec. & Exch. Comm'n v. RRBB Asset Mgmt., LLC*,
2021 WL 3047081
(D.N.J. July 20, 2021).................................................................................................10

*Sodha v. Golubowski*,
154 F.4th 1019 (9th Cir. 2025) .....................................................................................4

*Spitzberg v. Houston Am. Energy Corp.*,
758 F.3d 676 (5th Cir. 2014) ........................................................................................9

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
2024 WL 456745
(S.D.N.Y. Feb. 5, 2024)................................................................................................9

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017)............................................................................................5

*Wandel v. Gao*,
590 F. Supp. 3d 630 (S.D.N.Y. 2022)........................................................................2, 3

*Winter v. Stronghold Digital Mining, Inc.*,
686 F. Supp. 3d 295 (S.D.N.Y. 2023).............................................................................2

**STATUTES, RULES AND REGULATIONS**

15 U.S.C
§77k............................................................................................................................2, 3, 4
§77l ...................................................................................................................................2

17 U.S.C
§240.10b-5(b)..................................................................................................................3, 4

Federal Rules of Civil Procedure
Rule 9(b) ............................................................................................................................3

## I.      INTRODUCTION

Defendants oppose amendment on a single basis: futility.[1] But to support their position, Defendants largely rehash their prior arguments regarding the CAC while failing to meaningfully confront the substance of the SAC's newly asserted allegations, which span 30 pages and directly address the Court's concerns.  Defendants misapply the legal requirements applicable to Plaintiff's claims and fail to engage the SAC's new Item 303 allegations, which are grounded in facts showing Defendants' knowledge of, at a minimum, then-existing adverse events and uncertainties that were reasonably likely to impact USO's financial condition.  Defendants also not only disregard the SEC's determination that USO and USCF failed to fully disclose material information during the Class Period, they ignore the SEC's underlying finding that undisclosed limitations placed on the Fund can be "critical" to USO if they impair its investment objective (which is what happened).  Finally, Defendants fail to address many of Plaintiff's extensive new scienter allegations, which demonstrate that the USO Defendants knew or should have known, or were reckless in not knowing, that their statements to investors about the materially adverse facts impacting the Fund were false and/or misleading when made.  Thus, the Court should grant Plaintiff's Motion for leave to file the SAC and allow this case to proceed to discovery.

## II.     ARGUMENT

### A.      The COVID-19 Risk Factor Statements and Omissions Are Actionable

Defendants repeat their challenge to the risk factor statements in the Registration Statements but misconstrue the relevant legal standard and ignore many of the new allegations in the SAC which support both the falsity and materiality of the February 2020 COVID-19 omission (¶167) and

---

[1]  All references to "Opposition" or "Opp." are to Defendants' Opposition to Plaintiff's Motion for Leave to File the [Proposed] Second Amended Complaint (ECF No. 189).  All references to "Motion" or "Mot." are to Plaintiff's Memorandum of Law in Support of the Motion for Leave to File the [Proposed] Second Amended Complaint (ECF No. 184).  "SAC" refers to the [Proposed] Second Consolidated Amended Complaint and all references to "¶" or "¶¶_" refer to the SAC.  All capitalized terms shall have the meanings ascribed in the proposed SAC and Motion.  All citations and internal quotations are omitted unless otherwise noted.

the passing March 2020 "*(e.g., COVID-19)*" reference (¶176).  Defendants contend that the SAC

fails to assert that Defendants had "unique knowledge regarding the COVID-19 pandemic."  Opp.

at 7.  As an initial matter, the Court should reject Defendants' attempt to interject a knowledge

requirement, which is not required, into §11's strict liability regime.  "[N]umerous district courts in

this Circuit have explained that plaintiffs are not required to allege that defendants in Section 11 and

Section 12 claims knew, or should have known, of any material omitted facts or misstatements at the

pleading stage."  *Winter v. Stronghold Digital Mining, Inc.*, 686 F. Supp. 3d 295, 306 (S.D.N.Y.

2023); *see also Lian v. Tuya Inc.*, 2024 WL 966263, at *11 (S.D.N.Y. Mar. 5, 2024) ("Section 11

does not have a requirement that the omitted fact be known, or should have been known, by issuers.

The text of Section 11 imposes no such requirement.");  Mot. at 13.  "Rather, what is required is that

the omitted fact be *knowable*."  *Lian*, 2024 WL 966263, at *11.[2]

The SAC establishes that the risk to the Fund from COVID-19 was both material and

"knowable" by the February Offering (February 25, 2020) and, at a minimum, by the March

Offering (March 23, 2020).  For example, the SAC clarifies that, as early as January 2020, defendant

Love had recognized COVID-19 as a "big factor" in the market that created "concern about demand"

and was expected to impact a "meaningful" amount of demand.  Mot. at 9, 11; ¶65.  The SAC

provides additional detailed facts corroborating this "concern" and demonstrating that COVID-19

---

[2] Defendants' reliance on *Gutman v. Lizhi Inc.*, 633 F. Supp. 3d 681 (E.D.N.Y. 2022), is unavailing.
In *Gutman*, the court found that "Plaintiff failed to allege how the existence of COVID-19 was
'information uniquely within Defendants' control'" in the context of Item 303's separate knowledge
requirement.  *Gutman*, 633 F. Supp. 3d at 690; Opp. at 8-9.  Significantly, the court in *Gutman*
determined, unremarkably, that "COVID-19 was not a known *trend* at the time of the January 17,
2020 IPO."  *Id*. at 688 (emphasis added); *cf. Wandel v. Gao*, 590 F. Supp. 3d 630, 644 (S.D.N.Y.
2022) (facing similar arguments to those lodged by Defendants here, explaining that *in the week
following another January 17, 2020 IPO, "the coronavirus situation literally grew a million-fold:
from 41 reported cases to a lockdown of 41 million people*" and noting that "this might have been a
very different case if Plaintiffs had bought their ADS just a few days or weeks after they did.")
(emphasis added).  Defendants' reliance on *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 49 (2d
Cir. 2016) (summary order), is irrelevant for similar reasons (discussing the failure to plead facts
necessary to infer knowledge about trends or uncertainties under Item 303).

posed an increasingly significant risk to USO over the following weeks. ¶¶66-68. The significance of these allegations is consistent with Judge Crotty's analysis of the increasingly rapid and severe development of the threat of COVID-19 in late January and February 2020, as explained in *Wandel*, 590 F. Supp. 3d at 644. *See supra* n.2; *see also Gutman*, 633 F. Supp. 3d at 688-89 (deferring to Judge Crotty's description of the risk of COVID-19 as of January 17, 2020, in *Wandel*).[3]

These new allegations specifically address the risk of COVID-19's impact on the oil markets and, in turn, the Fund, and together with Defendants' subsequent admission that USO had been negatively impacted by the virus in March 2020, underscore how the statements and omissions regarding COVID-19 were materially false and misleading when made. Mot. at 12; ¶¶66-68, 149-150. Once Defendants disclosed COVID-19 as a risk factor in the March Registration Statement, they were required to provide a "complete and accurate" disclosure to investors of any knowable adverse facts, and not just a passing, superficial mention of the pandemic. *Maher v. Glob. Factors, LLC*, 2025 WL 1554761, at *2 (2d Cir. June 2, 2025) (summary order). Moreover, Defendants' dismissal of these allegations as "exclusively public statements or news reports" (Opp. at 7) does not absolve Defendants of liability under §11, which focuses on the disclosures made in the registration statements – ***not*** whether the market had access to the information elsewhere. *See New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013) ("[t]here are ***serious limitations*** on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a . . . prospectus on the basis that the information is public knowledge and otherwise available to them.") (emphasis added).[4] Though not required for

---

[3]  The statements and omissions in the Registration Statements – including those related to COVID-19 – are independently actionable under Rule 10b-5(b) because the SAC adequately pleads scienter and satisfies the Rule 9(b) pleading standard for the Rule 10b-5(b) claims.

[4]  *See also Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011). For these reasons, Defendants' reliance on *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254-55 (S.D.N.Y. 2019), is inapposite.

Plaintiff's §11 claim, the SAC also establishes that, at the very least, COVID-19 constituted a known uncertainty (and also an event or trend) impacting – and reasonably likely to continue impacting – the Fund at the time of the Registration Statements, triggering an independent disclosure obligation that is separately actionable under Item 303. ¶¶65-68, 149-150; *see also infra* §II.B.

### B.    The SAC Adequately Alleges Violations of Item 303

Defendants fail to meaningfully address or challenge Plaintiff's new Item 303 allegations of specific adverse trends, events, or uncertainties then-impacting or expected to continue to adversely impact the Fund, including: (1) the "severe risk to the Fund's sole investment objective . . . from unprecedented economic conditions created by COVID-19"; (2) "sharply rising positional concentration, volatility and market illiquidity as a result of the Fund's rapid growth during the Class Period"; (3) "widening divergence between the Fund's per share NAV and market price"; (4) "accelerating super contango effects"; and (5) the fact that "the Fund was suffering massive investor losses" at the time of the Offerings.[5]  ¶201.   Rather than confronting any of these allegations individually, Defendants dismiss them collectively as "these purported violations."[6] Opp. at 22. The

---

[5]  While Defendants reprise their prior arguments concerning the historical performance statements (¶¶184, 190), they fail to squarely confront Plaintiff's Item 303 allegation that Defendants had a duty to disclose the Fund's recent losses, which deviated dramatically from the pictures presented in the Registration Statements, especially given Defendants' stated evaluation of USO's financial condition for "subsequent events" requiring disclosure days before the March Registration Statement became effective. ¶¶201, 209; *Sodha v. Golubowski*, 154 F.4th 1019, 1034 (9th Cir. 2025). Defendants do not address the March 20 and 24, 2020, 8-K statements regarding "subsequent events" (¶¶209-210), which are actionable under Rule 10b-5(b), and have therefore waived any challenge to their falsity. Moreover, the historical performance statements are separately actionable under both §11 and Rule 10b-5(b). *See, e.g., Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1067-68 (M.D. Tenn. 2022) (finding actionable omission where "Defendants portray[ed] a positive trend in SDC's revenue, gross profits, and Adjusted EBITDA while omitting the fact that these metrics were actually declining at the time of the IPO."). For these reasons, Defendants' citation to *Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009), is unavailing.

[6]  Defendants wrongly contend that the Item 303 allegations are inactionable because the time period needed to establish a "trend" is too short. Opp. at 22-23; *Sodha*, 154 F.4th at 1038 (finding that "the two-month rule is overly restrictive" and that the "fallout from economic crises—like those unleashed by the COVID pandemic or the 2008 collapse of the real estate market—may have persistent effects on some businesses that are recognizable after less than two months."); *Panther*

- 4 -

SAC also alleges facts establishing Defendants' knowledge of these trends, events, or uncertainties, including, but not limited to, the USO Defendants' scrupulous monitoring of the oil markets, access to and receipt of confidential market data, and "constant" communications with the CME Group regarding approaching regulatory levels and limits, and the Authorized Participant Defendants' due diligence investigation prior to the Offerings.  ¶202.

Defendants erroneously contend that "USO achieved its stated investment objective throughout the class period" by "successfully" providing exposure to oil prices.  Opp. at 2.  That exposure, of course, was far from successful for investors and, regardless, did not relieve Defendants of their Item 303 duty to disclose the material risk to USO's investment objective when, for example, COVID-19 was significantly responsible for causing crude prices to drop "to levels that we have not seen in a generation," in what was described as "one of the biggest oil crashes in history" at the time of the March Offering (¶¶76-77).  It is axiomatic that by, *inter alia*, meticulously tracking the oil markets, maintaining regular communications with the CME Group regarding impending regulatory limits, and having access to confidential market data – which Defendants concede, at a minimum, "facilitates efficient rebalancing of USO's holdings" (Opp. at 20) – Defendants possessed knowledge of the severe undisclosed risks to the Fund's investment objective.  ¶202.[7]

---

*Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012) ("Item 303's disclosure obligations, like materiality under the federal securities laws' anti-fraud provisions, do not turn on restrictive mechanical or quantitative inquiries.").  Thus, Defendants' cases suggesting otherwise are inapposite.  *See* Opp. at 22-23.  In any event, a "trend" is not necessary to establish a violation of Item 303 – a known "event" or "uncertainty" that is reasonably likely to have a material effect on a company's financial condition is sufficient.

[7] For similar reasons, Defendants did not "'include ample warning' of all the risks."  *See* Opp. at 22 (quoting *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017)).  Moreover, unlike in *Gutman*, 633 F. Supp. 3d at 689-90, where the complaint lacked "any specific allegations concerning the material impact on Lizhi's revenue and operations," Plaintiff here not only alleges trends, events, or uncertainties that were "***reasonably likely to have a material effect***" on USO's financial condition" (¶201), but also that they were ***already*** causing the Fund to suffer massive losses.  ¶¶122, 191 (noting over $200 million in losses in February 2020 and nearly $1 billion in additional losses by the time of the March Offering).

### C.    The SEC and CFTC Orders Significantly Strengthen Plaintiff's Claims

Defendants mischaracterize both the import of the SEC and CFTC orders and the Court's treatment of the findings in the Order.  For example, the SEC Order unquestionably establishes that at least one statement made during the Class Period and alleged in the SAC to be false and/or misleading is actionable – namely, the April 22, 2020, Form 8-K, announcing that the Fund had changed its investment objective again but failed to disclose that RBC, USO's sole FCM, had informed the Fund it would not execute any new oil futures positions for USO, a fact that the SEC determined was "critical to USO," and thus to investors.  ¶207.  By clarifying that undisclosed limitations placed on USO can be "critical" to USO when they impair the Fund's investment objective, the SEC Order also supports the actionability of other statements that Plaintiff alleges are false or misleading in the SAC.  *E.g.*, ¶¶195 (statements regarding the imposition of regulatory limits); ¶¶180, 187 (statements regarding the Fund's ability to achieve its investment objective); ¶206 (April 16, 2020 8-K announcing revision to investment strategy without disclosing CME limit).  Defendants flippantly contend that the SEC Order was "fully addressed" by the Court, when the Court's Order – while acknowledging the supplemental authority discussing the SEC Order – makes no mention of the SEC or CFTC's underlying findings.  *See* Opp. at 3.  Thus, it is unclear to what extent the Court considered these allegations when adjudicating Defendants' motion to dismiss.[8]

### D.    Defendants Fail to Establish Futility as to the Other Actionable Misstatements and Omissions

The SAC also plausibly alleges new factual allegations supporting the falsity of statements that, for example, USO employed a "neutral investment strategy" and was "not actively managed." ¶¶187-189.[9]  Defendants, however, argue that "[m]arket observers' statement[s] about [USO's]

---

[8]    *See Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016) (noting that courts generally "do not look beyond 'facts stated on the face of the complaint'").

[9]    Defendants incorrectly urge the Court to "disregard[]" defendant Love's statement that USO tracked "purely just the front month future contract in crude" (¶53) because it is too unspecific. Opp. at 14-15, n.6.  Love's statement – which was made at a January 2017 Inside ETFs Conference

transformation *after* the March Offering do not render any statement in the March Registration Statement false or misleading." Opp. at 15.  But the SAC does not rely on this analyst commentary as evidence of hindsight-based falsity.  Rather, the analysts explain how USO's issuance of over 1.4 billion shares during a period of "all-time high" oil market volatility (¶95) made it nearly impossible to adhere to a neutral, passively managed investment strategy at the time of the March Offering. *E.g.*, ¶139 (discussing how the Fund's "massive issuance of USO shares . . . created a ***bloated monster of a security that cannot possibly achieve its original goal***" and thus "has become an ***actively managed*** ETF."); ¶99 (explaining that by April 20, 2020, the "***culprit***" of the "***oil market spasm***" – USO – was "***obvious***," and that "[b]ecause of the fund size and number of futures contracts it purchased, *[USO] actually worsened the 2020 crash*"").  Moreover, these newly-pled allegations independently support the actionability of Defendants' alleged fraudulent statements and omissions made after the March Offering but shortly before, during, and after the April 21, 2020, oil crash and the corresponding rapid-fire overhaul of USO, including in posts on USCF's website (¶¶213-214) and SEC filings in April 2020 (¶¶206-207).[10]

Defendants wrongly contend that the SAC's expansive new allegations regarding USO's role in the "creation and exacerbation" of market-distorting effects and corresponding investor losses do "not move the needle" because they detail "public news reports and analyst statements made after

---

(¶242) – is probative of how Defendants promoted, and investors viewed, USO – as a fund that simply tracked the Benchmark Oil Futures Contract, and thus short-term movements in oil prices – and undermines Defendants' contention that investors understood that the USO Defendants could effectively transform the Fund into what was later widely recognized as an actively managed fund.

[10]   For example, while Defendants argue that their communications with the CME Group do not suggest it would invariably reduce or limit USO's holdings in the Benchmark Futures Contract (Opp. at 13-14), they ignore that statements posted on USCF's website shortly before and even *after* CME placed limits on the Fund presented the risk of such limits as purely hypothetical.  ¶214. Furthermore, the SAC includes new allegations that USCF actively tried to conceal or deflect the true reason for the Fund's structural overhaul in April 2020.  ¶135 (in response to a question about the repeated changes to USO's structure, USCF chief marketing agent referred to "extraordinary market conditions in the crude oil markets, including super contango," without mentioning the limitations then-placed on the Fund by CME and RBC).

the fact." Opp. at 16. But Plaintiff does not rely on those reports to argue that Defendants were required to "predict" future market developments. *Id.* Rather, the SAC cites them to explain why the Fund's rapid growth and outsized trading activity – facts that already existed at the time of the March Registration Statement – were material and should have been disclosed. As alleged in the SAC, news outlets and analysts explained that USO's size and trading activity directly contributed to and even was a driving cause of the oil market crash. *See, e.g.,* ¶¶95, 99, 139. These observations confirm that USO's rapid growth posed serious risks that should have been disclosed.[11]

### E.      The SAC Adequately Pleads Scienter

The Court should reject the USO Defendants' argument that mere access to information and knowledge of market conditions fail to establish conscious misbehavior or recklessness sufficient to establish scienter. Opp. at 20-21. The USO Defendants ignore the extensive new allegations in the SAC supporting recklessness, including for example, that they scrupulously monitored those factors in the oil markets that were increasingly and adversely impacting the Fund's risk factors and performance during the Class Period. Mot. at 10; ¶¶202, 241-243 (alleging, for example, that defendant Love "monitored oil inventory levels on at least a weekly basis," "closely" tracked significant geopolitical events affecting the oil markets, boasted about making "'probabilistic judgments about what's going to happen'" in the market, and made real-time observations about the developing impacts of COVID-19). This careful tracking of these pertinent factors affecting the Fund bolsters an inference of scienter (and directly responds to the Court's concerns), particularly given defendant Love's role in creating, operating, and managing the Fund over a 14-year period

---

[11] As to the statements in the March Registration Statement concerning the effects of contango on the Fund, Defendants themselves acknowledge the existence of a "'nascent super contango dynamic' in March 2020[.]" Opp. at 12 (citing Order at *30). This acknowledgement underscores the misleading nature of the March Registration Statement, which discussed contango only in generic, theoretical terms and failed to disclose that a historically unprecedented contango dynamic had already emerged at the time of the March Offering, making its omission from the March Registration Statement misleading. ¶¶149, 194. Thus, Plaintiff does not rely on "20/20 hindsight" as Defendants argue. Opp. at 13.

(¶¶25, 61-62, 240). *In re Estee Lauder Co., Inc. Sec. Litig.*, 2025 WL 965686, at \*9 (S.D.N.Y. Mar. 31, 2025) (scienter established in part through allegations of defendants' "attentiveness to travel-retail sales data"); *see also Garbaccio v. Starbucks Corp.*, 2025 WL 3228275, at \*21 (W.D. Wash. Nov. 19, 2025) (scienter alleged where CEO "was involved in the company's day-to-day operations and had access to key information related to staffing and comparable store sales").[12]

New undisputed allegations describing USCF's unusually small size (only 15 employees) further strengthen the inference of scienter. ¶¶61, 240; *Virtu*, 770 F. Supp. 3d at 523 (defendant's acknowledgment that it was "a very small firm where everybody knows what is going on" supported a strong inference of recklessness); *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 685 n.13 (5th Cir. 2014) (holding that the "extremely small size of the company at issue" supported scienter). Additionally, the USO Defendants fail to address newly-pled allegations in the SAC regarding USO's role in the oil crashes of 2009 and 2014, which show that it had "a knowledge and awareness that rapidly growing the Fund and rolling large positions could lead to significant market distortions." Mot. at 19 (alleging that USO's active participation in these prior market distortions further establishes recklessness). These allegations, together with the SAC's new allegations concerning the SEC and CFTC Orders and Defendants' communications with the CME Group, further strengthen the inference of scienter.

---

[12]   The USO Defendants also fail to distinguish the authority cited by Plaintiff holding that careful and regular monitoring of core operational metrics supports a strong inference of scienter based on recklessness. *See* Mot. at 19, n.14 (citing, *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at \*5 (S.D.N.Y. Feb. 5, 2024)). Moreover, contrary to Defendants' contention that USO's access to confidential market data through its licensing agreement with NYMEX does not support recklessness, the access to and admitted use of this data shows that the USO Defendants possessed non-public insight into market conditions that made their continued public assurances materially misleading. *See In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 522 (E.D.N.Y. 2025) ("there may be an adequate showing of scienter through recklessness where the complaint alleges that the defendants had access to certain information or failed to check that information, which they had a duty to monitor, and supports those allegations with particular facts"). Furthermore, Defendants fail to address the SAC's new allegation that the USO Defendants received advanced notice that NYMEX may facilitate negative pricing. ¶251.

Moreover, the SAC's new allegations further support defendant Love's motive to commit fraud.  As a registered representative of defendant ALPS, Love "solicited investment and sold USO shares from the offerings on behalf of the Fund, and received incentive fees on USO's assets, including proceeds from the offerings."  ¶62.[13]  Love's unique role as both CEO of USCF and a registered representative of ALPS demonstrates that he possessed "a personal financial stake that goes 'far beyond that held by typical officers and directors.'" Order at *41; *Sec. & Exch. Comm'n v. RRBB Asset Mgmt., LLC*, 2021 WL 3047081, at *5 (D.N.J. July 20, 2021) (motive adequately alleged where defendant had a "'unique incentive'" to obtain fees or "'a personal financial stake.'").

The SAC's additional detailed scienter allegations, combined with the previously-alleged allegations in the CAC which are reasserted in the SAC, considered holistically, give rise to an inference of scienter that is at least as compelling as any opposing inference.[14]

## III.    CONCLUSION

The SAC's newly-pled allegations are not simply "immaterial gloss" or "conclusory assertions," as Defendants contend.  Opp. at 2.  Rather, the proposed SAC adds extensive detailed factual allegations supporting Plaintiff's claims and addressing the Court's stated concerns in the Order.  For the reasons stated above and those set forth in the Motion, and because Defendants have failed to establish that amendment would be futile, the Court should grant Plaintiff's Motion for leave to file the SAC and allow this case to proceed to discovery.

---

[13]  Defendants wrongly contend that "nowhere does the SAC allege specific facts that [Love] actually did 'market[] USO shares' on behalf of ALPS, nor that he derived any 'personal benefit.'" Opp. at 19; *see* ¶62 (alleging that defendant Love received fees as a registered representative of ALPS for soliciting investment in and selling USO shares).

[14]  *Cf.* Opp. at 21 (discussing *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *16 (S.D.N.Y. Sep. 28, 2012) (finding that "'general facts about the financial world are insufficiently particularized to establish that defendants acted with scienter.'").

DATED:  January 9, 2026

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
VINCENT M. SERRA
JEREMY YOHANNAN


                    */s/ David A. Rosenfeld*
           DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
vserra@rgrdlaw.com
jyohannan@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bcochran@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
PERETZ BRONSTEIN
EITAN KIMELMAN
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com
eitan@bgandg.com

*Additional Counsel for Plaintiff*

- 11 -